Shaun Setareh (SBN 200514)
  shaun@setarehlaw.com
William M. Pao (SBN 219846)
  william@setarehlaw.com
Nolan Dilts (SBN 328904)
  nolan@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff  JANICE GILMORE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANICE GILMORE, on behalf of herself and all others similarly situated,<br><br>     *Plaintiff*,<br><br>v.<br><br>SAFE BOX LOGISTICS INC., a California corporation; FEDERAL EXPRESS CORPORATION, a Delaware corporation; FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware corporation; FEDEX CORPORATION, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>     *Defendants*. | Case No. 5:21-cv-06917-LHK<br><br>**CLASS AND REPRESENTATIVE ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198);<br>2. Failure to Provide Rest Breaks (Lab. Code §§ 204, 223, 226.7 and 1198);<br>3. Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198);<br>4. Failure to Pay Vacation Wages (Lab. Code § 227.3);<br>5. Failure to Indemnify (Lab. Code § 2802);<br>6. Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a));<br>7. Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203);<br>8. Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*);<br>9. Civil Penalties (Lab. Code § 2698, et seq.)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff JANICE GILMORE ("Plaintiff"), on behalf of herself, all others similarly situated, all other aggrieved employees, the general public, and the State of California complains and alleges as follows:

## **INTRODUCTION**

1.     Plaintiff brings this class and representative action against Defendants SAFE BOX LOGISTICS INC., a California corporation ("Safe Box"); FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware corporation ("FedEx"); and DOES 1 through 50, inclusive, (collectively "Defendants") for alleged violations of the Labor Code. As set forth below, Plaintiff alleges that Defendants have:

(1)     failed to provide Plaintiff and all other similarly situated individuals with meal periods;

(2)     failed to provide them with rest breaks;

(3)     failed to pay them premium wages for missed meal and/or rest breaks;

(4)     failed to pay them premium wages for missed meal and/or rest breaks at the regular rate of pay;

(5)     failed to pay them at least minimum wage for all hours worked;

(6)     failed to pay them overtime wages at the correct rate;

(7)     failed to pay them double time wages at the correct rate;

(8)     failed to pay them overtime and/or double time wages by failing to include all applicable remuneration in calculating the regular rate of pay;

(9)     failed to pay them for all vested vacation pay;

(10)    failed to reimburse them for all necessary business expenses;

(11)    failed to provide them with accurate written wage statements; and

(12)    failed to pay them all of their final wages following separation of employment.

Based on these alleged violations, Plaintiff now brings this class and representative action to recover unpaid wages, restitution, statutory and civil penalties, and related relief on behalf of herself and all others similarly situated, all other aggrieved employees, the general public, and the State of California.

1

**JURISDICTION AND VENUE**

2    2.    This action was initially filed in the State of California, County of Santa Clara.

3  Defendants subsequently removed this action under the Class Action Fairness Act ("CAFA"), 28

4  U.S.C. § 1332(d), to The United States District Court For The Northern District of California on

5  September 7, 2021.

6    3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441 (a) because The United

7  States District Court For The Northern District of California San Jose Division is the district and

8  division embracing the place where the original action was pending.

9

**PARTIES**

10    4.    Plaintiff is and was, at all relevant times mentioned herein, an individual residing in

11  the State of California.

12    5.    Plaintiff is informed and believes, and thereupon alleges, that Defendant SAFE

13  BOX LOGISTICS INC. is, and at all relevant times mentioned herein was, a California corporation

14  doing business in the State of California.

15    6.    Plaintiff is informed and believes, and thereupon alleges, that Defendant FEDEX

16  GROUND PACKAGE SYSTEM, INC. is, and at all relevant times mentioned herein was, a

17  Delaware corporation doing business in the State of California.

18    7.    Plaintiff is ignorant of the true names and capacities of the defendants sued herein as

19  DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names.

20  Plaintiff will amend this Complaint to allege the true names and capacities of the DOE defendants

21  when ascertained.  Plaintiff is informed and believes, and thereupon alleges, that each of the

22  fictitiously named defendants are responsible in some manner for the occurrences, acts and

23  omissions alleged herein and that Plaintiff's alleged damages were proximately caused by these

24  defendants, and each of them.  Plaintiff will amend this complaint to allege both the true names and

25  capacities of the DOE defendants when ascertained.

26    8.    Plaintiff is informed and believes, and thereupon alleges that, at all relevant times

27  mentioned herein, some or all of the defendants were the representatives, agents, employees,

28  partners, directors, associates, joint venturers, joint employers, principals, or co-participants of some

1  or all of the other defendants, and, in doing the things alleged herein, were acting within the course

2  and scope of such relationship and with the full knowledge, consent, and ratification by such other

3  defendants.

4                                    **CLASS ALLEGATIONS**

5          9.      This action has been brought and may be maintained as a class action pursuant to

6  Code of Civil Procedure § 382, because there is a well-defined community of interest among the

7  persons who comprise the readily ascertainable classes defined below and because Plaintiff is

8  unaware of any difficulties likely to be encountered in managing this case as a class action.

9          10.     **Relevant Time Period**: The relevant time period is defined as the time period

10  beginning four years prior to the filing of this action until judgment is entered.

11          **Hourly Employee Class**:  All persons who performed work for FedEx and/or Safe
     Box and/or any other FedEx contractor in their capacity as "Drivers" and/or in
12          positions with similar job titles or duties in California during the **Relevant Time
     Period.**

13
               **Meal Period Sub-Class**: All **Hourly Employee Class** members who worked
14             in a shift in excess of five hours during the **Relevant Time Period**.

15             **Rest Break Sub-Class**: All **Hourly Employee Class** members who worked a
               shift of at least three and one-half (3.5) hours during the **Relevant Time
16             Period**.

17             **Wage Statement Penalties Sub-Class**: All **Hourly Employee Class**
               members employed by Defendants in California during the period beginning
18             one year before the filing of this action and ending when final judgment is
               entered.
19
               **Waiting Time Penalties Sub-Class**: All **Hourly Employee Class** members
20             who separated from their employment with Defendants during the period
               beginning three years before the filing of this action and ending when final
21             judgment is entered.

