UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JANICE GILMORE,<br><br>    Plaintiff,<br><br>v.<br><br>SAFE BOX LOGISTICS, INC., *et al.*,<br><br>    Defendants. | Case No.  21-cv-06917-TLT (RMI)<br><br>**ORDER RE: DISCOVERY DISPUTE LETTER BRIEF**<br><br>Re: Dkt. No. 89 |

Now pending before the court is a discovery dispute letter brief through which Plaintiff seeks to compel certain interrogatory responses and document production. *See* Ltr. Br. (dkt. 89) at 1-3. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument. By way of background, Plaintiff has filed a putative wage and hour class action lawsuit against Defendant FedEx Ground ("FedExG") and one of its many contract service providers, Defendant Safe Box Logistics, Inc. ("SafeBox"). *Id*. at 1. The essence of this case can be distilled down to the following disagreement: while FedExG disputes "that it ever had an employment relationship with Plaintiff or, for that matter, any of the thousands of service providers' employee drivers comprising Plaintiff's putative class (*see id*. at 3-4), Plaintiff has alleged that FedExG "is not only a joint employer, but also a 'client employer' as that term is defined under Labor Code [S]ection 2810.3 along with SafeBox and [FedExG's] other contracted service providers [], and therefore [Plaintiff] seeks relevant discovery from [FedExG] necessary to prosecute her claims as a class action, including in relevant part contact information of class members, timekeeping and payroll records, 'reports' of scanner data generated in support of [FedExG's] request for removal, and other documents sent to its

1  [contracted service providers]." *Id*. at 1. For the reasons stated below, Plaintiff's requests are
2  denied.
3        Plaintiff requests the compelled production of information under four categories. Through
4  the first and second categories, Plaintiff requests an order compelling a response (or, perhaps, a
5  *different* response) to an interrogatory that sought contact information for putative class members
6  (SROG1), as well as documents and records that show the payroll and timekeeping records
7  (including U.S. Department of Transportation "scanner data" relating to the elapsed time on duty
8  for all putative class members). *See id*. at 1-2. As to the putative class members' contact
9  information, as well as their payroll and timekeeping records, FedExG submits that "Plaintiff
10 seeks information that FedEx Ground <u>does not have</u>" because it "does not maintain employment
11 records for service provider drivers and disputes [Plaintiff's] joint employ[ment] status." *Id*. at 5.
12 Instead, FedExG submits that Plaintiff must seek that information from the entities that possess it
13 – namely, the service providers. *Id*. FedExG then adds that it "is providing Plaintiff contact
14 information for all service providers that employed putative class members so that Plaintiff can do
15 just that." *Id*. Plaintiff's portion of the letter brief (*see id*. at 1-3) does not address FedExG's
16 assertion that it does not possess the information Plaintiff seeks, nor does it address the assertion
17 that FedExG is providing Plaintiff with contact information for all service providers that employed
18 the putative class members so that Plaintiff can seek that information from the entities that possess
19 it. Because FedExG represents, and Plaintiff does not dispute, that FedExG does not possess (or
20 otherwise control) the information sought by Plaintiff, FedExG clearly does not have possession
21 or control for the purposes of Plaintiff's request to compel; therefore, FedExG cannot be
22 compelled to produce what it does not have. *See e.g.*, *Cont'l W. Ins. Co. v. Opechee Constr. Corp.*,
23 2016 U.S. Dist. LEXIS 54716 *10 (D. N.H. 2016). Naturally, therefore, Plaintiff's request to
24 compel FedExG to produce information and documents that it does not possess or otherwise
25 control is **DENIED**.
26       As for the scanner data – FedExG does possess such data, but it maintains that it is
27 attended with minimal (if any) probative value and that its production would represent such effort
28 as to render the request as unduly burdensome and disproportionate to the needs of the case. *See*

