UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JANICE GILMORE,<br><br>    Plaintiff,<br><br>v.<br><br>SAFE BOX LOGISTICS, INC., et al.,<br><br>    Defendants. | Case No. 21-cv-06917-AMO (RMI)<br><br>**ORDER RE: SECOND DISCOVERY LETTER BRIEF**<br><br>Re: Dkt. No. 107 |

Now pending before the court are a series of discovery disputes presented by way of a second jointly-filed letter brief (Ltr. Br. 2 (dkt. 107)) which presents one new issue and rehashes a pair of already-decided issues with new arguments. The undersigned finds that the Parties have had adequate opportunity to brief their positions; as provided in Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds that oral argument would not aid the court's decision-making process, and that this matter is suitable for disposition on the papers. For the reasons stated below, Plaintiff's request to compel the production of the material in question is denied.

Plaintiff once again seeks an order compelling Defendant FedEx Ground Package System, Inc. ("FXG") to provide it with contact information for putative class members (SROG1) – tens of thousands of drivers employed by upwards of 600 independent service providers that contract with FXG to provide drivers for its ground delivery network. *See id*. at 1, 3-4. Along with payroll and timekeeping records, and other information, Plaintiff moved to compel this information once before (*see* Ltr. Br. 1 (dkt. 89) at 1). At that time – apparently referring to the payroll and timekeeping data – FXG stated that "Plaintiff seeks information that FedEx Ground does not

1  have." *Id*. at 5. FXG also stated that it was providing Plaintiff with the contact information for the
2  600 independent service providers such that Plaintiff could seek individual driver contact
3  information from each service provider. *Id*. In denying Plaintiff's request, the court relied on
4  FXG's representation that it did not have the information sought because it did not maintain
5  employment records for service provider drivers. *See* Order of January 23, 2023 (dkt. 92) at 2.
6  Focusing only on the drivers' contact information (rather than also the corresponding payroll and
7  timekeeping data), Plaintiff now submits that FXG has this information. *See* Ltr. Br. 2 (dkt. 107) at
8  1-2. FXG responds that while it may have some records of the drivers' contact information, FXG
9  submits that its repository for such contact information is not up-to-date, may contain great swaths
10 of incorrect information, and – in any event – because "Plaintiff does not dispute that [FXG]
11 doesn't have pay records, [] contact with the Service Providers would be necessary for that
12 regardless." *Id*. at 3-4. FXG adds that Plaintiff, for some reason, "didn't even accept [Defendant]
13 Safe Box's offer last year of contact information for its drivers . . . [when] [o]ver seven months
14 ago, Safe Box offered a *Belaire-West* process for obtaining contact information, as well as offered
15 a sampling of payroll/timekeeping records, for more than 250 of its drivers." *Id*. at 4. FXG argues
16 that "[i]f Plaintiff wanted additional information to support her claim for class certification, she . . .
17 . could have accepted that Safe Box information months ago and begun her claimed-necessary
18 fact-gathering while making her discovery challenges . . . [instead] Plaintiff's refusal to engage in
19 discovery with the Service Providers who are best suited to provide this information demonstrates
20 Plaintiff does not seek it from FedEx Ground for any purpose other than to delay proceedings and
21 cause FedEx Ground to incur substantial expense." *Id*. In short, FXG contends that producing its
22 repository of drivers' contact information is both burdensome to FXG and of limited independent
23 usefulness to Plaintiff, who would still have to secure the corresponding payroll data from the
24 service providers anyway. *Id*.
25     The undersigned finds FXG's arguments to be persuasive. Given the sheer volume of
26 drivers (33,000) employed over the years by a large number of service providers (600), and given
27 the representation that its database is not up-to-date – there exists a likelihood that FXG would be
28 handing over contact information for persons who are no longer employed in such a capacity. This

2

would potentially perpetuate needless intrusions into such individuals' privacy to the benefit of no one. Then there is the representation by FXG that preparing and producing this information would saddle it with an unnecessary burden in that Plaintiff would still need to contact the service providers to secure corresponding payroll data – without which the naked contact information would be useless for class-certification purposes. In any event, the undersigned would have – at most – been inclined to compel the production of a small sampling of such information. Speaking of which, there is also the matter of FXG's unanswered arguments about Plaintiff's *rejection* of just such a sampling when such an offer was made by Defendant Safe Box last year. Accordingly, for these reasons, it seems both unfair to FXG, and to the above-described category of drivers whose contact information remains in FXG's outdated repository, for the court to needlessly make FXG undertake the burden of assembling a partially correct database of contact information for 33,000 drivers and former drivers when: (a) Plaintiff would need to secure the corresponding payroll data from the service providers anyway; and, (b) Plaintiff has already reportedly rejected the opportunity to have a sampling of that very data. Once again, while the undersigned appreciates the need for certain information about putative class-members in some circumstances in advance of class certification, the undersigned would not countenance Plaintiff's shotgun approach under any circumstance. Instead, if Plaintiff is adamant on having information of this sort at this juncture, the court encourages Plaintiff to reconsider "Safe Box['s] offer[] [of] a *Belaire-West* process for obtaining contact information, as well as [the] offered [] sampling of payroll/timekeeping records, for more than 250 of its drivers," (*see id*.) or to engage with one or more service providers through the subpoena process to secure a similar sampling of this information coupled with the *Belaire-West* process for obtaining the information in question. For these reasons, Plaintiff's second request to compel the contact information for the approximately 33,000 drivers in FXG's partially up-to-date database is **DENIED**.

