Shaun Setareh (SBN 200514)
  shaun@setarehlaw.com
William M. Pao (SBN 219846)
  william@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
JANICE GILMORE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANICE GILMORE, on behalf of herself and all others similarly situated,<br><br>   *Plaintiff*,<br><br>  v.<br><br>SAFE BOX LOGISTICS, INC., a California corporation; FEDERAL EXPRESS CORPORATION, a Delaware corporation; FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware corporation; FEDEX CORPORATION, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>   *Defendants*. | Case No. 3:21-cv-06917-AMO<br><br>Assigned For All Purposes to the Honorable Araceli Martinez-Olguin, Courtroom 10<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT**<br><br>Date: March 22, 2024<br>Time: 2:00 p.m.<br>Place: Courtroom 10<br><br>Complaint Filed: August 5, 2021<br>Action Removed: September 7, 2021<br>FAC Filed: January 14, 2022<br>SAC Filed: February 17, 2023 |

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1

2    TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3         PLEASE TAKE NOTICE that at 2:00 p.m. on March 22, 2024, or as soon thereafter as the

4    matter may be heard in Courtroom 10 of the above-entitled Court located at 450 Golden Gate Avenue,

5    San Francisco, California 94102, Plaintiff JANICE GILMORE ("Plaintiff") will and does hereby move

6    this Court for an Order approving:

7         •    The terms of the PAGA Settlement ("Settlement") entered into between plaintiff, acting

8              in her capacity as a private attorney general for the State of California, and Defendant

9              Safe Box Logistics, Inc.;

10        •    The appointment of Phoenix Settlement Administrators as the Settlement Administrator;

11        •    The attorneys' fees and costs described in the Settlement; and

12        •    Final judgment.

13        This motion is made on the grounds that the Settlement is fair, adequate, reasonable, and within

14   the range of possible final approval.  This motion will be based upon this Notice of Motion and Motion,

15   the accompanying Memorandum of Points and Authorities, and the Declaration of Shaun Setareh, as

16   well as exhibits attached thereto, the arguments of counsel, the documents filed in this action and any

17   other matters as may be properly presented on or before the hearing on this motion.

18

19   DATED:  December 15, 2023              SETAREH LAW GROUP

20

21                                         /s/ Shaun Setareh
                                           _____
22                                         SHAUN SETAREH
                                           WILLIAM M. PAO
23                                         Attorneys for Plaintiff
                                           JANICE GILMORE

24

25

26

27

28

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This motion seeks approval of the PAGA settlement of this representative action between Plaintiff JANICE GILMORE ("Plaintiff") in this representative action against Defendant SAFE BOX LOGISTICS, INC. ("Safe Box" or "Defendant") (collectively with Plaintiff, the "Parties").

As the result of arm's-length negotiations under the supervision of Michael Loeb, Esq., an experienced and well-renowned mediator with expertise in mediating complex wage and hour class actions and PAGA representative actions, the Parties have reached a fair and reasonable PAGA settlement of Plaintiff's claims. Pursuant to the Settlement Agreement ("Settlement")[1], Plaintiff now requests that the Court enter an order approving: (1) the terms of the Settlement; (2) the appointment of Phoenix Settlement Administrators as the Settlement Administrator; (3) the attorneys' fees and costs described in the Settlement; and (4) final judgment.

The Agreement provides for a Maximum Settlement Amount ("TSA") of **$33,600.00**. Agreement, III.B.  The TSA shall include all payments contemplated by the Agreement, including: (i) all Payments to the PAGA Settlement Group Members ("PAGA Members"); (ii) the LWDA Payment; (iii) the Plaintiff's Counsel Fees and Expenses Payment, to compensate Plaintiff's Counsel for all work performed thus far and all work remaining to be performed in connection with the Settlement, including without limitation documenting and administering the Agreement and securing Court approval; and (iv) the Settlement Administrator's fees and expenses. *Id.*   No PAGA Member will have to submit a claim in order to recover his or her Settlement Share, and checks will be mailed directly to them. *Id.*, at III.J.3.  Any checks issued to PAGA Members shall remain valid and negotiable for 180 calendar days after the date they are issued. *Id.*, at III.J.8. The Settlement Administrator will mail a reminder notice to those PAGA Members who have not cashed their checks after 120 calendar days and will also send a reminder via any available email address or social media

---

[1] The executed Agreement between the Parties is attached as **Exhibit "1"** to the Declaration of Shaun Setareh in Support of Plaintiff's Motion for Approval of PAGA Settlement ("Declaration of Setareh" or "Setareh Decl.") filed concurrently herewith.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

for these PAGA Members. *Id.* In the event that a Settlement Share check has not been cashed within 180 calendar days, then such funds will be sent to the California State Controller's Office Unclaimed Property Fund in the name of PAGA Members who did not cash their settlement checks. *Id.* As estimated by Defendant at the time the Agreement was executed, there are 255 PAGA Members. Setareh Decl., ¶ 33. Defendant represented there are approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023. *Id.*, ¶ 36.

The Net Settlement Amount ("NSA") estimated to be paid to PAGA Members and the LWDA– after all Court-approved deductions from the TSA, *i.e.*, Plaintiff's Counsel fees of $8,400 (25% of the TSA)[2] and litigation costs of up to $3,720.02, and settlement administration costs of $3,950, is **$17,529.98**. *Id.*, ¶ 36.[3] After payment to the LWDA, the average estimated Settlement Share for each PAGA Settlement Group Member is **$17.18**. *Id.*, ¶ 48.

As discussed below, the Settlement reached here is a good result given the claims at issue in this case, the risk that the putative aggrieved group is unmanageable, the merit of the defenses and affirmative defenses, and the significant monetary amount obtained for the aggrieved employees, which compares favorably to similar settlements approved by other courts.

## II.    **RELEVANT BACKGROUND**

### A.  **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant provides package delivery services of various products to customers across California. Setareh Decl., ¶ 4. Defendant hired Plaintiff in approximately October 2019 as a driver. *Id.*

On August 3, 2021, Plaintiff submitted her PAGA Notice to the LWDA. Setareh Decl., ¶ 5. On August 5, 2021, Plaintiff filed a Class Action Complaint in the Superior Court of the State of California for the County of Santa Clara alleging nine causes of action against Safe Box, FedEx Ground Package System, Inc. ("FedEx Ground"), FedEx Corporation, and Federal Express

---

[2] The Settlement allows for Plaintiff's Counsel to seek up to $14,533.33 (i.e., 1/3 of the TSA) in attorneys' fees. Settlement, III.F. However, by and through this Motion, Plaintiff's counsel only seek $8,400.00 (i.e., 25% of the TSA) in attorneys' fees in order to increase the NSA and maximize recovery for PAGA Members. Setareh Decl., ¶ 59.

[3] Plaintiff does not seek a representative enhancement award payment here.

2

Corporation for: (1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226. 7, 512, and 1198); (2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226. 7, and 1198); (3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997. 1 and 1198); (4) Failure to Pay Vacation Wages (Lab. Code § 227.3); (5) Failure to Pay Sick Time (Lab. Code §§ 246 et seq.); (6) Failure to Indemnify (Lab. Code § 2802); (7) Failure to Provide Accurate Written Wage Statements (Lab. Code § § 226(a)); (8) Failure to Timely Pay All Final Wages (Lab. Code § § 201, 202, and 203); and (9) Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*). *Id.* The action was removed to federal court September 7, 2021. ECF 1. Safe Box & Federal Express Corporation filed their answer denying liability generally and asserting certain affirmative defenses on September 14, 2021. ECF 13 & 15. On September 14, 2021, FedEx Ground filed a Motion to Dismiss Plaintiff's Complaint, and Defendant FedEx Corporation filed a Motion to Dismiss for lack of personal jurisdiction. ECF 14, 18.