22          **UCL Sub-Class**: All **Hourly Employee Class** members employed by Defendants in
     California during the **Relevant Time Period**.
23
            **Expense Reimbursement Sub-Class:** All **Hourly Employee Class** members in
24          California who used their personal cell phone for work and/or had a uniform and/or
     incurred business expenses including but not limited to being required to purchase
25          hand sanitizer and/or gloves, and/or masks and/or cleaning wipes during the **Relevant
     Time Period**.
26
            **Vacation Pay Sub-Class**: All **Hourly Employee Class** members who earned paid
27          vacation days, without receiving compensation for each vested paid vacation day
     during the **Relevant Time Period**.

28

11.    **Reservation of Rights**:  Pursuant to Rule of Court 3.765(b), Plaintiff reserves the right to amend or modify the class definitions with greater specificity by further division into sub-classes and/or by limitation to particular issues.

12.    **Numerosity**: The class members are so numerous that the individual joinder of each individual class member is impractical. While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes, and thereupon alleges, that the actual number exceeds the minimum required for numerosity under California law.

13.    **Commonality and Predominance:** Common questions of law and fact exist as to all class members and predominate over any questions that affect only individual class members. These common questions include, but are not limited to:

   i.    Whether Defendants maintained a policy or practice of failing to provide employees with their meal periods;

   ii.    Whether Defendants maintained a policy or practice of failing to provide employees with their rest breaks;

   iii.    Whether Defendants failed to pay premium wages to class members when they have not been provided with required meal and/or rest breaks;

   iv.    Whether Defendants failed to pay minimum and/or overtime wages to class members as a result of policies that fail to provide meal periods in accordance with California law;

   v.    Whether Defendants failed to pay minimum and/or overtime wages to class members for all time worked;

   vi.    Whether Defendants used payroll formulas that systematically fail to account for non-discretionary bonuses and/or other applicable remuneration when calculating regular rates of pay for class members;

   vii.    Whether Defendants failed to pay overtime wages to class members as a result of incorrectly calculating their regular rates of pay;

   viii.    Whether Defendants failed to pay premium wages to class members based on their respective "regular rates of compensation" by not including commissions and/or

other applicable remuneration in calculating the rates at which those wages are paid;

ix.   Whether Defendants failed to provide proportionate accruals for vested vacation time for class members as required by California law;

x.   Whether Defendants subjected the vacation time and/or floating holidays they offer to class members to forfeiture;

xi.   Whether Defendants failed to reimburse class members for all necessary business expenses incurred during the discharge of their duties;

xii.   Whether Defendants failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked;

xiii.   Whether Defendants applied policies or practices that result in late and/or incomplete final wage payments;

xiv.   Whether Defendants are liable to class members for waiting time penalties under Labor Code section 203;

xv.   Whether class members are entitled to restitution of money or property that Defendants may have acquired from them through unfair competition;

14.   **Typicality:** Plaintiff's claims are typical of the other class members' claims. Plaintiff is informed and believes, and thereupon alleges, that Defendants have a policy or practice of failing to comply with the Labor Code and Business and Professions Code as alleged in this Complaint.

15.   **Adequacy of Class Representative:** Plaintiff is an adequate class representative in that she has no interests that are adverse to or otherwise conflict with the interests of absent class members and is dedicated to vigorously prosecuting this action on their behalf. Plaintiff will fairly and adequately represent and protect the interests of the other class members.

16.   **Adequacy of Class Counsel:** Plaintiff's counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiff or absent class members, are experienced in wage and hour class action litigation, and are dedicated to vigorously prosecuting this action on behalf of Plaintiff and absent class members.

17.    **Superiority:** A class action is vastly superior to other available means for fair and efficient adjudication of the class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to prosecute their common claims simultaneously and efficiently in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many individual class members are likely to be relatively small and would thus make it difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of monies owed to them. Further, a class action will prevent the potential for inconsistent or contradictory judgments inherent in individual litigation.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

18.    Plaintiff worked for Defendants as an hourly, non-exempt employee from approximately October 2019 through August 4, 2020.

### Joint Employment

19.    FedEx contracts with approximately 5,000 different companies which handle FedEx Ground deliveries across the United States and also in California. Safe Box is one of these many contractors. FedEx jointly employed Plaintiff and some members of the putative class with Safe Box. FedEx similarly jointly employs drivers with the thousands of other contractors through an interconnected business structure. Plaintiff and the putative class applied for a position as a "FedEx driver."

20.    Furthermore, Defendants had Plaintiff and the putative class consent to authorizing a background check prior to employment which was to be procured by the company First Advantage. The caption page of that consent form notes that the background check is being procured by First Advantage on behalf of the employer FEDEX GROUND PACKAGE SYSTEM INC. and lists the address as 1000 Fed Ex Drive, Moon Township Pennsylvania.

21.    During their employment Plaintiff and the putative class wore uniforms with the "FedEx" logo on them, as did Plaintiff's managers and supervisors Terry, Will, Jeff, and Angel [surnames unknown]. Plaintiff and the putative class's schedule and working hours were set by

1  FedEx. The routes that Plaintiff and the putative class took delivering packages were controlled and
2  created by FedEx.

3        22.    Plaintiff worked primarily out of a warehouse in Roseville, California. The
4  warehouse had signage indicating that it was a FedEx Warehouse. The truck that Plaintiff and the
5  putative class drove was marked as a FedEx truck. A large FedEx logo appeared on the truck.

6        23.    Plaintiff and the putative class were provided with a scanner to collect information
7  about packages and transmit that information to FedEx. Plaintiff and the putative class were
8  provided with a tablet that was preloaded with an application to provide route directions and
9  destinations. The application was a FedEx application. Plaintiff and the putative class signed in
10 through the FedEx application to begin scanning packages and signed out of the FedEx application
11 at the end of their workdays. Plaintiff and the putative class were instructed by their Managers and
12 Supervisors how to enter log in credentials which were supplied by FedEx.

13       24.    FedEx maintained control over which packages and the amount of packages Plaintiff
14 and the putative class were required to deliver on their shifts. Plaintiff is informed and believes, and
15 thereupon alleges, that Safe Box contracts only with FedEx and no other entities.