1  Ltr. Br. (dkt. 89) at 5. As described by FedExG, this scanner data "is not compensable
2  timekeeping data but, rather . . . hours of service data." *Id*. FedEx explains further that "[t]he DOT
3  requires recording of 'on-duty' hours as the DOT defines [it]." *Id*. The scanner data simply logs
4  the total elapsed "on duty" time pertaining to each driver's shift and a driver "is not considered
5  [for these purposes] off duty until he [or she] is done with all work responsibilities." *Id*. In other
6  words, the scanner data does not reflect break times because the DOT's regulation for this data
7  category "does not permit exclusion of any break times." *Id*. As explained by FedExG, "[t]he only
8  location [where] such information would be recorded would be in compensable time records
9  maintained by [the] service providers [and] [g]iven the minimal, to no, probative value of the
10 scanner data, force[ing] FedExG [] to gather and produce that information for a five-year period
11 for over 20,000 drivers is unduly burdensome and disproportionate to the needs of the case." *Id*.
12 Once again, Plaintiff's portion of the letter brief gives this issue short shrift. *See id*. at 2. Plaintiff
13 simply states that she wants the scanner data – neither does Plaintiff explain or discuss what
14 probative value may attend this scanner data, nor does she address FedExG's assertions about the
15 burdensome nature of this request or its disproportionality to the needs of the case. For these
16 reasons, Plaintiff's request to compel the scanner data in question is **DENIED**.

17    As to the third category, Plaintiff "seeks production of all documents between Defendant
18 and its ISPs relating to transporting and delivering packages for putative class members during the
19 relevant period." *Id*. at 2-3. While requesting the compelled production of "all documents" that
20 were exchanged between FedExG and all of its service providers during the relevant time period
21 and relating to transporting and delivering packages by putative class members in California – a
22 wildly broad phrasing – Plaintiff's justification for this request focuses only on the agreements
23 governing FedExG's relationship with each of these service providers. *See id*. Plaintiff's effort as
24 establishing relevance (which is, once again, limited to the agreements governing these
25 relationships, rather than "all documents between Defendant and its ISPs") is limited to the
26 following explanation:

27    > Given that FXG contends it did not employ putative class members,
     > but rather, putative class members were employed by ISPs, and that
28   > it contends this is a defense to class certification, production of the

3

>ISP agreements (evidencing the relationship between FXG and its ISP's) prior to certification is warranted and necessary. Such agreements will demonstrate the degree and means of control that FXG exercises over the ISPs (and in turn its control over putative class members) and is relevant to establishing Rule 23 certification factors such as numerosity, typicality, commonality, and ascertainability. FXG unilaterally limits its response to SafeBox and no other ISPs. This response is incomplete, and Plaintiff is entitled to this discovery. A party is obligated to produce all specified relevant and nonprivileged documents which are in the responding party's possession, custody or control on the date and place specified in the request. FRCP 34(a)(1). The purported contracts between FXG and its ISPs are directly at issue in this case and will either support or refute Plaintiff's claims or Defendant's defenses.

*See id*.

Initially, as to Plaintiff's request to compel "all documents" exchanged between FedExG and every ISP – that request is undeveloped and unsupported by argument; accordingly, the court deems that portion of this request as abandoned. *See e.g.*, *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (deeming abandoned all issues raised in a brief not supported by argument); *Grewal v. Choudhury*, 377 F. App'x 617 (9th Cir. 2010) (undeveloped issue not supported by argument is deemed abandoned).

As to the component of this request that seeks the compelled production of all agreements between FedExG and every ISP relating to all putative class members in California during the relevant time period, FedExG objects to the effect that this request too is overly burdensome and disproportionate to the needs of the case as it would require FedExG to gather and produce thousands of separate contracts. *Id*. at 5. Instead, FedExG states that it "has produced agreements and other documents concerning its relationship with Safe Box" and that it "has also agreed to provide Plaintiff with exemplars of the Agreements for each year in the putative class period," which FedExG submits "is more than sufficient to meet Plaintiff's needs at the class certification stage." *Id*. Once again, Plaintiff does not address these contentions, or otherwise venture to explain why the Safe Box documents, and the exemplars offered by FedExG are insufficient for Plaintiff's purposes at this stage of the case. Consequently, Plaintiff's request to compel FedExG to produce its entire repository of such agreements is **DENIED**. After receiving and reviewing the Safe Box documents, and the exemplars that FedExG has agreed to provide, if Plaintiff is able to articulate reasons why this degree of production (as to the ISP agreements) is insufficient for her purposes at