Plaintiff also seeks a another bite at the proverbial apple regarding its desire to access FXG's scanner data (RFP Nos. 15 and 16). *See* Ltr. Br. II (dkt. 107) at 2-3. Plaintiff previously moved to compel this same information (*see id*. Ltr. Br. I (dkt. 89) at 1, 2). The court denied the request, explaining that:

3

> As for the scanner data – FedExG does possess such data, but it maintains that it is attended with minimal (if any) probative value and that its production would represent such effort as to render the request as unduly burdensome and disproportionate to the needs of the case. *See* Ltr. Br. (dkt. 89) at 5. As described by FedExG, this scanner data "is not compensable timekeeping data but, rather . . . hours of service data." *Id*. FedEx explains further that "[t]he DOT requires recording of 'on-duty' hours as the DOT defines [it]." *Id*. The scanner data simply logs the total elapsed "on duty" time pertaining to each driver's shift and a driver "is not considered [for these purposes] off duty until he [or she] is done with all work responsibilities." *Id*. In other words, the scanner data does not reflect break times because the DOT's regulation for this data category "does not permit exclusion of any break times." *Id*. As explained by FedExG, "[t]he only location [where] such information would be recorded would be in compensable time records maintained by [the] service providers [and] [g]iven the minimal, to no, probative value of the scanner data, force[ing] FedExG [] to gather and produce that information for a five-year period for over 20,000 drivers is unduly burdensome and disproportionate to the needs of the case." *Id*. Once again, Plaintiff's portion of the letter brief gives this issue short shrift. *See id*. at 2. Plaintiff simply states that she wants the scanner data – neither does Plaintiff explain or discuss what probative value may attend this scanner data, nor does she address FedExG's assertions about the burdensome nature of this request or its disproportionality to the needs of the case. For these reasons, Plaintiff's request to compel the scanner data in question is **DENIED**.
>
> *See* Order of January 23, 2023 (dkt. 92) at 2-3.

Notwithstanding its previously unsuccessful attempt to litigate this issue – including unsuccessfully seeking review of the above-quoted order before the presiding judge (*see* dkts. 93, 94, 102), Plaintiff now attempts to present new arguments about why it should nevertheless receive this data. *See* Ltr. Br. II (dkt. 107) at 2-3. A review of Plaintiff's new arguments reveals them to be unpersuasive. More importantly, whereas Plaintiff previously failed to even try to establish the relevance of this data, or to address FXG's arguments about the burdensome nature of producing it (rendering it disproportionate to the needs of the case), Plaintiff attempts to do now what she failed to do before.

Without wading into Plaintiff's new arguments (which the court finds to be unpersuasive for the reasons set forth by FXG (*see id*. at 4-5)), the court will note – as FXG points out – that the basis of these new arguments was known to Plaintiff at the time the previous letter brief was filed. As FXG notes, "[d]espite having this information since November, Plaintiff now raises it, making

4

several incorrect representations as she does." *Id*. at 4. Plaintiff avoids FXG's argument that she could have made these arguments previously because the basis therefor was known to her since November – indeed Plaintiff makes no mention of it whatsoever. *See id*. at 2-3.

      The undersigned is not inclined to allow litigants to present clearly abandoned objections or arguments in piecemeal fashion by, for example, filing multiple motions to compel the same material. *See e.g.*, *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC (RMI), 2021 U.S. Dist. LEXIS 102611, at *12-13 (N.D. Cal. June 1, 2021) ("All seemed well, until Vade decided to pull a relevance objection out of its pocket, not unleashing this objection until after a year of fighting about various meritless justifications for refusing to provide its source code in discovery (the French Blocking Statute, EU privacy laws, and the subsequently presented arguments about the supposed inadequacy of the trade secret identification, etc.). Because this objection had so clearly been abandoned long ago, and because the trade secret identification objection had also been raised piecemeal to the foreign law objections, the undersigned found that 'it appears likely . . . that Vade's purpose for presenting its objections in the piecemeal fashion describe above has been to delay and frustrate the discovery process in this case . . .'"); *see also Dep't of Toxic Substances Control v. Rossi*, No. 20-cv-01049-VC (RMI), 2022 U.S. Dist. LEXIS 446, at *8 (N.D. Cal. Jan. 3, 2022) ("Defendants contend they are conferring with their accountant to provide documents and responses that would be 'relevant,' which the court construes as a request by each Defendant to keep a relevance objection in abeyance such as to be able to use those pocketed relevance objections in the future should Defendants wish to continue resisting this discovery, thereby potentially necessitating another round of motions to compel regarding these same RFPs and ROGs. That request is DENIED. If Defendants wished to challenge any of the RFPs or ROGs on relevance grounds, the time to present and argue that objection was now, and having failed to do so, any relevance objection as to these requests is likewise deemed to have been abandoned."). The undersigned is not alone in this regard. *See e.g., Paulo v. Williams*, No. 2:19-cv-00474-APG-NJK, 2022 U.S. Dist. LEXIS 2640, at *8 (D. Nev. Jan. 5, 2022) ("Further, in their response to the instant motion, Defendants again attempt to relitigate the previous motion to compel which, as stated above, the Court already considered and decided."); *Apple Inc. v. Fig LLC*, No. 2:20-mc-