On November 11, 2021, the Parties stipulated to allow Plaintiff to file a First Amended Complaint ("FAC") adding a single cause of action for civil penalties pursuant to Labor Code §§ 2698 and dismissing Federal Express Corporation and FedEx Corporation as defendants. ECF 35.

On January 13, 2022, the Court dismissed Federal Express Corporation and FedEx Corporation as defendants. ECF 45. On January 14, 2022, Plaintiff filed his First Amended Complaint ("FAC") adding a adding a ninth cause of action for civil penalties pursuant to Labor Code §§ 2698 of the Labor Code Private Attorneys General Act of 2004. ECF 48. On February 14, 2022, Safe Box filed its answer to Plaintiff's FAC denying liability generally and asserting certain affirmative defenses (ECF 52), and FedEx Ground filed a Motion to Partially Dismiss the FAC (ECF 53) and a separate Motion to Stay Proceedings (ECF 54). On June 24, 2022, the Court denied FedEx Ground's Motion to Stay Proceedings, and partially granted its Motion to Dismiss the FAC with respect to Plaintiff's UCL claim for injunctive relief. ECF 74. On October 20, 2022, FedEx Ground filed its Answer to Plaintiff's FAC. ECF 85.

On January 17, 2023, Plaintiff filed a Discovery Letter Brief requesting Defendant and FedEx Ground provide contact information, timekeeping, and payroll data for the putative class and all aggrieved employees. ECF 89. On January 23, 2023, the Court denied Plaintiff's request to compel the

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

3

production of contact information, time keeping, and payroll information for all aggrieved employees and members of the putative class. ECF 92. On February 6, 2023, Plaintiff filed a Motion for Relief from the Magistrate Judge's Order denying Plaintiff's Motion to Compel. ECF 93. On March 22, 2023, the Court denied Plaintiff's Motion for Relief.

On February 15, 2023, the Parties stipulated to allow Plaintiff leave to file her Second Amended Complaint ("SAC") with additional "client employer" allegations under California Labor Code § 2810.3 against FedEx Ground. ECF 95. On February 17, 2023, Plaintiff filed his SAC. ECF 97. On March 3, 2023, Safe Box filed its answer to Plaintiff's SAC, and FedEx Ground filed a Motion to Dismiss the Tenth Cause of Action in Plaintiff's SAC. ECF 99 & 100. On April 12, 2023, Plaintiff filed an Administrative Motion to Vacate and Amend the Scheduling Order. ECF 104. The Court denied Plaintiff's motion on April 20, 2023. ECF 106. On June 7, 2023, Plaintiff filed a Renewed Administrative Motion to Vacate and Amend the Scheduling Order. ECF 119. On June 8, 2023, FedEx Ground filed a Motion for Partial Summary Judgment. ECF 120.

On May 5, 2023, Plaintiff filed a second Discovery Letter Brief again requesting the contact information, timekeeping records, and payroll data of the putative class and aggrieved employees. ECF 107. On May 15, 2023, the Court denied Plaintiff's second request to compel timekeeping records, payroll data, and contact information. ECF 113.

On August 28, 2023, the Court denied without prejudice FedEx Ground's Motion for Partial Summary Judgment and Motion to Dismiss the Tenth Cause of Action in Plaintiff's SAC. ECF 136. The Court additionally referred the matter to mediation. ECF 135. On September 13, 2023, the Court appointed Michael Loeb, Esq. as the mediator. ECF 137. On September 15, 2023, the Court denied Plaintiff's Renewed Motion to Vacate and Amend the Scheduling Order. ECF 138.

On September 22, 2023, the Parties participated in a half-day mediation session with Michael J. Loeb, Esq. of JAMS via Zoom. Shaun Decl., ¶ 21. On September 25, 2023, following several days of extended negotiations following mediation, the Parties signed a memorandum of understanding reflecting a settlement of the matter. *Id.,* ¶ 22. On September 29, 2023, the Parties filed a Notice of Settlement. ECF 139. Following further negotiations, the Parties finalized the long-form Agreement, which the Parties executed on November 13, 2023. Shaun Decl., ¶ 22.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

### B. CLAIMS AND DEFENSES

Plaintiff alleges that while working as an hourly, non-exempt Driver, Plaintiff and aggrieved employees were often unable to take 30-minute uninterrupted meal breaks and 10-minute uninterrupted rest breaks in part due to (1) Defendant's policy of not scheduling each meal period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods, and because they were required to answer calls from their managers on during their meal periods. *See, generally*, ECF 97. Plaintiff further alleges that Plaintiff and the aggrieved employees were regularly not provided with uninterrupted rest periods of at least ten minutes for each four hours worked because they were required to complete a strict delivery schedule. *Id.* Plaintiff alleges that Defendant violated the rights of Plaintiff and aggrieved employees by failing to reimburse them for all necessary business expenses incurred, particularly from the required use of personal cell phones to navigate during deliveries and communicate with Defendant regarding their work obligations, including requesting meal periods and rest breaks. *Id.* Plaintiff further alleges Defendant did not pay her or aggrieved employees for all accrued vacation wages during their employment *Id.* Plaintiff also complains that she was not provided with compliant wage statements and was not paid all of her final wages on time (direct and derivative). *Id.* Finally, Plaintiff alleges that Plaintiff and aggrieved employees were not paid all wages earned as Defendant and FedEx Ground directed, permitted or otherwise encouraged Plaintiff and aggrieved employees to perform off-the-clock work. *Id.*

Defendant and FedEx Ground generally denied all of Plaintiff's allegations. ECF 99. Defendant contends that it properly compensated and reimbursed the putative PAGA Members and did not violate the law including the California Labor Code, Wage Orders, and Code of Regulations. *Id.*, 35. FedEx Ground contends that it did not employ Plaintiff or any of the putative PAGA Members and that it did not violate the law in any way with respect to Plaintiff or any of the putative PAGA Members.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

### C. PLAINTIFF'S ASSESSMENT OF DAMAGES

Under Cal. Lab. Code §§ 2699(f)(2) and 2699.5, employers that violate certain provisions of the Labor Code are subject to penalties according to the following formula:

1. $100.00 for the initial violation per employee per pay period; and

2. $200.00 for each subsequent violation per employee per pay period.

These penalties must be allocated seventy-five percent (75%) to the LWDA and twenty-five percent (25%) to the affected employees. Cal. Lab. Code § 2699(i). Plaintiff alleged that, because of the violations described above, Defendant and FedEx Ground were liable for these penalties for each applicable pay period during the PAGA period. In ascertaining exposure for the allegations described above, Plaintiff considered several important cases. First, courts considering the issue have refused to "stack" PAGA penalties, severely limiting the recoverable PAGA penalties. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (approving PAGA penalty reduction to $5 per pay period); *See also Atempa v. Pedrazzani*, 27 Cal. App. 5th 809 (2018); *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1144 (9th Cir. 2021) ("Under California law, '[a] good faith dispute' that an employer is required to comply with a particular law 'will preclude imposition' of heightened penalties.").

Defendant and FedEx Ground argued that even if Plaintiff was able to recover some PAGA penalties on behalf of other aggrieved employees, courts frequently use their discretion under Cal. Lab. Code § 2699(e)(2), to significantly reduce PAGA penalties where such penalties would be unjust, arbitrary, and improper. *See*, e.g., *Carrington*, 30 Cal. App. 5th at 529. Shaun Decl., ¶ 42.