16       25.    Additionally, Plaintiff and the putative class submitted timesheets regarding the
17 hours they worked. On information and belief, Plaintiff alleges that when Plaintiff and the putative
18 class did not write out their own timesheets, their managers and supervisors filled out their
19 timesheets for them by getting the clock-in data from mygroundbiz.com, a portal used by FedEx to
20 collaborate with contractors like Safe Box. On timesheets that were not signed by Plaintiff,
21 Plaintiff's manager filled out the timesheet and wrote "OffMyGroundBiz" where the employee
22 signature usually went on similar timesheets that were signed by Plaintiff herself. On information
23 and belief, Plaintiff alleges that MyGroundBiz is an online portal at mygroundbiz.com that requires
24 a FedEx ID number to sign into.

25       26.    Plaintiff and members of the putative class were jointly employed by FedEx and
26 thousands of other contractors, including but not limited to Safe Box, through an interconnected
27 business structure.

28 ///

FIRST AMENDED CLASS AND REPRESENTATIVE-ACTION COMPLAINT

**Security Check and Off-the-Clock**

27.     Plaintiff and the putative class were required by Defendants to go through a security check at the time of entering and leaving the premises in which they worked. The security check required Plaintiff and the putative class to first wait in a general-purpose line where anyone who wanted to enter the venue was required to go through a security screening. All delivery drivers would have to go through the security checks so it would take between five (5) and fifteen (15) minutes on average to complete.

28.     Plaintiff and the putative class were required to spend at least five (5) to fifteen (15) minutes each time they went through the security check—time that was not paid by Defendants.

29.     Plaintiff and the putative class were required to go through the security check prior to clocking in at the beginning of each work shift and were required to clock out first at the end of each work shift prior to going through the security check.

30.     Based on the above, Defendants' security check practices have resulted in substantial amounts of time not recorded as hours worked therefore resulting in substantial amounts of wages not paid to Plaintiff and the putative class, between ten (10) to thirty (30) minutes each day of work.

31.     Additionally, Plaintiff and the putative class were required to secure their truck and get routes before clocking in. Plaintiff and the putative class were required to perform a comprehensive inspection of both the outside of their vehicle as well as all the packages inside before clocking in. Conducting this inspection at the beginning of the day could take a long time, and Plaintiff could spend up to an hour after her arrival performing work duties before she could clock in.

32.     Plaintiff and the putative class were likewise required to inspect their vehicles after clocking out each evening. This was further time spent working that was not compensated to Plaintiff and the putative class.

33.     As more specifically delineated herein below, Defendants automatically deducted a half hours' pay whether or not a meal break was taken on each day.  Plaintiff and the putative class had this time automatically deducted despite not taking their full meal breaks or any meal break at

all.

34.    As a result of performing off-the-clock work that was directed, permitted, or otherwise encouraged by Defendants, Plaintiff and the putative class should have been paid for this time. Instead, Defendants only paid Plaintiff and the putative class based on the time they were clocked in for their shifts and did not pay Plaintiff and the putative class for any of the time spent working off-the-clock.

35.    Defendants knew or should have known that Plaintiff and the putative class were performing work before and after their scheduled work shifts and failed to pay Plaintiff and the putative class for these hours.  Defendants' awareness is demonstrated by the fact that they require these pre-trip and post-trip inspections and security checks while only paying for time that the drivers are signed into the FedEx application.

36.    Defendants were aware of this practice and directed, permitted, or otherwise encouraged Plaintiff and the putative class to perform off-the-clock work.

**Missed Meal Periods**

37.    During their employment with Defendants, Plaintiff and the putative class regularly worked shifts of eight to twelve hours per day without being afforded a meal break during the first five hours, and/or a second meal break after ten hours, as required by California law. Defendants had a policy of automatically deducting one half hour from Plaintiff's and the putative class's paychecks, regardless of whether Plaintiff and the putative class received a meal period.

38.    Plaintiff and the putative class were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) Defendants' policy of not scheduling each meal period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest break policy that encouraged employees to take their meal and rest breaks.

39.    As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours

worked due to complying with Defendants' productivity requirements that required Plaintiff and the putative class to work through their meal periods in order to complete their assignments on time.

40.     Plaintiff and the putative class were required to text their managing supervisor when they were taking lunch. Management would then unilaterally deduct one half hour from their clocked-in hours to reflect a meal period. However, Plaintiff's manager Angel [surname unknown] would almost always call to interrupt plaintiff's meal period with pressing work tasks and/or to give instructions. Plaintiff and the putative class were instructed not to leave their truck and were required to stay at their workstation and otherwise not exercise their right to be relieved of work obligations while they took their meal period. Especially during the coronavirus pandemic, delivery drivers were given extremely high volumes of packages to deliver to Americans largely confined indoors. Defendants' management frequently gave Plaintiff and the putative class more destinations and work during their meal periods with the expectation that they drop what they are doing and immediately attend to their work duties despite Defendants auto deducting one half hour.

41.     At least twice a week, Plaintiff was given such a large amount of work that she knew she would fall too far behind if she took a lunch period, so she was unable to if she had any hope of staying on schedule.

42.     Additionally, Defendants were able to view in real time the locations of each of the drivers on their routes and could see that they were not stopping to take breaks during their shifts.

**Missed Rest Breaks**

43.     Plaintiff and the putative class were not provided with rest breaks of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants' policy of not scheduling each rest break as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest break policy that encouraged employees to take their meal and rest breaks.

44.     On many occasions, plaintiff and the putative class were only provided with one rest break despite frequently being scheduled for and working at least eight (8) hours in a shift. Plaintiff and the putative class never had their rest breaks recorded or scheduled, they were instructed to text their manager when they were on a rest break; however, they were almost never afforded time to rest and were frequently interrupted even if they did text their manager and ask to take a rest break.

45.     For example, on August 4, 2020, during her final pay period, Plaintiff worked a shift of at least 10.35 hours, yet was unable to take three rest breaks due to the amount of packages she needed to deliver and did not notify her supervisor of three rest breaks on that day.  Plaintiff's supervisors would have seen that she could not take these breaks because they could track her vehicle in real time and provided her with so many packages that she otherwise would not have completed her route in that time.