4

1  this stage of the case, and assuming an impasse continues to persist after good-faith meet-and-
2  confer efforts, Plaintiff is free to cause that dispute to be brought back before the court through
3  another jointly-filed letter brief at the appropriate time.
4        Regarding the final category of documents sought – Plaintiff seeks "documents related to
5  any internal financial analysis prepared by [FedExG] related to any decision to contract with ISPs
6  rather than directly employing its own drivers." *Id*. at 3. Plaintiff's explanation of the relevance of
7  this information appears to rely on a great deal of speculation in that Plaintiff only contends that
8  this information "*could* support or refute each [party's] contentions with respect to the nature of
9  [FedExG's] relationship with putative class members." *Id*. (emphasis supplied). For its part,
10 FedExG claims: (1) that its transition to this business model (and any financial analysis underlying
11 that decision) predates the relevant period involved in this case to such a substantial degree that
12 this information cannot be said to even possibly lead to admissible evidence; and, (2) that the
13 information is not even "remotely captured by the factors and considerations under California law
14 for establishing joint employment." *Id*. (citing *Salazar v. McDonald's Corp.*, 944 F.3d 1024,
15 1029-33 (9th Cir. 2019) (discussing the requirements for a joint employment finding under
16 California law). The court agrees with FedExG and finds Plaintiff's effort at establishing the
17 relevance of the financial analysis she seeks as half-hearted at best. Plaintiff only claims that this
18 information *might* support or refute some party's contentions (either hers or FedEx's) with respect
19 to the nature of FedExG's relationship with putative class members. *See* Ltr. Br. (dkt. 89) at 3.
20 This effort at establishing relevance is so sweeping and so generic that – under this reasoning –
21 "relevant evidence" would exclude nearly nothing and would include nearly everything.
22 Relevance must be established with a concrete logical chain, as opposed to speculation, guesswork
23 or hopes and wishes as to what the documents or information *might* reveal. *See generally Ramirez*
24 *v. City of Gilroy*, No. 17-cv-00625-VKD, 2018 U.S. Dist. LEXIS 202706, at *4 (N.D. Cal. Nov.
25 29, 2018) ("Their theory of relevance appears to be entirely speculative, and the Court has serious
26 concerns about its admissibility for any purpose at trial . . ."); *United States v. Mason*, Nos. CR
27 05-324-RE, CR 05-326-RE, CR 05-328-RE, CR 05-329-RE, CR 05-330-RE, 2008 U.S. Dist.
28 LEXIS 34537, at *8 (D. Or. Apr. 25, 2008) ("Defendant's argument as to the relevance of the

5

Portland records at issue is speculative. The mere hope that the pawn slips, if produced, *may* contain evidence favorable to the defendant's case is not sufficient to sustain a Rule 17(c) subpoena.") (emphasis supplied); *see also Shipley v. Forest Labs.*, No. 1:06-cv-00048-TC-DBP, 2014 U.S. Dist. LEXIS 98204, at *8 (D. Utah July 18, 2014) ("Defendant argued that a prior settlement agreement in other litigation was relevant because the defendants in that case would "be important witnesses in this case" and their settlement agreement's "terms *could* have an impact on [their] witness credibility and bias," however, the court denied the request and noted that "[w]ithout more information about the Julien defendants' credibility and bias issues, Defendant's arguments on these issues are too speculative to demonstrate relevance.") (emphasis supplied). Thus, in addition to FedExG's objection based on the temporal problems attending this request, Plaintiff's request to compel the production of this data is **DENIED** because Plaintiff has failed to establish its relevance given the highly speculative and generalized nature of Plaintiff's assertion that this information *could* support or refute either party's contentions with respect to FedExG's relationship with putative class members. *See* Ltr. Br. (dkt. 89) at 3.

**IT IS SO ORDERED.**

Dated: January 23, 2023

ROBERT M. ILLMAN
United States Magistrate Judge