5

00088-VAP-Ex, 2021 U.S. Dist. LEXIS 193422, at *3 (C.D. Cal. Mar. 8, 2021) (same); *Peterson v. Alaska Communs. Sys. Grp.*, No. 3:12-cv-00090-TMB-MMS, 2020 U.S. Dist. LEXIS 226808, at *10 n.54 (D. Alaska Dec. 3, 2020) ("Given the Court's prior ruling on Defendants' motion to compel absent class discovery, which limited Defendants to taking four absent class member depositions, Defendants do not get to use the final discovery witness list as a guise to relitigate their motion to compel."); *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos*, No. 17cv1943-LAB (LL), 2019 U.S. Dist. LEXIS 48360, at *6 (S.D. Cal. Mar. 22, 2019) ("The arguments presented in the instant application were known to Defendants at the time of the filing of the Motion to Compel. The Court declines to relitigate the motion to compel."). In light of which, the undersigned declines to consider Plaintiff's clearly abandoned arguments in support of her attempt to improperly relitigate her previously-decided request to compel the scanner data at issue. Thus, Plaintiff's second request to compel scanner data (RFP Nos. 15 and 16) is **DENIED**.

Lastly, Plaintiff seeks to compel FXG's contracts and communications with First Advantage (RFP Nos. 21 and 23) through what can only be described as three or four sentences (it is unclear whether the number of sentences is three or four) that fall woefully short of establishing the relevance of the material involved. *See* Ltr. Br. II (dkt. 107) at 3. Apparently, First Advantage is a consumer reporting agency that "performs background checks to qualify . . . drivers to drive under FedEx Ground's DOT authority." *Id*. at 5. FXG has reportedly already produced the First Advantage documents related to Plaintiff's own qualification. *Id*. Plaintiff's only attempt at an explanation for why FXG's "contracts and communications" with First Advantage might be relevant to a claim or defense in this case is to state that "Plaintiff alleges that FXG is a joint employer, and that it required her and putative class members to authorize First Advantage to procure a background check on them before they could begin their employment." *Id*. (citing Amend. Compl. (dkt. 97) at ¶ 12).

Even construing Plaintiff's argument liberally, which includes overlooking the mistaken citation to the wrong paragraph (¶ 20 of the amended complaint should have been cited rather than ¶ 12), there is still the shortcoming that under Rule 26, discovery must be relevant to a claim or defense, not simply a single allegation. *See e.g., Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST

6

1  (RMI), 2021 U.S. Dist. LEXIS 211772, at *10-11 (N.D. Cal. Nov. 2, 2021) ("Regarding

2  relevance, it is also important to distinguish 'claim or defense,' as the term is used in Rule

3  26(b)(1), from 'allegation.' Had the drafters of Rule 26 used the term 'allegation,' the legal

4  landscape governing relevance would be radically different. For example, Plaintiffs' Complaint

5  contains three claims which essentially assert — under various provisions — that Plaintiffs and

6  others like them were deceived at the point of purchase by paying for insurance and assistance fees

7  while believing they were only paying for insurance."). In this case, Plaintiff has alleged claims

8  related to meal periods, rest breaks, failure to pay hourly wages, failure to pay vacation wages,

9  failure to indemnify, failure to provide accurate wage statements, failure to timely pay all wages,

10  unfair competition, and sharing of liabilities with labor contractor. *See* Amend. Compl. (dkt. 97) at

11  14-34. Plaintiff's portion of the letter brief fails to tether the relevance of FXG's contracts and

12  communications with a background check provider to any of Plaintiff's claims, or any defense

13  raised by any Party to the case – nor is any such relevance apparent. Accordingly, Plaintiff's

14  request to compel this material must likewise be **DENIED**.

15  **IT IS SO ORDERED.**

16  Dated: May 15, 2023

_____
ROBERT M. ILLMAN
United States Magistrate Judge