Defendant and FedEx Ground further contended that any inquiry into why some employees missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on behalf of all aggrieved employees. Thus, Plaintiff would not be able to prove liability for alleged failure to provide compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant meal periods and rest breaks would require an individualized inquiry that would prevent these issues from being resolved on behalf of all aggrieved employees. *Id.*, ¶ 44. Furthermore, Defendant and FedEx

6

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  Ground argued that Plaintiff could not recover for any purported meal and rest break violation

2  because such claims are preempted by federal law pursuant to the Federal Motor Carrier Safety

3  Act.

4       Plaintiff further contemplated the risk that she would be unable to recover PAGA penalties at

5  the subsequent violation rate of $200 per pay period. California's appellate courts have held that

6  "[u]ntil the employer has been notified that it is violating a Labor Code provision (whether or not the

7  commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware [of

8  the violation]" and therefore, until a Court or the Commissioner issues a finding of a violation, the

9  initial $100 violation rate applies for each pay period in which the alleged violation occurred. *Amaral*

10  *v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008). Thus, Defendant argued that even if the

11  Plaintiff was able to establish any violation of the Labor Code, the PAGA penalties assessed for these

12  violations will be computed at the $100 rate, as opposed to the $200 per pay period rate at maximum,

13  and there is a likelihood that a further reduction of the penalty to $5 per pay period as approved in

14  *Carrington* would apply given Defendant's compliance with the Labor Code as discussed above.

15  Shaun Decl., ¶ 44.

16       There was also the risk that, even if Plaintiff received a favorable judgment at trial, Defendant

17  would be unable to pay. Defendant is in the process of selling off its assets and winding down its

18  business, and thus a larger settlement amount would increase the risk that Defendant would be unable

19  to pay the entire amount of any agreement. *Id.*

20       Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal

21  risks that were (and continue to be) very difficult to assess. In light of the uncertainties of protracted

22  litigation, the Settlement amount reflects a fair and reasonable recovery for the settlement PAGA

23  Members.  The Settlement amount is, of course, a compromise figure.  By necessity, it took into

24  account risks related to liability, damages, and all the defenses asserted by the Defendant and FedEx

25  Ground as to all such matters.

26       Here, there were approximately 4,854 workweeks within the applicable PAGA Period, or

27  2,428 pay periods. However, given the likelihood that the pay period violation rate was significantly

28  lower than 100% and the very real risks that a factfinder might agree with Defendant's arguments or

7

1  Defendant's strong good faith defenses, Plaintiffs ascribed a 50% reduction to the number of pay

2  periods at issue. Plaintiff thus concluded that Defendant's total realistic exposure in this case was

3  approximately $121,400.00.

4       While Plaintiff continues to believe in the merits of the case, Defendant argued that it fully

5  complied with California's wage and hour laws, and thus faced minimal exposure, if any. Therefore,

6  the Total Settlement Amount of $33,600.00 is an excellent result and within the zone of

7  reasonableness for both parties. If approval is granted, Plaintiffs will have recovered 27.7% of their

8  estimated realistic exposure value in this case—a fair compromise of the claims, by any measure.

9       As mentioned above, courts can, and regularly do, exercise their discretion to reduce the

10  amount of PAGA penalties. Here, with approximately 2,428 pay periods at issue among 255

11  Aggrieved Employees, under *Carrington v. Starbucks Corp*.,30 Cal. App. 5th 504 (2018) an

12  appropriate settlement amount could be as low as $12,140. Instead, despite the risks of the case

13  identified through mediation and exchange of documents and information with opposing counsel, the

14  Total Settlement Amount of $33,600.00 represents a roughly $13.83 penalty per pay period assuming

15  a 100% violation rate for all pay periods in the PAGA period. The portion of the Net Settlement

16  Amount to be distributed to the approximately 255 Aggrieved Employees in this case is at least

17  $4,238.49 — or roughly $17.18 per Aggrieved Employee. To the best of my knowledge, other than

18  this Action, there are no other like claims asserted or filed by PAGA Members.  To the best of my

19  knowledge, no PAGA Member has refrained from bringing an action with claims similar to those

20  raised in the Action, whether in reliance on the Action or otherwise, and who thus might be prejudiced

21  by dismissal of the Action. Setareh Decl. ¶ 48.

22  **III.    THE SETTLEMENT**

23       The following is a summary of the material terms of the Settlement:

24       **A.    THE SETTLEMENT GROUP**

25       For purposes of the Settlement, "PAGA Settlement Group Members" means, based upon Safe

26  Box's representation to Plaintiff, the approximately two hundred fifty-five (255) current and former

27  aggrieved employees of Safe Box in California during the Covered Period who worked one or more pay

28  periods, but excluding employees who individually settled their claims with a full general release.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

8

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

## B.   TOTAL SETTLEMENT AMOUNT AND DISTRIBUTIONS

Defendant will pay a maximum aggregate TSA of $33,600. Agreement, III.B. The TSA covers: (i) all Settlement Shares to PAGA Settlement Group Members ("PAGA Members"); (ii) the LWDA Payment; (iii) the Plaintiff's Counsel Fees and Expenses Payment, to compensate Plaintiff's Counsel for all work performed thus far and all work remaining to be performed in connection with the Settlement, including without limitation documenting and administering the Agreement and securing Court approval; and (iv) the Settlement Administrator's fees and expenses. *Id.*

It is estimated that the NSA payable to PAGA Members and the Labor & Workforce Development Agency ("LWDA") will be $**16,479.98** out of the $**33,600.00** TSA after all Court-approved deductions from the TSA – i.e., Plaintiff's Counsel fees of $**8,400.00** (25% of the TSA) and litigation costs of up to $3,720.02, settlement administration costs of $3,950. After the payment of $12,359.98 to the LWDA, the amount payable to PAGA Members will be $4,382.49. To fairly allocate settlement funds based on each PAGA Members' dates of employment as a PAGA Member, the distribution amount will be calculated as follows: Settlement Administrator will allocate Settlement Shares from the Net Settlement Amount to the PAGA Members in proportion to the number of workweeks worked for Safe Box during the Covered Period in comparison to the total number of workweeks worked by all PAGA Members. The payments to Aggrieved Employees shall be reported as non-wage payments in the year of payment and reported on a Form 1099 with no withholdings or payroll taxes because the Action sought civil penalties. Agreement, III.G.

The TSA is subject to the following Modification provision: Defendant represented at the mediation that as of September 22, 2023, the total number of PAGA Members was estimated to be 255, with approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023. The Parties agree that if, at the time the Court approves the Agreement, the total number of PAGA Members increased by more than ten percent (10%) of the total of 255 estimated PAGA Members as of September 22, 2023, or more than 25 PAGA Members, then either (i) the Total Settlement Amount shall be adjusted and increased by Safe Box on a proportionate basis using the "Per Workweek Settlement Value", which shall be calculated using 5,339 workweeks (i.e., 10% more than the total estimated 4, 854 workweeks) as the numerator and the Net Settlement Amount as the denominator, or

9

1    (ii) alternatively, at Safe Box's election, the Covered Period may be ended earlier than December 1,

2    2023 or the Effective Date so that the per workweek settlement payments to the PAGA Settlement

3    Group Members is no less than the Per Workweek Settlement Value. For the avoidance of doubt, if the

4    total number of PAGA Members is more than 280, then the adjusted increase of the TSA or

5    adjustment of the end of the Covered Period would be based on the amount of PAGA Members

6    greater than 280. Agreement, III.H.