46.     As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted rest breaks of at least ten (10) minutes for each four (4) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and the putative class to work through their rest breaks in order to complete their assignments on time.

**Vacation Pay**

47.     Plaintiff and the putative class accrued vacation wages during their employment with Defendants, which was reflected on their paystubs.

48.     Vacation wages are considered a form of wages under Labor Code § 200. Vested vacation pay and other similar forms of paid time off earned based on labor performed are considered wages that cannot be subject to forfeiture without compensation for forfeited days at the applicable rates required by law.

49.     At all relevant times, Defendants maintained policies that provide for the unlawful forfeiture of vested vacation pay in violation of Labor Code § 227.3 and *Suastez v. Plastic Dress-Up Co.*, (1982) 31 Cal. 3d 774.

50.     Plaintiff and the putative class are entitled to vacation accrued during their employment with Defendants. Upon termination, Plaintiff and the putative class were not paid all

accrued vacation pay. Specifically, Plaintiff's final pay stub noted 32 hours of accrued vacation with a remaining balance of 32 hours, yet she did not receive any payment for those 32 hours.

### Expense Reimbursement

51.     Plaintiff and the putative class members were required by Defendants to utilize their own personal cell phones to perform their job duties.

52.     Plaintiff and the putative class members were not reimbursed for business expenses incurred in frequently using their cell phones to navigate when the tablet they were provided did not function, to contact management and communicate pertinent information regarding their work obligations, including requesting their meal and rest breaks. Furthermore, Plaintiff and the putative class members were required to mark packages and purchase their own markers because they were not provided by Defendants. During the heightened health safety precautions adopted during the coronavirus pandemic, Defendants lacked protective supplies such as hand sanitizer, cleaning wipes, masks, and gloves. Plaintiff and the putative class supplied their own cleaning and precautionary sanitary equipment in order to safely do their job and were not reimbursed by defendants.

53.     Plaintiff and the putative class were provided with a work uniform which they were instructed to wear. Plaintiff and the putative class were forced to maintain their uniform themselves and would regularly wash their uniform to keep it presentable for the employer's benefit. Plaintiff's uniform was too large because she was provided with a male uniform that would constantly fall off during her work shift. Plaintiff purchased her own uniform and was not reimbursed for the cost. Plaintiff informed her managers that she had needed to purchase her own uniform since the male uniform did not fit.

54.     In addition, Plaintiff and the putative class members were not paid at least two times the minimum wage for all hours worked.

55.     Defendants failed to reimburse Plaintiff and the putative class for such necessary business expenses incurred by them.

### Wage Statements

56.     Plaintiff and the putative class were not provided with accurate wage statements as

mandated by law pursuant to Labor Code § 226.

57.    Defendants failed to comply with Labor Code section 226(a)(1) as "gross wages earned" were not accurately reflected in that all hours worked, including the aforementioned overtime and "off-the-clock" work, were not included.

58.    Defendants failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that all hours worked, including overtime and "off-the-clock" work, were not included.

59.    Defendants failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that all hours worked, including overtime and "off-the-clock" work, were not included.

60.    Defendants failed to comply with Labor Code section 226(a)(9) as "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" were not accurately reflected in that all hours worked, including overtime and "off-the-clock" work, were not included.

## FIRST CAUSE OF ACTION

## FAILURE TO PROVIDE MEAL PERIODS

## (Lab. Code §§ 204, 223, 226.7, 512 and 1198)

## (Plaintiff and Meal Period Sub-Class)

61.    Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

62.    At all relevant times, Plaintiff and the **Meal Period Sub-Class** members have been non-exempt employees of Defendants entitled to the full meal period protections of both the Labor Code and the applicable Industrial Welfare Commission Wage Order ("Wage Order").

63.    Labor Code § 512 and § 11 of the applicable Wage Order impose an affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five hours, and to provide them with two uninterrupted, duty-free meal periods of at least thirty minutes for each work period of ten hours.

64.    Labor Code § 226.7 and § 11 of the applicable Wage Order both prohibit employers

from requiring employees to work during required meal periods and require employers to pay non-exempt employees an hour of premium wages on each workday that the employee is not provided with the required meal period.

65.     Compensation for missed meal periods constitutes wages within the meaning of Labor Code § 200.

66.     Labor Code § 1198 makes it unlawful to employ a person under conditions that violate the applicable Wage Order.

67.     Section 11 of the applicable Wage Order states:

> "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked.  An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.  The written agreement shall state that the employee may, in writing, revoke the agreement at any time."

68.     At all relevant times, Plaintiff was not subject to a valid on-duty meal period agreement. Plaintiff is informed and believes that, at all relevant times, **Meal Period Sub-Class** members were not subject to valid on-duty meal period agreements with Defendants.

69.     Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing Plaintiff and members of the **Meal Period Sub-Class** with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code § 512 and the applicable Wage Order.

70.     Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of failing to pay premium wages to **Meal Period Sub-Class** members when they worked five (5) hours without clocking out for any meal period.

71.     Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one half hour for a meal period from the paychecks of **Meal Period Sub-Class** members on each day they worked, regardless of whether or not they were able to take an uninterrupted, duty-free meal period.

72.    Moreover, Defendants' written policies do not provide that employees must take their first meal period before the end of the fifth hour of work, that employees are entitled to a second meal period if they work a shift of over ten hours, or that the second meal period must commence before the end of the tenth hour of work, unless waived.

73.    Plaintiff was never able to take a second meal period or informed of her right to do so on any occasion that she worked a shift over ten hours, which happened on average at least once per week beginning in April of 2020.

74.    At all relevant times, Defendants failed to pay Plaintiff and the **Meal Period Sub-Class** members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided.

75.    Pursuant to Labor Code §§ 204, 218.6 and 226.7, Plaintiff, on behalf of herself and the **Meal Period Sub-Class** members, seek to recover unpaid premium wages, interest thereon, and costs of suit.

76.    Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of herself and the **Meal Period Sub-Class** members, seeks to recover reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### FAILURE TO PROVIDE REST BREAKS

### (Lab. Code §§ 204, 223, 226.7 and 1198)

### (Plaintiff and Rest Break Sub-Class)

77.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

78.    At all relevant times, Plaintiff and the **Rest Break Sub-Class** members have been non-exempt employees of Defendants entitled to the full rest break protections of both the Labor Code and the applicable Wage Order.