7           **C.      SCOPE OF THE PAGA SETTLEMENT GROUP MEMBER RELEASES**

8           In consideration for their Settlement Shares, as of the date the Settlement becomes Final,

9    Plaintiff acting on behalf of the State of California, and all PAGA Settlement Group Members,

10   releases the Released Parties, as defined in the Agreement, from any and all claims and causes of

11   action for penalties recoverable under PAGA whether known or unknown, that were pleaded in

12   Plaintiffs Complaint or that could have been pleaded on the facts as alleged in the Complaint and

13   Plaintiffs PAGA notice to the LWDA, arising during the Covered Period, *Id.*, at III.K.(1). The

14   "PAGA Released Claims" are all claims under PAGA, Labor Code sections 201, 202, 203, 204,

15   218.6, 223, 226, 226.3, 226.7, 510, 512, 1021.5, 1194, 1194.2, 1197, 1197.1, 1198, 2810.3, 2802,

16   1997.1, 2698, 2699.3, and 2699.5, California Business and Professions Code section 17200, the

17   Industrial Welfare Commission Wage Orders, and any resulting claim for attorney's fees and costs

18   *Id.*

19          The PAGA Released Claims include all such respective claims under PAGA only, whether

20   known or unknown by the releasing party. Therefore, with respect only to those respective PAGA

21   Released Claims, Plaintiff and the PAGA Settlement Group Members expressly waive and

22   relinquish the provisions, rights and benefits of section 1542 of the California Civil Code. *Id.* at

23   III.K.(2). With respect to the PAGA Released Claims, the scope of the waiver of rights and

24   benefits under section 1542 of the California Civil Code is in no way intended by the Parties to

25   extend to any claims beyond the PAGA Released Claims; rather, this waiver is intended to apply

26   only to the PAGA Released Claims. *Id.*

27          Furthermore, the PAGA Released Claims are intended to release Safe Box, FedEx Ground,

28   and each of their past, present, and future divisions, affiliates, predecessors, successors,

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

10

1   shareholders, officers, directors, employees, attorneys, agents, trustees, representatives,

2   administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries, joint

3   employers, co-employers, payroll service providers, staffing agencies. Professional Employer

4   Organizations, Administrative Service Organizations, insurers, related corporations, or privies,

5   both individually and collectively, any other individual or entity that could be jointly liable with

6   Safe Box and FedEx Ground, whether previously or hereafter affiliated in any manner, and the

7   respective predecessors, successors, and assigns of all the foregoing. *Id.*, III.O.

8       **D.**      **PAGA PAYMENT AND NOTICE PROCEDURES**

9       If appointed by the Court, Phoenix Settlement Administrators, serving as Settlement

10  Administrator, will have sole and exclusive responsibility for: duties will include preparing, printing,

11  and mailing the Notice Packet to the PAGA Settlement Group Members; conducting a National

12  Change of Address search and using Accurint and other reasonable and cost-effective skip trace

13  methods to locate any PAGA Member whose Notice Packet was returned by the U.S. Postal

14  Service as non-deliverable, and re-mailing the Notice Packet to the PAGA Settlement Group

15  Member's new address; issuing the checks to effectuate the payments due under the Settlement;

16  and otherwise administering the Settlement pursuant to this Agreement. The Settlement

17  Administrator will have the final authority to resolve all disputes concerning the calculation of a

18  PAGA Settlement Group Member's Settlement Share, subject to the dollar limitations set forth in

19  this Agreement. *Id.*, III.I.

20      Should the Court approve the Settlement, within fourteen (14) calendar days Defendant will

21  provide the Settlement Administrator with a confidential list of PAGA Members along with: (1) their

22  last known addresses; (2) Social Security numbers; (3) telephone numbers; (4) employment start and

23  end dates; and (5) the number of workweeks the PAGA Member worked during the Covered

24  Period. *Id.,* at III.J.(3)(a). Within five (5) calendar days after receiving the confidential data, the

25  Settlement Administrator will prepare and mail the Notice and a check to each PAGA Member *Id.*, at

26  III.J.(3)(b).  The Notice that is mailed out to PAGA Members shall be in a form substantially similar to

27  the form attached to the Agreement as **Exhibit B**. *Id.*, I.L.  If a Notice is returned because of an

28  incorrect address, the Settlement Administrator will, within ten (10) days from receipt of the returned

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

packet, search for a more current address for the PAGA Member using Accurint or other reasonable and cost-effective skip trace methods, and re-mail the Notice to the PAGA Member. *Id.*, III.J.(3)(c). of their current mailing address and the address where their Individual Settlement Payment should be mailed following the Effective Date, if the addresses are different from the address that the Notice is initially mailed.

All PAGA Members will have one-hundred eighty (180) days after the Settlement Administrator initially mails the Notice and Settlement Share to PAGA Members to cash his or her Settlement Share. *Id.*, III.J.(8). If any PAGA Settlement Group Member's Settlement Share check is not cashed within one hundred twenty (120) calendar days after its last mailing to the PAGA Member, the Settlement Administrator will send the PAGA Member a letter or postcard informing him or her that unless the check is cashed in the next sixty (60) calendar days, it will expire and become nonnegotiable, and offer to replace the check if it was lost or misplaced but not cashed. *Id.* If a PAGA Member fails to cash the check for his or her Settlement Share within one hundred eighty (180) calendar days after it is mailed to him or her, the funds shall be distributed by the Settlement Administrator to the State Controller's Unclaimed Property Fund in the Settlement Group Member's name.

### E.  TAX TREATMENT

Because this case is being resolved on a PAGA-only basis with all recovery arising from penalties (rather than unpaid wages), IRS Form 1099 will be issued. With regard to settlement payments to the PAGA Members and Plaintiff, IRS Form 1099s will be issued. *Id.* at III.G. . Payment of Plaintiff Counsel's fees and litigation costs will also be reflected in an IRS Form 1099 to Plaintiff's counsel. *Id.* III.F.

### IV.  THE SETTLEMENT MEETS THE STANDARDS FOR PAGA APPROVAL

### A.  STANDARD OF REVIEW

The legislative history of PAGA makes little mention of the approval requirements in Cal. Lab. Code § 2699(l). The original version of PAGA did not contain the court approval requirement now codified in subdivision (l). That subdivision was added as part of the amendments to PAGA that became effective on August 11, 2004. 2004 Cal. Legis. Serv. Ch. 221

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  Existing law does, however, provide some guidance as to the appropriate standard of review.

2  Plaintiff contends, and for the purposes of this motion Defendant does not contest, that the Court

3  should look to: (1) the standard of review used in analogous statutory schemes; (2) Federal court

4  decisions approving PAGA settlements; and (3) the purposes and policies of PAGA.

5  **1.    Analogous Statutory Schemes**

6  A PAGA case is in the nature of a qui tam proceeding. *Iskanian v. CLS Transp. Los*

7  *Angeles LLC* (2014) 59 Cal.4th 348, 394. California has at least two other statutory schemes

8  whereby an individual may sue on behalf of the State or in the public interest: The California False

9  Claims Act and Proposition 65.[4] Under both schemes, a court must approve a settlement or

10  dismissal of the action.

11  Under the California False Claims Act, a qui tam plaintiff may only dismiss the case with a

12  court's (and the government's) consent. Gov't Code § 12652(c)(1). In deciding whether to give

13  consent, a court must take into account "the best interests of the parties involved and the public

14  purposes behind the act." *Id.* Moreover, if a *qui tam* plaintiff objects to a settlement between the

15  government and a defendant, the court can only approve the settlement after finding it is "fair,

16  adequate, and reasonable under all the circumstances." Gov't Code § 12652(e)(2)(B).

17  Similarly, Proposition 65 actions, like PAGA actions, are brought by private plaintiffs to

18  safeguard public rights. *Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America*

19  (2006) 141 Cal. App. 4th 46, 63. In addition to complying with specified statutory criteria,[5] Prop

20  65 settlements may only be approved if: (1) they are "just" and (2) they "serve the public interest."

21  *Id.*, at 61-62. In making this determination, the *Kintetsu* court described the appropriate inquiry

22  _____

23  [4] A third statute, the Insurance Frauds Prevention Act ("IFPA"), also empowers "interested

24  persons" to bring claims on behalf of the State to combat insurance fraud. Cal. Ins. Code § 1871.7.
This statute sets forth a complicated formula for distributing settlement proceeds while also stating

25  that the relator shall receive an amount that the court decides is "reasonable" for collecting civil
penalties and damages, and that the court may allocate funds pursuant to a settlement agreement

26  when it is in "the interests of justice." Cal. Ins. Code. § 1871.7(g).