79.    Section 12 of the applicable Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest breaks at a rate of no less than ten minutes of net rest time for each four-hour work period, or major fraction thereof, that must be in the middle of each work period insofar as practicable.

80.    Labor Code § 226.7 and § 12 of the applicable Wage Order both prohibit employers from requiring employees to work during required rest breaks and require employers to pay non-exempt employees an hour of premium wages at the employees' regular rates of pay, on each workday that the employee is not provided with the required rest break(s).

81.    Compensation for missed rest breaks constitutes wages within the meaning of Labor Code § 200.

82.    Labor Code § 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

83.    Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing members of the **Rest Break Sub-Class** with net rest break of at least ten minutes for each four-hour work period, or major fraction thereof, as required by the applicable Wage Order.

84.    At all relevant times, Defendants failed to pay Plaintiff and the **Rest Break Sub-Class** members additional premium wages when required rest breaks were not provided.

85.    Specifically, Defendants written policies do not provide that employees may take a rest break for each four hours worked, or major fraction thereof, nor that rest breaks should be taken in the middle of each work period insofar as practicable.

86.    Pursuant to Labor Code §§ 204, 218.6 and 226.7, Plaintiff, on behalf of herself and **Rest Break Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

87.    Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of herself and **Rest Break Sub-Class** members, seeks to recover reasonable attorneys' fees.

## **THIRD CAUSE OF ACTION**

### **FAILURE TO PAY HOURLY AND OVERTIME WAGES**

### **(Lab. Code §§ 223, 510, 1194, 1197 and 1198)**

### **(Plaintiff and Hourly Employee Class)**

88.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

89.     At all relevant times, Plaintiff and **Hourly Employee Class** members are or have been non-exempt employees of Defendants entitled to the full protections of the Labor Code and the applicable Wage Order.

90.     Section 2 of the applicable Wage Order defines "hours worked" as "the time during which an employee is subject to the control of the employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

91.     Section 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consists of all hours that an employer has actual or constructive knowledge that employees are working.

92.     Labor Code § 1194 invalidates any agreement between an employer and an employee to work for less than the minimum or overtime wage required under the applicable Wage Order.

93.     Labor Code § 1194.2 entitles non-exempt employees to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the underlying unpaid minimum wages and interest thereon.

94.     Labor Code § 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Order for all hours worked during a payroll period.

95.     Labor Code § 1197.1 provides that it is unlawful for any employer or any other person acting either individually or as an officer, agent, or employee of another person to pay an employee, or cause an employee to be paid, less than the applicable minimum wage.

96.     Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the applicable Wage Order.

97.     Labor Code § 204 requires employers to pay non-exempt employees their earned wages for the normal work period at least twice during each calendar month on days the employer designates in advance and to pay non-exempt employees their earned wages for labor performed in excess of the normal work period by no later than the next regular payday.

98.     Labor Code § 223 makes it unlawful for employers to pay their employees lower

wages than required by contract or statute while purporting to pay them legal wages.

99.     Labor Code § 510 and § 3 of the applicable Wage Order require employers to pay non-exempt employees overtime wages of no less than one and one-half times the employees' respective regular rates of pay for all hours worked in excess of eight hours in one workday, all hours worked in excess of forty hours in one workweek, and for the first eight hours worked on the seventh consecutive day of one workweek.

100.    Labor Code § 510 and § 3 of the applicable Wage Order also require employers to pay non-exempt employees overtime wages of no less than two times the employees' respective regular rates of pay for all hours worked in excess of twelve hours in one workday and for all hours worked in excess of eight hours on a seventh consecutive workday during the workweek.

101.    Plaintiff is informed and believes that, at all relevant times, Defendants have applied centrally devised policies and practices to her and **Hourly Employee Class** members with respect to working conditions and compensation arrangements.

102.    At all relevant times, Defendants failed to pay hourly wages to Plaintiff and **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates.

103.    At all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one half hour from Plaintiff's timecard on every workday for a meal period, regardless of whether or not Plaintiff was provided with a meal period.

104.    Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one half hour from **Hourly Employee Class** members' timecard on every workday for a meal period, regardless of whether **Hourly Employee Class** members were provided with a meal period.

105.    As a result of Defendants' policy or practice of automatically deducting one half hour from employees' timecards for every workday for a meal period, Plaintiff and **Hourly Employee Class** members were required to perform off-the-clock work that Defendants either knew or should have known they were working.

106.    At all relevant times during the applicable limitations period, Defendants maintained

1    a policy or practice of requiring Plaintiff to undergo a security check and perform a vehicle

2    inspection before clocking in and after clocking out for each shift.

3        107.    Plaintiff is informed and believes that, at all relevant times during the applicable

4    limitations period, Defendants maintained a policy or practice of requiring **Hourly Employee Class**

5    members to undergo a security check and perform a vehicle inspection before clocking in and after

6    clocking out for each shift.

7        108.    As a result of Defendants' policy or practice of requiring security checks and vehicle

8    inspections before clocking in and after clocking out, Plaintiff and **Hourly Employee Class**

9    members were required to perform off-the-clock work that Defendants either knew or should have

10   known they were working.

11       109.    At all relevant times, Defendants failed to pay hourly wages to Plaintiff for all time

12   worked, including but not limited to, overtime wages at statutory and/or agreed rates by suffering or

13   permitting her to work during unpaid meal periods and/or failing to properly pay Plaintiff for all

14   overtime hours worked.

15       110.    Plaintiff is informed and believes that, at all relevant times during the applicable

16   limitations period, Defendants maintained a policy or practice of not paying hourly wages to

17   **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours

18   at statutory and/or agreed rates by suffering or permitting them to work during unpaid meal periods.