27  [5] The expressly specified statutory criteria in Proposition 65 settlements are: (1) the
adequacy of the Prop 65 warnings; (2) the reasonableness of the attorneys' fees; and (3) the

28  reasonableness of the penalty amount. *Id.* at 62.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

similar to the "fair, reasonable, and adequate" test used in class actions. *Id.* at 61. The *Kintetsu* court also stated that, in determining whether to approve Prop 65 settlement, a court should consider the policies underlying the statute. *Id.* 63.

### 2.    Federal Cases

In addition to analogous California law, several federal district court case have also enunciated a standard for reviewing PAGA actions in the context of larger class action settlements. The federal courts have concluded that a PAGA settlement should only be approved when it is "genuine and meaningful, [and] consistent with the underlying purpose of the statute to benefit the public." *O'Connor v. Uber Technologies* (N.D. Cal. 2016) 201 F. Supp. 3d 1110; *Viceral v. Minstras Group, Inc*. (N.D. Cal. Oct. 11, 2016) 2016 WL 5907869 *9; *See also*, *Ferreri v. Bask Technology, Inc*. (S.D. Cal. Nov. 21, 2016) 2016 WL 6833927, *5 (evaluating PAGA settlement in light of purposes and policies of PAGA).

### 3.    The Purposes and Policies of PAGA

PAGA was passed because the Legislature believed it necessary "to achieve maximum compliance with state labor laws" and "to ensure an effective disincentive for employers to engage in unlawful and anticompetitive business practices." 2003 Cal. Legis. Serv. Ch. 906 § 1(a). The Legislature found further that, while self-policing efforts have had some success, "in other cases the only meaningful deterrent to unlawful conduct is the vigorous assessment and collection of civil penalties as provided in the Labor Code." *Id.* at § 1(b). Through PAGA, the Legislature thus: (1) sought to "enlist[] willing citizens in the task of private enforcement," *Iskanian*, 59 Cal.4th at 390; (2) "deputized" Aggrieved Employees to sue on behalf of the State to enforce state labor laws; and (3) authorized them to recover civil penalties, attorneys' fees, and costs. 2003 Cal. Legis. Serv. Ch. 906 (Legislative Counsel's Digest). In bringing a PAGA action, "[t]he employee-plaintiff acts as the proxy or agent of the state labor enforcement agencies, representing the same legal right and interest as those agencies…" *Iskanian*, 59 Cal.4th at 394.

As for the interests of the LWDA (in whose shoes Plaintiff stands), its top enforcement priorities are "to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions…" and to "protect

14

employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards." Lab. Code. § 90.5(a). Moreover, in addition to the collection of civil penalties[6] , Labor Code section 1194.5. (which is specifically referenced in Labor Code section 90.5) authorizes the LWDA to seek injunctive relief.

In light of the above law, as well as the policies and purposes of PAGA, Plaintiff propose that the Court consider the following factors in determining whether to approve the Settlement:

(1)    the extent to which the Settlement achieves compliance with the state labor laws;

(2)    the extent to which the Settlement deters violations of the state labor laws;

(3)    whether the Settlement serves to enlist private citizens in public enforcement of PAGA; and

(4)    whether the Settlement is otherwise "just" and "in the public interest."

Because the proposed Settlement reasonably and fairly advances each of the above factors, Plaintiff requests that this Court approve the Settlement.

### B.  THE SETTLEMENT SHOULD BE APPROVED

#### 1.    <u>The Settlement Falls Within the Range of Possible Approval</u>

"The PAGA is limited to the recovery of civil penalties." Villacres v. ABM Industries Inc. (2010) 189 Cal.App.4th 562, 579. Under PAGA, the default civil penalty for an employer's initial violation is one hundred dollars ($100) per employee per pay period, and two hundred dollars ($200) per pay period for any subsequent violations. Lab. Code § 2699(f)(2). While courts have the discretion to reduce civil penalties under certain circumstances, there is no requirement to do so.

There were approximately 255 aggrieved employees during the PAGA Period. Agreement, at I.M. As of September 22, 2023, the total number of PAGA Members was estimated to be 255,

---

[6] Note that, under PAGA, civil penalties are primarily intended as a deterrent, and not as a financing mechanism for the LWDA and the State's general fund. While the State clearly has an interest "in receiving the proceeds of civil penalties," the penalties are "<u>used</u> to deter violations." *Iskanian*, 59 Cal.4th at 313.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

with approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023. Agreement, at III.H. This represents 2,428 pay periods which is reduced to 1214 pay periods after ascribing a 50% reduction based on Defendant's strong good faith defenses and the possibility that a factfinder might agree with Defendant's arguments. Setareh Decl., ¶ 46. Based on a penalty of $100 for each pay period in which violation occurs, Defendant's total realistic exposure was approximately $121,400.00. Id. Accordingly, an TSA of $33,600, or 27.7% of Defendant's potential realistic exposure, is more than fair and adequate.

The Settlement should be approved because it confers a substantial benefit on PAGA Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits, with a chance that the company may not be a going concern to be able to pay any judgment at all. Setareh Decl., ¶ 44(iv).

### 2. <u>Although the Parties Dispute Whether Any Violations Occurred, the Settlement Achieves Compliance With, and Deters Violations of, State Labor Laws</u>

While the Parties dispute whether Defendant's employment practices violate the Labor Code, this litigation has undisputedly achieved compliance with Labor Code sections referenced in the Settlement due to the significant amount that Defendant has agreed to pay for these alleged violations. Moreover, the significant amount will also serve as a deterrent to similar violations. Accordingly, the proposed Settlement reasonably advances PAGA's purpose by achieving compliance with the Labor Code and deterring similar violations.

### 3. <u>The Settlement Serves to Enlist Private Citizens in Enforcement of PAGA</u>

Plaintiff also believes the proposed Settlement acts to encourage private enforcement of PAGA. Through the Settlement, Plaintiff's counsel will receive attorneys' fees and costs as determined by the Court, and all PAGA Members will receive a 25% share of the PAGA allocations, as well as notice of the claim.

### 4. <u>The Settlement Is "Just" and "In the Public Interest"</u>

The proposed Settlement is both just and in the public's interest.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

First, this settlement reasonably values the PAGA claims as to Defendant. While Plaintiff believes the claims are meritorious and that they would have recovered unreduced penalties, Defendant denies all liability and asserted numerous defenses to the claims. In addition, PAGA awards maximum penalties of "one hundred dollars ($100) for each Aggrieved Employee per pay period for the *initial* violation and two hundred dollars ($200) for each Aggrieved Employee per pay period for each *subsequent* violation." Lab. Code § 2699(f)(2). At least one appellate court holds, in the context of other Labor Code violations, that the "subsequent " violation penalty rate for a Labor Code does not apply until an employer is notified that its conduct violates the law. *Amaral*, 163 Cal. App. 4th at 1207-09. Nevertheless, Defendant has agreed to pay a Total Settlement Amount of **$33,600** in exchange for a PAGA release involving approximately 255 Aggrieved Employees who were subjected to similar working conditions during the applicable time frame. Accordingly, Defendant is paying an average of **$131.76** ($33,600 ÷ 255) per Aggrieved Employee. If the Court grant's Plaintiff's application for fees and costs, the State and the Aggrieved Employees will still share approximately **$68.75** ($17,529.98 ÷ 255) per Aggrieved Employee for civil penalties – still a significant and reasonable recovery.[7]

Second, the proposed Settlement, even with deductions, provides a substantial sub to the State: **$13,147.49** (75% of $17,529.98). It also provides a small sum to each employee (around **$17.18**) on a *pro-rata* basis. (The aggregate sum provided to Aggrieved Employees (assuming all deductions) is **$4,382.49**.) However, the purpose of PAGA is not to compensate employees, who retain any private right of action they may have under the applicable Labor Code provisions. In that respect, the Settlement also requires each employee receive a notice that describes this litigation and the settlement sum. Plaintiff contends this notice will educate Aggrieved Employees as to the requirements of the Labor Code, something that is in the public interest and consistent

---

[7] It is appropriate to consider the gross award (before deductions) in comparing the litigation value of a case against a settlement award. Among other things, it is appropriate to pay fees to of a common fund, even in a fee-shifting case, "to avoid the unjust enrichment of those who benefit from the fund that is created, protected, or increased by litigation and who otherwise bear none of the litigation costs." *Sobel v. Hertz Corporation* (D. Nev. 2014) 53 F.Supp.3d 1319, 1326.