19       111.    Section 9 of the applicable Wage Order states:

20           "When uniforms are required by the employer to be worn by the employee as
             a condition of employment, such uniforms shall be provided and maintained
21           by the employer. The term 'uniform' includes wearing apparel and
             accessories of distinctive design or color."
22

23       112.    If the employer does not choose to maintain employees' uniforms itself where it is

24   required to do so, the Division of Labor Standards Enforcement ("DLSE") takes the position that

25   the employer may pay each affected employee a weekly maintenance allowance of an hour's pay at

26   the state minimum wage rate in lieu of maintaining the uniforms, assuming that an hour is a realistic

27   estimate of the time involved in maintaining the uniform.

28       113.    At all relevant times during the applicable limitations period, and in violation of the

above-referenced sections of the Labor Code and the applicable Wage Order, Defendants failed to compensate Plaintiff with minimum and/or overtime wages for all hours she worked as a result of its failure to maintain employee uniforms or pay her a weekly maintenance allowance.

114.    Plaintiff is informed and believes that, at all relevant times and in violation of the above-referenced sections of the Labor Code and the applicable Wage Order, Defendants failed to compensate **Hourly Employee Class** members with minimum and/or overtime wages for all hours they worked as a result of its failures to maintain employee uniforms or pay them a weekly maintenance allowance.

115.    During the relevant time period, Defendants failed to pay Plaintiff and **Hourly Employee Class** members all earned wages every pay period at the correct rates, including overtime rates, because Defendants directed, permitted, or otherwise encouraged Plaintiff and **Hourly Employee Class** members to perform off-the-clock work.

116.    As a result of Defendants' unlawful conduct, Plaintiff and **Hourly Employee Class** members have suffered damages in an amount subject to proof, to the extent they were not paid the full amount of wages earned during each pay period during the applicable limitations period, including overtime wages.

117.    Pursuant to Labor Code §§ 204, 218.6, 223, 510, 1194 and 1194.2, Plaintiff, on behalf of herself and **Hourly Employee Class** members, seeks to recover unpaid straight time and overtime wages, interest thereon, and costs of suit.

118.    Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of herself and **Hourly Employee Class** members, seeks to recover reasonable attorneys' fees.

<u>**FOURTH CAUSE OF ACTION**</u>

**FAILURE TO PAY VACATION WAGES**

**(Lab. Code § 227.3)**

**(Plaintiff and Vacation Pay Sub-Class)**

119.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

120.    California Labor Code section 227.3 provides:

Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.  The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness.

121.    At all relevant times during the applicable limitations period, Plaintiff and members of the **Vacation Pay Sub-Class** accrued vacation time during their employment with Defendants.

122.    As a result of Defendants' reimbursement policies and practices, Plaintiff is informed and believes and thereon alleges that Defendants failed to reimburse her and **Vacation Pay Sub-Class** members for all accrued vacation wages.

123.    By reason of the above, Plaintiff and the members of the **Vacation Pay Sub-Class** are entitled to restitution for all unpaid amounts due and owing to within four years (4) of the date of the filing of the original Complaint until the date of entry of judgment.

124.    Plaintiff, on behalf of herself and the members of the **Vacation Pay Sub-Class**, seeks interest thereon pursuant to California Labor Code section 218.6, costs pursuant to California Labor Code section 218.6, and reasonable attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

## FIFTH CAUSE OF ACTION

### FAILURE TO INDEMNIFY

### (Lab. Code § 2802)

### (Plaintiff and Expense Reimbursement Sub-Class)

125.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

126.    Labor Code section 2802(a) states:

An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

127.    At all relevant times during the applicable limitations period, Plaintiff and the **Expense Reimbursement Sub-Class** members incurred necessary business-related expenses and

1  costs, including but not limited to, frequent use of their personal cell phones to contact management
2  and the costs of maintaining their uniform in presentable condition.

3  128.  Plaintiff is informed and believes and thereupon alleges that Defendants failed to
4  indemnify Plaintiff for all necessary expenses incurred in the discharge of their duties.

5  129.  Plaintiff is informed and believes and thereupon alleges that reimbursement paid by
6  Defendants, if any, was insufficient to indemnify **Expense Reimbursement Sub-Class** members
7  for all necessary business expenses incurred in the discharge of their duties.

8  130.  Pursuant to Labor Code § 452, an employer is authorized to prescribe the weight,
9  color, quality, texture, style, form, and make of uniforms required to be worn by their employees.

10  131.  Section 9 of the applicable Wage Order states:

11  When uniforms are required by the employer to be worn by the employee as a
12  condition of employment, such uniforms shall be provided and maintained by the
   employer.  The term 'uniform' includes wearing apparel and accessories of distinctive
13  design or color.

14  132.  At all relevant times during the applicable limitations period, Defendants required
15  Plaintiff and the **Expense Reimbursement Sub-Class** members to pay for expenses and/or losses
16  caused by Defendants' want of ordinary care. Defendants failed to indemnify Plaintiff and **Expense**
17  **Reimbursement Sub-Class** members for all such expenditures.

18  133.  At all relevant times during the applicable limitations period, Defendants required
19  Plaintiff and **Expense Reimbursement Sub-Class** members to purchase and maintain uniforms and
20  apparel unique to Defendants at Plaintiff's and **Expense Reimbursement Sub-Class** members'
21  expense. Defendants failed to indemnify Plaintiff and **Expense Reimbursement Sub-Class**
22  members for all such expenditures.

23  134.  Plaintiff is informed and believes that, during the applicable limitations period,
24  Defendants maintained a policy or practice of not reimbursing Plaintiff and **Expense**
25  **Reimbursement Sub-Class** members for all necessary business expenses.

26  135.  Accordingly, Plaintiff and **Expense Reimbursement Sub-Class** members are
27  entitled to restitution for all unpaid amounts due and owing within four years of the date of the
28  filing of the original Complaint and until the date of entry of judgment.

136.    Plaintiff, on behalf of herself , and **Expense Reimbursement Sub-Class** members, seeks interest thereon and costs pursuant to Labor Code § 218.6 and reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5.

### SIXTH CAUSE OF ACTION

### FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS

### (Lab. Code § 226)

### (Plaintiff and Wage Statement Penalties Sub-Class)

137.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

138.    Labor Code § 226(a) states:

An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.  The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.  For purposes of this subdivision, 'copy' includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision.

139.    The Division of Labor Standards Enforcement ("DLSE") has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee. (DLSE Opinion

Letter July 6, 2006.)