1   with PAGA's purpose. *See* Lab. Code § 2699(j) (stating that civil penalties recovered under

2   PAGA shall be distributed to the LWDA for [among other things] "education of employers and

3   employees about their rights and responsibilities under this code.")

4         Third, public policy strongly favors the settlement of litigation. *Consumer Advocacy*

5   *Group v. Kintetsu, supra*, 141 Cal.App.4th at 63. Because the proposed Settlement is neither

6   unjust nor ignores the public interest, it should be approved.

7   **V.    NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION
       SETTLEMENTS**

8

9         This District promulgated *Procedural Guidance for Class Action Settlements*, which instructs

10  that "[t]he motion for preliminary approval should state," among other things, the following:

11              **i.   Any Differences Between the Settlement Class and the Class Proposed
                  in the Operative Complaint or Between the Claims Released in the
12                Settlement and Those Pled in the Operative Complaint**

13        The First Amended Complaint ("SAC") is currently the operative complaint in this Action.

14  Setareh Decl., at ¶ 13.  The Settlement has been tailored to conform to the PAGA cause of action in the

15  SAC.  *See* ECF 97.  As part of the Agreement, Plaintiff agrees to release the Released Parties from all

16  claims and causes of action for penalties recoverable under PAGA. *Id*., at III.K.1. However, Plaintiff

17  brought nine other causes of action in her FAC. *See* ECF 97. The current Agreement is limited to

18  PAGA only due to Plaintiff not moving for class certification by June 22, 2023, effectively wiping out

19  all of her potential class-wide claims. Setareh Decl., ¶ 24. As part of the Agreement, Plaintiff and

20  PAGA Members release *only* those claims applicable under PAGA.

21              **ii.   Estimate of the Number and /or Percentage of PAGA Members
                   Expected to Submit a Claim**
22

23        No PAGA Member will have to submit a claim in order to recover his or her Settlement Share,

24  and checks will be mailed directly to them. Agreement, III.J.3. As estimated by Defendant at the time

25  the Agreement was executed, there are an estimated 255 PAGA Members. (Setareh Decl., ¶ 33.)  Any

26  checks issued to Settlement PAGA Members shall remain valid and negotiable for 180 calendar days

27  after the date they are issued. Agreement, at III.J.3.  The Settlement Administrator will mail a reminder

28  notice to those Settlement PAGA Members who have not cashed their checks after 120 calendar days

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

18

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1    and will also send a reminder via any available email address or social media for these Settlement

2    PAGA Members. *Id.* In the event that an Individual Settlement Payment check has not been cashed

3    within 180 calendar days, then such funds, plus any accrued interest, will be tendered to the California

4    State Controller's Office Unclaimed Property Fund in the name of Settlement PAGA Members who

5    did not cash their settlement checks. *Id.*

6              ### iii.  Settlement Administration

7              Plaintiff obtained bids from potential third-party settlement administrators Phoenix, ILYM

8    Group, Inc., and Phoenix Settlement Administrators. Setareh Decl., ¶ 65. Phoenix was selected

9    because they submitted the lowest bid of $3,950, which Plaintiff's Counsel believes is reasonable in

10   light of Plaintiff Counsel's experience in such settlement administration matters and given the work to

11   be done by or potentially required of the Settlement Administrator due to the various Settlement

12   provisions. *Id.* The TSA is to be wire transferred to the Settlement Administrator within thirty (3) days

13   of the Court's Final Approval Order. Agreement, III.J.3.a. The proposed forms of Notice to all PAGA

14   Members are to be sent via mail, and where returned or non-deliverable, the Settlement Administrator

15   shall make reasonable efforts to locate PAGA Members and re-send the notices *Id.*, III.J.3.b. The

16   Settlement Administrator shall promptly attempt to determine a correct address by lawful use of

17   standard search techniques (e.g., skip trace search), and shall then perform a re-mailing if another

18   mailing address is identified by the Settlement Administrator. *Id.* The Agreement does not provide for

19   any reversion of settlement funds to Defendant or FedEx Ground. *Id.*, III.B. Over the last two years,

20   Plaintiff's counsel has engaged with Phoenix 28 times in 28 class actions. Setareh Decl., ¶ 66.

21             ### iv.  Plaintiff Counsel's Lodestar and Multiplier Sought[8]

22             The Plaintiff's Counsel Award requested by Plaintiff is reasonable and fair because the

23   lodestar for the work performed is $250,331.11. Setareh Decl., ¶ 59. The hourly rates are consistent

24   with the prevailing market rates for attorneys of similar experience.  *Id.*

25             The Plaintiff Counsel fee award amount of up to $14,533.33. accurately reflects the Parties'

26

27   _____

28   [8] Defendant and FedEx Ground take no position regarding the approval of attorneys' fees, but do not
     oppose the request.

intent that Plaintiff's Counsel shall seek no more than this amount in fees. Agreement, III.F. This amount is equivalent to 1/3 of the TSA. Setareh Decl., ¶ 63. However, by and through the concurrent Motion for Preliminary Approval, Plaintiff's counsel only seek **$8,400.00** (i.e., 25% of the TSA) in attorneys' fees to maximize recovery for PAGA members. *Id.*, ¶ 59.

### 1. A Reasonable Result Was Achieved on Behalf of the PAGA Settlement Group Members

The benefit achieved on behalf of PAGA Members defines a primary yardstick against which any fee motion is measured. *See Serrano v. Priest*, 20 Cal.3d 25, 49 (1977); *accord Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Courts recognize that arm's-length negotiations conducted by competent counsel are prima facie evidence of fair settlements. The United States Supreme Court held that "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arm's-length bargaining. . . ." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator skilled in resolving representative action cases including wage and hour actions. Setareh Decl., ¶ 30. The Parties thoroughly investigated and evaluated the factual and legal strengths and weaknesses of this case before reaching the Settlement. *Id.* The Settlement was reached after included informal written discovery, the pre-mediation exchange of requested information, and, numerous communications between the Parties to identify and assess the issues. *Id.*, ¶ 23. Through this process, Defendant provided Plaintiff's Counsel with numerous relevant documents, including copies of all applicable versions of personnel and payroll policies, records reflecting Aggrieved Employees' hours worked and wages paid, amongst numerous other documents. *Id.* And, notably, approval of a representative action settlement does not require that discovery be exhaustive. *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The fact that settlement results from arm's length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney*

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1    *v. Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997).

2         With respect to the claims asserted on behalf of the settlement group in this case, there are

3    significant risks that support the reduced compromise amount (see estimated potential recovery in

4    Section II.C., *supra*.).  Setareh Decl., ¶ 46.  These risks include, but are not limited to the following:

5         (i)     The risk that Plaintiff would not be able to prove liability for alleged failure to provide

6    compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant

7    meal periods and rest breaks would require an individualized inquiry that would prevent these issues

8    from being resolved on behalf of all aggrieved employees.  For example, Plaintiff alleged that

9    Defendant and FedEx Ground maintained a policy or practice of requiring Plaintiff and the aggrieved

10   employees to miss their meal periods and rest breaks because of Defendant's strict delivery schedule.