140.    Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have failed to provide **Wage Statement Penalties Sub-Class** members with accurate written wage statements as described above.

141.    Plaintiff is informed and believes that Defendants' failure to provide her and **Wage Statement Penalties Sub-Class** members with accurate written wage statements were intentional in that Defendants had the ability to provide them with accurate wage statements but had intentionally provided them with written wage statements that Defendants knew do not comply with Labor Code § 226(a).

142.    Plaintiff and **Wage Statement Penalties Sub-Class** members have suffered injuries, in that Defendants have violated Plaintiff's and **Wage Statement Penalties Sub-Class** members' legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned. In addition, inaccurate information on their wage statements have prevented immediate challenges to Defendants' unlawful pay practices, has required discovery and mathematical computations to determine the amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to federal and state government agencies.

143.    Pursuant to Labor Code § 226(e), Plaintiff, on behalf of herself and **Wage Statement Penalties Sub-Class** members, seeks the greater of actual damages or fifty dollars ($50.00) for the initial pay period in which a violation of Labor Code section 226(a) occurred and one hundred dollars ($100.00) for each subsequent pay period in which a violation of Labor Code § 226(a) occurred, not to exceed an aggregate penalty of four thousand dollars ($4,000.00) per class member.

144.    Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff, on behalf of herself and **Wage Statement Penalties Sub-Class** members, seek awards of reasonable attorneys' fees and costs.

///

///

///

**SEVENTH CAUSE OF ACTION**

**FAILURE TO TIMELY PAY ALL FINAL WAGES**

**(Lab. Code §§ 201–203)**

**(Plaintiff and Waiting Time Penalties Sub-Class)**

145.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

146.    At all relevant times, Plaintiff and **Waiting Time Penalties Sub-Class** members have been entitled, upon the end of their employment with Defendants, to timely payment of all wages earned and unpaid before termination or resignation.

147.    At all relevant times, pursuant to Labor Code § 201, employees who have been discharged have been entitled to payment of all final wages immediately upon termination.

148.    At all relevant times, pursuant to Labor Code § 202, employees who have resigned after giving at least seventy-two (72) hours' notice of resignation have been entitled to payment of all final wages at the time of resignation.

149.    At all relevant times, pursuant to Labor Code § 202, employees who have resigned after giving less than seventy-two (72) hours' notice of resignation have been entitled to payment of all final wages within seventy-two (72) hours' of giving notice of resignation.

150.    During the applicable limitations period, Defendants failed to pay Plaintiff all of her final wages in accordance with the Labor Code by failing to timely pay her all of her final wages.

151.    Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have failed to timely pay **Waiting Time Penalties Sub-Class** members all of their final wages in accordance with the Labor Code.

152.    Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have maintained a policy or practice of paying **Waiting Time Penalties Sub-Class** members their final wages without regard to the requirements of Labor Code §§ 201 or 202 by failing to timely pay them all final wages.

153.    Plaintiff is informed and believes and thereupon alleges that Defendants' failure to timely pay all final wages to her and **Waiting Time Penalties Sub-Class** members have been willful in that Defendants have the ability to pay final wages in accordance with Labor Code §§ 201

and/or 202 but have intentionally adopted policies or practices that are incompatible with those requirements.

154.    Pursuant to Labor Code §§ 203 and 218.6, Plaintiff, on behalf of herself and **Waiting Time Penalties Sub-Class** members, seeks waiting time penalties from the respective dates that their final wages had first become due until paid, up to a maximum of thirty days, and interest thereon.

155.    Pursuant to Labor Code § 226, Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff, on behalf of herself and **Waiting Time Penalties Sub-Class** members, seek awards of reasonable attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

### UNFAIR COMPETITION

**(Bus. & Prof. Code §§ 17200 *et seq*.)**

**(Plaintiff and UCL Sub-Class)**

156.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

157.    Business and Professions Code § 17200 defines "unfair competition" to include any unlawful business practice.

158.    Business and Professions Code §§ 17203–17204 allow a person who has lost money or property as a result of unfair competition to bring a class action in accordance with Code of Civil Procedure § 382 to recover money or property that may have been acquired from similarly situated persons by means of unfair competition.

159.    California law requires employers to pay hourly, non-exempt employees for all hours they are permitted or suffered to work, including hours that the employer knows or reasonably should know that employees have worked.

160.    Plaintiff, on behalf of herself and the **UCL Sub-Class** members, re-alleges and incorporates the FIRST, SECOND, THIRD, FOURTH, and FIFTH causes of action herein.

161.    Plaintiff lost money and/or property as a result of the aforementioned unfair competition.

162.    Defendants have or may have acquired money by means of unfair competition.

163.    Plaintiff is informed and believes and thereupon alleges that, by committing the Labor Code violations described in this Complaint, Defendants violated Labor Code §§ 215, 216, 225, 226.6, 354, 408, 553, 1175, 1199 and 2802. Defendants thus committed misdemeanors by violating the Labor Code as alleged herein.

164.    Defendants have committed criminal conduct through their policies and practices of, *inter alia*, failing to comport with their affirmative obligations as an employer to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five or more hours, by subjecting their vacation pay to forfeiture, by failing to pay non-exempt employees for all hours worked, and by failing to reimburse them for all expenses.

165.    At all relevant times, Plaintiff and **UCL Sub-Class** members have been non-exempt employees and entitled to the full protections of both the Labor Code and the applicable Wage Order.

166.    Defendants' unlawful conduct as alleged in this Complaint amounts to and constitutes unfair competition within the meaning of Business and Professions Code section 17200 *et sequitur*. Business and Professions Code §§ 17200 *et sequitur* protect against unfair competition and allow a person who has suffered an injury-in-fact and has lost money or property as a result of an unfair, unlawful, or fraudulent business practice to seek restitution on behalf of herself and on behalf of similarly situated persons in a class-action proceeding.

167.    As a result of Defendants' violations of the Labor Code during the applicable limitations period, Plaintiff has suffered an injury-in-fact and has lost money or property in the form of earned wages.  Specifically, Plaintiff has lost money or property as a result of Defendants' conduct.

168.    Plaintiff is informed and believes that other similarly situated persons have been subject to the same unlawful policies or practices of Defendants.