11   ECF 97.  Plaintiff alleged that Plaintiff and the aggrieved employees often had interrupted meal

12   periods due to the aggrieved employees being required to answer calls from Defendant's managers

13   about work tasks during meal periods. Defendant and FedEx Ground denied these allegations and

14   contended that any inquiry into why some employees missed meal and rest breaks would necessarily

15   require an individualized inquiry that would prevent this issue from being resolved on behalf of all

16   aggrieved employees. *Id.*  Defendant and FedEx Ground further contended that the meal and rest

17   break claims were preempted by federal law under the Federal Motor Carrier Safety Act and sought

18   partial summary judgment on this ground.

19        (ii)    The risk that PAGA relief could be denied entirely by a Court due to Defendant's

20   argument that numerous individualized inquiries might have to be made into whether particular

21   violations were experienced by any given Aggrieved Employee, thus rendering the case potentially

22   unmanageable. *Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746, 775 (2021) (trial

23   court did not abuse its discretion in striking a PAGA claim due to unmanageability). *Id.*

24        (iii)   The risk that Plaintiff would be unable to recover PAGA penalties at the subsequent

25   violation rate of $200 per pay period. California's appellate courts have held that "[u]ntil the employer

26   has been notified that it is violating a Labor Code provision (whether or not the commissioner or court

27   chooses to impose penalties), the employer cannot be presumed to be aware [of the violation]" and

28   therefore, until a Court or the Commissioner issues a finding of a violation, the initial $100 violation

21

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

rate applies for each pay period in which the alleged violation occurred. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008). Thus, Defendant argued that even if the Plaintiff was able to establish any violation of the Labor Code, the PAGA penalties assessed for these violations will be computed at the $100 rate, as opposed to the $200 per pay period rate at maximum, and there is a likelihood that a further reduction of the penalty to $5 per pay period as approved in *Carrington* would apply given Defendant's compliance with the Labor Code as discussed above. *Id.*

(iv)     The risk that, even if Plaintiff received a favorable judgment at trial, Defendant would be unable to pay. Defendant is in the process of selling off its assets and winding down its business, and thus a larger settlement amount would increase the risk that Defendant would be unable to pay the entire amount of any agreement. *Id.*

(v)     The risk that lengthy appellate litigation could ensue as to both liability and certification issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as opposed to unpredictable litigation. *Id.*

In these respects, Defendant and FedEx Ground strongly deny any liability on Plaintiff's claims. *Id.,* ¶¶ 38-42. Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess. *Id.*, ¶ 44.

In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and reasonable recovery for the settlement PAGA Members. *Id.*, ¶ 45.  The Settlement amount is, of course, a compromise figure. *Id.*  By necessity, it took into account risks related to liability, damages, probability of success at trial, and all the defenses asserted by the Defendant as to all such matters. *Id.*

As estimated by Defendant at the time the Agreement was executed, there are an estimated 255 PAGA Members. Setareh Decl., ¶ 36.  The average estimated Settlement Share for each PAGA Settlement Group Member is $17.18. *Id.*, ¶ 48.  This amount reflects a fair compromise well within the range of reasonableness. *Id.* ¶ 47.  Given the strong case that Defendant could bring to bear to challenge liability and given the real possibility that Defendant is not a going concern, this is not an inconsequential sum for the aggrieved employees. *Id.* ¶¶ 44-49.

**2.  The Experience, Reputation, and Ability of Plaintiff's Counsel**

California law also recognizes the "skill and experience of attorneys" as appropriate criteria for

evaluating a fee motion.  *Flannery v. California Highway Patrol*, 61 Cal.App.4th 629, 647 (1995); *accord In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 513 (W.D. Pa. 2003) ("skill and efficiency of the attorneys" among fee motion criteria); *In re Heritage Bond Litig*., No. 02-ML-1475-DT (RCx), 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (considering "the quality of Plaintiff Counsel's effort, experience and skill").  Plaintiff's Counsel has had substantial experience with the causes of action here and has regularly litigated employment law class actions, collective actions, and PAGA representative actions . Setareh Decl., ¶¶ 49-60.

### 3.   The Effort Required by the Litigation Justifies the Fee

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class and collective action for which final approval is sought.  *See Serrano*, 20 Cal.3d at 49, *See also Vizcaino*, 290 F.3d at 1048-50.  Compared to the reasonable value of the claims, Plaintiff's Counsel expended substantial effort to reach the Settlement. Setareh Decl., ¶¶ 5-22, 29-31.

Plaintiff's counsel expended considerable time and resources in litigating this matter. *Id.*  The work done by the attorneys working on this case includes communicating with Plaintiff, drafting pleadings, reviewing documents produced by defendants, working up and drafting a mediation brief, working with an expert to analyze the data produced by defendants, attending a mediation session with a mediator experienced in resolving wage and hour class actions, drafting a motion for preliminary approval, and drafting supplemental papers in support of the motion for preliminary approval. *Id*., ¶ 60. The "time and labor" criterion weighs in favor of an award of the requested fees.

### 4.   The Complexity of the Legal and Factual Issues

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered.  *Serrano*, 30 Cal.3d at 49; *accord Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 245 (2001).  Complexity of legal issues was moderate here, though the fee is reasonable, rendering this factor neutral.

### 5.   Plaintiff's Counsel Assumed Substantial Risk

The novelty and challenges presented by a representative action, as well as the corresponding risk that the PAGA Members and Plaintiff's Counsel will be paid no recovery or fee, is properly

1    evaluated in connection with a fee motion. *See Serrano*, 20 Cal.3d at 49; *accord Vizcaino*, 290 F.3d at

2    1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery).  Ninth Circuit and

3    California state courts regard circumstances in which Plaintiff Counsel's work is wholly contingent –

4    as is the case here – as a factor weighing in favor of approving a negotiated fee award that

5    approximates market rates. *Ketchum v. Moses*, (2001) 24 Cal.4th 1122, 1132-33 .  Because of the

6    uncertainty of the outcome in this and other wage and hour litigation undertaken by Plaintiff's counsel,

7    they took this case with the expectation that a risk enhancement, either in the form of a lodestar

8    multiplier or a percentage of the fund award equivalent thereto, would be available if Plaintiff

9    prevailed. This expectation stems from the fact that many cases undertaken by Plaintiff's counsel as

10   putative class actions do not resolve successfully.

### v.  Notice Pursuant to the Class Action Fairness Act of 2005

12         Notice pursuant to section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the

13   appropriate federal and state officials is required in this action because this action is a class action and

14   was removed from state court pursuant to the CAFA removal provisions.  28 U.S.C. §§ 1332(d),

15   1453(b).  Defendant will provide notice to the appropriate governmental officials concurrently with the

16   Parties filing the Motion Approval of PAGA Settlement. Agreement, I.L.  Pursuant to 28 U.S.C. §

17   1715(b), the Court may not issue an order granting final approval of the parties' Settlement earlier than

18   90 calendar days after the later of the dates on which the appropriate federal official and state officials

19   are served with notice of the proposed Settlement.

### B.  THE SETTLEMENT IS THE PRODUCT OF INFORMED, NON-COLLUSIVE NEGOTIATIONS

22         The Settlement was reached after informed, arm's-length negotiations between the parties with

23   the help of Michael J. Loeb, Esq., a mediator with significant experience mediating employment wage

24   and hour class and collective actions, shortly after a full-day mediation on September 22, 2023.