169.    Due to the unfair and unlawful business practices in violation of the Labor Code, Defendants have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their legal obligations.

170.    California's Unfair Competition Law ("UCL") permits civil recovery and injunctive

1  relief for "any unlawful, unfair or fraudulent business act or practice," including a practice or act

2  that violates, or is considered unlawful under, any other state or federal law.

3      171.    Accordingly, pursuant to Business & Professions Code §§ 17200 and 17203,

4  Plaintiff requests the issuance of temporary, preliminary, and permanent injunctive relief enjoining

5  Defendants, and each of them, and their agents and employees, from further violations of the Labor

6  Code and applicable Industrial Welfare Commission Wage Orders, and upon a final hearing, an

7  order permanently enjoining Defendants, and each of them, and their respective agents and

8  employees, from further violations of the Labor Code and applicable Industrial Welfare

9  Commission Wage Orders.

10      172.    Pursuant to Business and Professions Code § 17203, Plaintiff, on behalf of herself

11  and **UCL Sub-Class** members, seeks declaratory relief and restitution of all monies rightfully

12  belonging to them that Defendants did not pay them or otherwise retained by means of its unlawful

13  and unfair business practices.

14      173.    Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or

15  the common fund doctrine, Plaintiff and **UCL Sub-Class** members are entitled to recover

16  reasonable attorneys' fees in connection with their unfair competition claims.

17  

**NINTH CAUSE OF ACTION**

18  **CIVIL PENALTIES**

19  **(Lab. Code §§ 2698 *et seq.*)**

20      174.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

21      175.    During the applicable limitations period, Defendants have violated Labor Code §§

22  201, 202, 203, 204, 223, 226(a), 226.7, 227.3, 510, 512, 1194, 1197, 1198, and 2802.

23      176.    Labor Code §§ 2699(a) and (g) authorize an aggrieved employee, on behalf of

24  herself and other current and former employees, to bring a representative civil action to recover

25  civil penalties pursuant to the procedures set forth in Labor Code § 2699.3 that may, but need not,

26  be brought or maintained as a class action pursuant to Code of Civil Procedure section 382.

27      177.    Plaintiff, a former employee against whom Defendants committed one or more of the

28  alleged Labor Code violations during the applicable limitations period, is an aggrieved employee

within the meaning of Labor Code § 2699(c).

178.    Plaintiff has complied with the procedures for bringing suit specified in Labor Code § 2699.3. Notice was provided to the California Labor & Workforce Development Agency ("LWDA") and 65 days have elapsed without the LWDA providing Plaintiff with any notice of an intent to intervene.

179.    Pursuant to Labor Code sections 2699(a) and (f), Plaintiff seeks the following civil penalties for Defendants' violations of Labor Code §§ 201, 202, 203, 204, 223, 226(a), 226.7, 227.3, 510, 512, 1194, 1197, 1198 and 2802:

     i.     For violations of Labor Code §§ 201, 202, 203, 212, 226.7, 227.3, 1194, 1198 and 2802, one hundred dollars ($100) for each employee per pay period for each initial violation and two hundred dollars ($200) for each employee per pay period for each subsequent violation (penalties set by Labor Code § 2699(f)(2));

     ii.     For violations of Labor Code § 203, a penalty in an amount not exceeding thirty (30) days' pay as waiting time (penalties set by Labor Code § 256);

     iii.     For violations of Labor Code § 204, one hundred dollars ($100) for each employee for each initial violation that was neither willful nor intentional, two hundred dollars ($200) for each employee, plus 25% of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and two hundred dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code § 210);

     iv.     For violations of Labor Code § 223, one hundred dollars ($100) for each employee for each initial violation that was neither willful nor intentional, two hundred dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each

initial violation that was either willful or intentional, and two hundred dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code § 225.5);

v. For violations of Labor Code § 226(a), if this action is deemed to be an initial citation, two hundred and fifty dollars ($250) for each employee for each violation. Alternatively, if an initial citation or its equivalent occurred before the filing of this action, one thousand dollars ($1,000) for each employee for each violation (penalties set by Labor Code § 226.3);

vi. For violation of Labor Code §§ 510 and 512, fifty dollars ($50) for each employee for each initial pay period for which the employee was underpaid, and one hundred dollars ($100) for each employee for each subsequent pay period for which the employee was underpaid (penalties set by Labor Code § 558);

vii. For violations of Labor Code § 1197, one hundred dollars ($100) for each aggrieved employee for each initial violation of Labor Code § 1197 that was intentional and two hundred and fifty dollars ($250) for each aggrieved employee per pay period for each subsequent violation of Labor Code § 1197, regardless of whether the initial violation was intentional (penalties set by Labor Code § 1197.1);

viii. Pursuant to Labor Code § 2699(g), Plaintiff seeks an award of reasonable attorneys' fees and costs in connection with Plaintiff's claims for civil penalties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated, all other aggrieved employees, the general public, and the State of California prays for relief and judgment against Defendants as follows:

FIRST AMENDED CLASS AND REPRESENTATIVE-ACTION COMPLAINT

1   (1) An order that the action be certified as a class action;

2   (2) An order that Plaintiff be appointed class representative;

3   (3) An order that counsel for Plaintiff be appointed class counsel;

4   (4) Unpaid wages;

5   (5) Actual damages;

6   (6) Liquidated damages;

7   (7) Restitution;

8   (8) Declaratory relief;

9   (9) Pre-judgment interest;

10   (10) Civil penalties;

11   (11) Statutory penalties;

12   (12) Costs of suit;

13   (13) Reasonable attorneys' fees; and

14   (14) Such other relief as the Court deems just and proper.

15     **DEMAND FOR JURY TRIAL**

16  Plaintiff, on behalf of herself, all other similarly situated, hereby demands a jury trial on all

17 issues so triable.

18

19 Dated: November 11, 2021    SETAREH LAW GROUP

20

21

22        SHAUN SETAREH

23        WILLIAM M. PAO
         NOLAN DILTS

24        Attorneys for Plaintiff
         JANICE GILMORE

25

26

27

28

FIRST AMENDED CLASS AND REPRESENTATIVE-ACTION COMPLAINT