25   Setareh Decl., ¶ 21.  As discussed in greater detail above, the Parties conducted investigation and

26   discovery allowing them to assess the strengths and weaknesses of the case. *Id.*, ¶¶ 23-30. The Parties

27   were able to come to an agreement during the meditation and signed a Memorandum of Understanding

28   on September 25, 2023. *Id.*, ¶ 22.  Accordingly, the Settlement is the product of non-collusive

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

24

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1 negotiations.

## C.  THE SETTLEMENT HAS NO "OBVIOUS DEFICIENCIES"

The Settlement is substantial and non-reversionary and provides for a payment of **$33,600.00** by Defendant, which is, by any account, a significant amount given the value of the claims made by Plaintiff. Setareh Decl., ¶ 34.  The Settlement Payment for each PAGA Member will be based on the individual Workweek count for each PAGA Member divided by the total number of Workweeks for all PAGA Members, which is a fair way to calculate what each PAGA Settlement Group Member should receive. Agreement, at III.G.  If all other amounts sought are awarded, it is estimated that, the average PAGA Member will receive approximately **$17.18**. Setareh Decl., ¶ 48.

Defendant and FedEx Ground do not oppose the Plaintiff's Counsel Award (up to $14,533.33 in fees, of which of which Plaintiff's Counsel only seeks **$8,400.00** (25% of the TSA), plus up to **$3,702.02** in costs), and regardless, they are subject to Court approval at the Approval hearing. Agreement, III.F.

## D.  THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

"The PAGA is limited to the recovery of *civil* penalties." *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 579. Under PAGA, the default civil penalty for an employer's initial violation is one hundred dollars ($100) per employee per pay period, and two hundred dollars ($200) per pay period for any subsequent violations. Lab. Code § 2699(f)(2). While courts have the discretion to reduce civil penalties under certain circumstances, there is no requirement to do so.

There were approximately 255 aggrieved employees during the PAGA Period. Agreement, at I.M. As of September 22, 2023, the total number of PAGA Members was estimated to be 255, with approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023. Agreement, III.H. This represents 2,428 pay periods which is reduced to 1214 pay periods after ascribing a 50% reduction based on Defendant's strong good faith defenses and the possibility that a factfinder might agree with Defendant's arguments. Setareh Decl., ¶ 46. Based on a penalty of $100 for each pay period in which violation occurs, Defendant's total realistic exposure was approximately **$121,400.00**. *Id.* Accordingly, an TSA of **$33,600.00**, or 27.7% of Defendant's

1    potential realistic exposure, is more than fair and adequate.

2        The Settlement should be approved because it confers a substantial benefit on PAGA

3    Members, while proceeding with litigation would impose significant risk with no guarantee of

4    increased benefits, with a chance that the company may not be a going concern to be able to pay any

5    judgment at all given that it is winding down its business. Setareh Decl., ¶ 44(iv).

6        **i.  Liability Is Contested, and the Settlement Provides PAGA Members
         with Substantial Monetary Relief**

7

8        Plaintiffs' counsel conducted a thorough investigation into the facts of this representative

9    action and diligently pursued an investigation of Aggrieved Employees' claims against Defendant.

10   Setareh Decl., ¶¶ 23-31.  Plaintiff's counsel conducted informal discovery, reviewed Defendant's

11   written policies, including employee manuals and thoroughly reviewed a database of timekeeping and

12   payroll data to create a reliable damage model detailing the number of possible violations at issue. *Id.*

13       For its part, Defendant and FedEx Ground contest liability in the action, are represented by

14   zealous counsel, and are prepared to vigorously defend against these claims if the Action is not settled.

15       To be sure, if the litigation proceeds, Defendant could face significant liability.  However,

16   while Plaintiff is reasonably confident of a favorable outcome, there is substantial risk that the

17   evidence and/or legal developments could seriously diminish the value of her and the PAGA

18   Members' claims.

19       In light of these risks for all Parties, the Settlement provides the PAGA Members with a

20   sizeable recovery while mitigating all Parties' risk if the matter were to proceed. *Id.*  As such, the

21   Settlement is fair, reasonable, adequate, and is in the best interest of the PAGA Members in light of all

22   known facts and circumstances, including the risk of the significant delay. *Id.*  The Settlement is also

23   in the best interest of judicial efficiency in this case, as it obviously eliminates a lengthy and contested

24   representative action and trial from this Court's calendar. *Id.,* ¶ 48.

25       **ii.  The Group Release Is Appropriate Given Plaintiff's Claims**

26       The California Supreme Court has explained that a judgment in "a representative action

27   brought by an aggrieved employee under the Labor Code Private Attorneys General Act of 2004 . .

28   . is binding not only on the named employee plaintiff but also on government agencies and any

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

aggrieved employee not a party to the proceeding." *Arias*, 46 Cal.4th at 985. In accordance with this rule, the PAGA claims released by the Aggrieved Employees narrowly includes only the claims seeking civil penalties under PAGA that arose during the PAGA Period. Agreement, III.K.

### iii. Plaintiff Counsel's Fees Sought Are Consistent with Prevailing Market Rates

As more fully explained above in Section IV(A)(4)(a)-(e), the Plaintiff's Counsel Award requested by Plaintiff is more than reasonable, because the lodestar for the work performed is $250,331.11. Setareh Decl., ¶ 59. The hourly rates are consistent with the prevailing market rates for attorneys of similar experience. *Id.*

The Plaintiff's Counsel fee amount of up to $14,533.33. accurately reflects the Parties' intent that Plaintiff's Counsel shall seek no more than this amount in fees. Agreement, at III.F. This amount is equivalent to 1/3 of the TSA. Setareh Decl., ¶ 63. However, by and through the concurrent Motion for Preliminary Approval, Plaintiff's counsel only seek **$8,400.00** (i.e., 25% of the TSA) in attorneys' fees to maximize recovery for PAGA members. *Id.*, ¶ 59.

### E. PHOENIX SETTLEMENT ADMINISTRATORS SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR

The Parties propose that the Court appoint Phoenix Settlement Administrators ("Phoenix") to serve as the Settlement Administrator. Phoenix is experienced in administering wage-and-hour representative action settlements and is regularly appointed as a claims administrator by California courts to administer settlements. Over the last two years, Plaintiff's Counsel has engaged with Phoenix 44 times. Setareh Decl., ¶ 66. Phoenix's capped fees and costs for administration of the Settlement to 255 PAGA Members is $3,950.00. *Id.*, ¶ 65. The Parties agree that these estimates are reasonable and adequate to provide the necessary notice of the Settlement to the estimated 255 PAGA Members, while maximizing the NSA distributed to the Group. *Id.* Plaintiff's Counsel will provide an updated settlement administration expense estimate, if any such adjustment is necessary at the Final Compliance Hearing following approval of the Settlement. *Id.*

### F. RESIDUAL

In the event that an Individual Settlement Payment check has not been cashed within 180

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

1  calendar days, then such funds, plus any accrued interest, will be tendered to the State Controller's

2  Office Unclaimed Property Fund in the name of Settlement PAGA Members who did not cash their

3  settlement checks. Agreement, III.J.8. The entire NSA will be paid out to participating Settlement

4  PAGA Members, whether or not they all cash their individual settlement payment checks. *Id.*

5  **F.    CONCLUSION**

6  For the reasons set forth above, the Parties respectfully request that the Court grant their joint

7  motion in its entirety and enter an order approving: (1) the terms of the Settlement; (2) the appointment

8  of Phoenix Settlement Administrators as the Settlement Administrator; (3) the attorneys' fees and costs

9  described in the Settlement; and (4) final judgment.

10

11  DATED:  December 15, 2023                    SETAREH LAW GROUP

12                                              */s/ Shaun Setareh*
                                                SHAUN SETAREH
13                                              WILLIAM M. PAO
                                                Attorneys for Plaintiff
14                                              JANICE GILMORE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT