1   Shaun Setareh (SBN 200514)
       shaun@setarehlaw.com
2   William M. Pao (SBN 219846)
       william@setarehlaw.com
3   SETAREH LAW GROUP
    9665 Wilshire Boulevard, Suite 430
4   Beverly Hills, California 90212
    Telephone (310) 888-7771
5   Facsimile (310) 888-0109

6   Attorneys for Plaintiff
    JANICE GILMORE

7

8

9

10   UNITED STATES DISTRICT COURT

11   NORTHERN DISTRICT OF CALIFORNIA

12   SAN FRANCISCO DIVISION

13

14   JANICE GILMORE, on behalf of herself and all
     others similarly situated,

15                          Plaintiff,

16           v.

17   SAFE BOX LOGISTICS, INC., a California
     corporation;        FEDERAL        EXPRESS
18   CORPORATION, a Delaware corporation;
     FEDEX GROUND PACKAGE SYSTEM, INC.,
19   a     Delaware      corporation;      FEDEX
     CORPORATION, a Delaware corporation; and
20   DOES 1 through 50, inclusive,

21                          Defendants.

22

23

24

25

26

27

28

Case No. 3:21-cv-06917-AMO

Assigned For All Purposes to the Honorable
Araceli Martinez-Olguin, Courtroom 10

**PLAINTIFF'S FIRST AMENDED NOTICE
OF MOTION AND MOTION FOR FINAL
APPROVAL OF PAGA SETTLEMENT**

Date:   November 14, 2024
Time:   2:00 p.m.
Place:  Courtroom 10

Complaint Filed:      August 5, 2021
Action Removed:       September 7, 2021
FAC Filed:            January 14, 2022
SAC Filed:            February 17, 2023

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 2:00 p.m. on November 14, 2024, or as soon thereafter as the matter may be heard in Courtroom 10 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff JANICE GILMORE ("Plaintiff") will and does hereby move this Court for an Order approving:

- The terms of the PAGA Settlement ("Settlement") entered into between Plaintiff, acting in her capacity as a private attorney general for the State of California, and Defendant Safe Box Logistics, Inc.;
- The appointment of Phoenix Settlement Administrators as the Settlement Administrator;
- Final judgment.

This motion is made on the grounds that the Settlement is fair, adequate, reasonable, and within the range of possible approval.  This motion will be based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Declaration of Shaun Setareh, as well as exhibits attached thereto, the arguments of counsel, the documents filed in this action and any other matters as may be properly presented on or before the hearing on this motion.

DATED:  June 21, 2024                    SETAREH LAW GROUP


                                         */s/ Shaun Setareh*
                                         SHAUN SETAREH
                                         WILLIAM M. PAO
                                         Attorneys for Plaintiff
                                         JANICE GILMORE

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This motion seeks approval of the PAGA settlement of this representative action between Plaintiff JANICE GILMORE ("Plaintiff") in this representative action against Defendant SAFE BOX LOGISTICS, INC. ("Safe Box" or "Defendant") (collectively with Plaintiff, the "Parties").

As the result of arm's-length negotiations under the supervision of Michael Loeb, Esq., an experienced and well-renowned mediator with expertise in mediating complex wage and hour class actions and PAGA representative actions, the Parties have reached a fair and reasonable PAGA settlement of Plaintiff's claims. Pursuant to the Settlement Agreement ("Settlement")[1], Plaintiff now requests that the Court enter an order approving: (1) the terms of the Settlement; (2) the appointment of Phoenix Settlement Administrators as the Settlement Administrator; and (3) final judgment.

This Court previously identified several deficiencies in Plaintiff's initial Motion for Approval of the PAGA Settlement, including:

- Failure to include comparator cases, ECF 149, at 2:6-10. Plaintiff shall address this in § V(K).

- Missing exhibits to the Settlement Agreement, (ECF 149, at 2:11-15) and the "absence of the proposed Notice and Notice Packet" in the settlement agreement (ECF 149, at 2:16-3:2). Plaintiff shall address the foregoing concerns by filing a Supplemental Declaration of Shaun Setareh concurrently with the filing of this First Amended Motion for Approval of PAGA Settlement ("Motion") which shall include a copy of the fully executed Settlement Agreement along with Exhibits A and B to the Settlement Agreement (the [Proposed] Order Granting Approval of Settlement and the PAGA Notice, respectively).

- Missing proof of service indicating appropriate government agencies have been served

---

[1] The executed settlement agreement between the Parties is attached as **Exhibit 1** to the Supplemental Declaration of Shaun Setareh in Support of Plaintiff's First Amended Motion for Approval of PAGA Settlement ("Supp. Setareh Decl.") filed concurrently herewith.

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

with the submissions before the Court, ECF 149, at 3:10-15. Plaintiff shall address this in § V(E). Concurrent with the filing of this Motion, Plaintiff shall file the Supplemental Declaration of Shaun Setareh confirming that the LWDA has been provided a copy of the papers submitted to this Court for approval of the PAGA settlement on December 27, 2023. Furthermore, the Supp. Setareh Decl., will include a further Exhibit confirming that the LWDA has been provided another copy of the amended papers submitted to the Court for approval of the PAGA settlement on June 21, 2024.

- Ambiguity in Settlement Agreement regarding the payment of employer-side payroll taxes, ECF 149, at 3:16-23. Plaintiff shall address this in § V(K).

- The Court also took issue with the language of the Settlement Agreement. ECF 149, at 3:4-10. Plaintiff shall address this in § V(M).

- The Court finally instructed Plaintiff to provide the information required by the Procedural Guidance for Class Action Settlements or give an adequate explanation as to why any particular provision of the guidance does not apply. ECF 149 at 4:4-7. Plaintiff shall address this in § V(A-L).

The Agreement provides for a Maximum Settlement Amount ("MSA") of **$33,600.00**. Agreement, III.B. The MSA shall include all payments contemplated by the Agreement, including: (i) all Payments to the PAGA Settlement Group Members ("PAGA Members"); (ii) the LWDA Payment; (iii) the Plaintiff's Counsel Fees and Expenses Payment, to compensate Plaintiff's Counsel for all work performed thus far and all work remaining to be performed in connection with the Settlement, including without limitation documenting and administering the Agreement and securing Court approval; and (iv) the Settlement Administrator's fees and expenses. *Id.* No PAGA Member will have to submit a claim in order to recover his or her Settlement Share, and checks will be mailed directly to them. *Id.*, at III.J.3. Any checks issued to PAGA Members shall remain valid and negotiable for 180 calendar days after the date they are issued. *Id.*, at III.J.8. The Settlement Administrator will mail a reminder notice to those PAGA Members who have not cashed their checks after 120 calendar days and will also send a reminder via any available email address or social media for these PAGA Members. *Id.* In the event that a Settlement Share check has not been cashed within 180 calendar days, then such funds will be sent to

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

the California State Controller's Office Unclaimed Property Fund in the name of PAGA Members who did not cash their settlement checks. *Id.* As estimated by Defendant at the time the Agreement was executed, there are 255 PAGA Members. Setareh Decl., ¶ 33. Defendant represented there are approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023.[2] *Id.*, ¶ 36.

The Net Settlement Amount ("NSA") estimated to be paid to PAGA Members and the LWDA–after all Court-approved deductions from the MSA, *i.e.*, Plaintiff's Counsel fees of $8,400 (25% of the MSA)[3] and litigation costs of up to $3,720.02, and settlement administration costs of $3,950, is **$17,529.98**. *Id.*, ¶ 36.[4] After payment to the LWDA, the average estimated Settlement Share for each PAGA Settlement Group Member is **$17.18**. *Id.*, ¶ 48.

As discussed below, the Settlement reached here is a good result given the claims at issue in this case, the risk that the putative aggrieved group is unmanageable, the merit of the defenses and affirmative defenses, and the significant monetary amount obtained for the aggrieved employees, which compares favorably to similar settlements approved by other courts.

## II. RELEVANT BACKGROUND

### A. FACTUAL AND PROCEDURAL BACKGROUND

Defendant provides package delivery services of various products to customers across California. Setareh Decl., ¶ 4. Defendant hired Plaintiff in approximately October 2019 as a driver. *Id.*

On August 3, 2021, Plaintiff submitted her PAGA Notice to the LWDA as against Defendant

---

[2] The Court identifies that the Settlement defines the Covered Period as August 3, 2020 to December 1, 2023, which does not match the relevant time period as pled in the operative complaint. Cal. Code Civ. Proc. § 340(a) imposes a one-year statute of limitations period to PAGA actions. *See Thomas v. Home Depot USA Inc.*, 527 F.Supp.2d 1003, at 1007 (N.D. Cal. 2007). Plaintiff filed her PAGA notice on August 3, 2021, making the PAGA limitations period begin on August 3, 2020. Supp. Setareh Decl., ¶ 3, Exh. 2

[3] The Settlement allows for Plaintiff's Counsel to seek up to $14,533.33 (i.e., 1/3 of the MSA) in attorneys' fees. Settlement, III.F. However, in her Motion for Attorney's Fees, Plaintiff's counsel intends to seek $8,400.00 (i.e., 25% of the MSA) in attorneys' fees in order to increase the NSA and maximize recovery for PAGA Members. Setareh Decl., ¶ 59.

[4] Plaintiff does not seek a representative enhancement award payment.

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SafeBox, but did not submit a notice as to FedEx Ground.[5] Setareh Decl., ¶ 5. On August 5, 2021, Plaintiff filed a Class Action Complaint in the Superior Court of the State of California for the County of Santa Clara alleging nine causes of action against Safe Box, FedEx Ground Package System, Inc. ("FedEx Ground"), FedEx Corporation, and Federal Express Corporation for: (1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226. 7, 512, and 1198); (2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226. 7, and 1198); (3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997. 1 and 1198); (4) Failure to Pay Vacation Wages (Lab. Code § 227.3); (5) Failure to Pay Sick Time (Lab. Code §§ 246 et seq.); (6) Failure to Indemnify (Lab. Code § 2802); (7) Failure to Provide Accurate Written Wage Statements (Lab. Code § § 226(a)); (8) Failure to Timely Pay All Final Wages (Lab. Code § § 201, 202, and 203); and (9) Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*). *Id*. The action was removed to federal court September 7, 2021. ECF 1. Safe Box & Federal Express Corporation filed their answer denying liability generally and asserting certain affirmative defenses on September 14, 2021. ECF 13 & 15. On September 14, 2021, FedEx Ground filed a Motion to Dismiss Plaintiff's Complaint, and Defendant FedEx Corporation filed a Motion to Dismiss for lack of personal jurisdiction. ECF 14, 18.

On November 11, 2021, the Parties stipulated to allow Plaintiff to file a First Amended Complaint ("FAC") adding a single cause of action for civil penalties pursuant to Labor Code §§ 2698 and dismissing Federal Express Corporation and FedEx Corporation as defendants. ECF 35.

On January 13, 2022, the Court dismissed Federal Express Corporation and FedEx Corporation as defendants. ECF 45. On January 14, 2022, Plaintiff filed his First Amended Complaint ("FAC") adding a adding a ninth cause of action for civil penalties pursuant to Labor Code §§ 2698 of the Labor Code Private Attorneys General Act of 2004. ECF 48. On February 14, 2022, Safe Box filed its answer to Plaintiff's FAC denying liability generally and asserting certain affirmative defenses (ECF 52), and FedEx Ground filed a Motion to Partially Dismiss the FAC (ECF 53) and a separate Motion to Stay

---

[5] As FedEx Ground was not a subject of the PAGA Notice, and is not responsible for payment of the settlement amount here, it is not a signatory to the Agreement.  However, during mediation SafeBox bargained for a release of FedEx Ground and SafeBox is paying consideration for it as part of the Settlement.

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

Proceedings (ECF 54). On June 24, 2022, the Court denied FedEx Ground's Motion to Stay Proceedings, and partially granted its Motion to Dismiss the FAC with respect to Plaintiff's UCL claim for injunctive relief. ECF 74. On October 20, 2022, FedEx Ground filed its Answer to Plaintiff's FAC. ECF 85.

On January 17, 2023, Plaintiff filed a Discovery Letter Brief requesting Defendant and FedEx Ground provide contact information, timekeeping, and payroll data for the putative class and all aggrieved employees. ECF 89. On January 23, 2023, the Court denied Plaintiff's request to compel the production of contact information, time keeping, and payroll information for all aggrieved employees and members of the putative class. ECF 92. On February 6, 2023, Plaintiff filed a Motion for Relief from the Magistrate Judge's Order denying Plaintiff's Motion to Compel. ECF 93. On March 22, 2023, the Court denied Plaintiff's Motion for Relief.

On February 15, 2023, the Parties stipulated to allow Plaintiff leave to file her Second Amended Complaint ("SAC") with additional "client employer" allegations under California Labor Code § 2810.3 against FedEx Ground. ECF 95. On February 17, 2023, Plaintiff filed his SAC. ECF 97. On March 3, 2023, Safe Box filed its answer to Plaintiff's SAC, and FedEx Ground filed a Motion to Dismiss the Tenth Cause of Action in Plaintiff's SAC. ECF 99 & 100. On April 12, 2023, Plaintiff filed an Administrative Motion to Vacate and Amend the Scheduling Order. ECF 104. The Court denied Plaintiff's motion on April 20, 2023. ECF 106. On June 7, 2023, Plaintiff filed a Renewed Administrative Motion to Vacate and Amend the Scheduling Order. ECF 119. On June 8, 2023, FedEx Ground filed a Motion for Partial Summary Judgment. ECF 120.

On May 5, 2023, Plaintiff filed a second Discovery Letter Brief again requesting the contact information, timekeeping records, and payroll data of the putative class and aggrieved employees. ECF 107. On May 15, 2023, the Court denied Plaintiff's second request to compel timekeeping records, payroll data, and contact information. ECF 113.

On August 28, 2023, the Court denied without prejudice FedEx Ground's Motion for Partial Summary Judgment and Motion to Dismiss the Tenth Cause of Action in Plaintiff's SAC. ECF 136. The Court additionally referred the matter to mediation. ECF 135. On September 13, 2023, the Court appointed Michael Loeb, Esq. as the mediator. ECF 137. On September 15, 2023, the Court denied Plaintiff's

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

5

1    Renewed Motion to Vacate and Amend the Scheduling Order. ECF 138.

2    On September 22, 2023, the Parties participated in a half-day mediation session with Michael J.

3    Loeb, Esq. of JAMS via Zoom. Setareh Decl., ¶ 21. On September 25, 2023, following several days of

4    extended negotiations following mediation, the Parties signed a memorandum of understanding reflecting

5    a settlement of the matter. *Id.,* ¶ 22. On September 29, 2023, the Parties filed a Notice of Settlement. ECF

6    139. Following further negotiations, the Parties finalized the long-form Agreement, which the Parties

7    executed on November 13, 2023. Setareh Decl., ¶ 22.

8    **B.    CLAIMS AND DEFENSES**

9    Plaintiff alleges that while working as an hourly, non-exempt Driver, Plaintiff and aggrieved

10    employees were often unable to take 30-minute uninterrupted meal breaks and 10-minute uninterrupted

11    rest breaks in part due to (1) Defendant's policy of not scheduling each meal period as part of each work

12    shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much

13    work on each employee such that it made it unlikely that an employee would be able to take their breaks

14    if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that

15    encouraged employees to take their meal and rest periods, and because they were required to answer

16    calls from their managers on during their meal periods. *See, generally,* ECF 97. Plaintiff further alleges

17    that Plaintiff and the aggrieved employees were regularly not provided with uninterrupted rest periods

18    of at least ten minutes for each four hours worked because they were required to complete a strict

19    delivery schedule. *Id.* Plaintiff alleges that Defendant violated the rights of Plaintiff and aggrieved

20    employees by failing to reimburse them for all necessary business expenses incurred, particularly from

21    the required use of personal cell phones to navigate during deliveries and communicate with Defendant

22    regarding their work obligations, including requesting meal periods and rest breaks. *Id.* Plaintiff further

23    alleges Defendant did not pay her or aggrieved employees for all accrued vacation wages during their

24    employment *Id.* Plaintiff also complains that she was not provided with compliant wage statements and

25    was not paid all of her final wages on time (direct and derivative). *Id.* Finally, Plaintiff alleges that

26    Plaintiff and aggrieved employees were not paid all wages earned as Defendant and FedEx Ground

27    directed, permitted or otherwise encouraged Plaintiff and aggrieved employees to perform off-the-clock

28    work. *Id.*

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA
SETTLEMENT

Defendant and FedEx Ground generally denied all of Plaintiff's allegations. ECF 99. Defendant contends that it properly compensated and reimbursed the putative PAGA Members and did not violate the law including the California Labor Code, Wage Orders, and Code of Regulations. *Id.*, 35. FedEx Ground contends that it did not employ Plaintiff or any of the putative PAGA Members and that it did not violate the law in any way with respect to Plaintiff or any of the putative PAGA Members.

### C.    PLAINTIFF'S ASSESSMENT OF DAMAGES

Under Cal. Lab. Code §§ 2699(f)(2) and 2699.5, employers that violate certain provisions of the Labor Code are subject to penalties according to the following formula:

1. $100.00 for the initial violation per employee per pay period; and

2. $200.00 for each subsequent violation per employee per pay period.

These penalties must be allocated seventy-five percent (75%) to the LWDA and twenty-five percent (25%) to the affected employees. Cal. Lab. Code § 2699(i). Plaintiff alleged that, because of the violations described above, Defendant and FedEx Ground were liable for these penalties for each applicable pay period during the PAGA period. In ascertaining exposure for the allegations described above, Plaintiff considered several important cases. First, courts considering the issue have refused to "stack" PAGA penalties, severely limiting the recoverable PAGA penalties. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (approving PAGA penalty reduction to $5 per pay period); *See also Atempa v. Pedrazzani*, 27 Cal. App. 5th 809 (2018); *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1144 (9th Cir. 2021) ("Under California law, '[a] good faith dispute' that an employer is required to comply with a particular law 'will preclude imposition' of heightened penalties.").

Defendant and FedEx Ground argued that even if Plaintiff was able to recover some PAGA penalties on behalf of other aggrieved employees, courts frequently use their discretion under Cal. Lab. Code § 2699(e)(2), to significantly reduce PAGA penalties where such penalties would be unjust, arbitrary, and improper. *See*, e.g., *Carrington*, 30 Cal. App. 5th at 529. Setareh Decl., ¶ 42.

Defendant and FedEx Ground further contended that any inquiry into why some employees missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on behalf of all aggrieved employees. Thus, Plaintiff would not be able to prove liability for alleged failure to provide compliant meal periods and rest breaks; or that to establish

7

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  liability for the failure to provide compliant meal periods and rest breaks would require an individualized

2  inquiry that would prevent these issues from being resolved on behalf of all aggrieved employees. *Id.*, ¶

3  44. Furthermore, Defendant and FedEx Ground argued that Plaintiff could not recover for any purported

4  meal and rest break violation because such claims are preempted by federal law pursuant to the Federal

5  Motor Carrier Safety Act.

6        Plaintiff further contemplated the risk that she would be unable to recover PAGA penalties at

7  the subsequent violation rate of $200 per pay period. California's appellate courts have held that "[u]ntil

8  the employer has been notified that it is violating a Labor Code provision (whether or not the

9  commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware [of

10  the violation]" and therefore, until a Court or the Commissioner issues a finding of a violation, the initial

11  $100 violation rate applies for each pay period in which the alleged violation occurred. *Amaral v. Cintas*

12  *Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008). Thus, Defendant argued that even if the Plaintiff was

13  able to establish any violation of the Labor Code, the PAGA penalties assessed for these violations will

14  be computed at the $100 rate, as opposed to the $200 per pay period rate at maximum, and there is a

15  likelihood that a further reduction of the penalty to $5 per pay period as approved in *Carrington* would

16  apply given Defendant's compliance with the Labor Code as discussed above. Setareh Decl., ¶ 44.

17        There was also the risk that, even if Plaintiff received a favorable judgment at trial, Defendant

18  would be unable to pay. Defendant is in the process of selling off its assets and winding down its

19  business, and thus a larger settlement amount would increase the risk that Defendant would be unable

20  to pay the entire amount of any agreement. *Id.*

21        Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks

22  that were (and continue to be) very difficult to assess. In light of the uncertainties of protracted litigation,

23  the Settlement amount reflects a fair and reasonable recovery for the settlement PAGA Members.  The

24  Settlement amount is, of course, a compromise figure.  By necessity, it took into account risks related to

25  liability, damages, and all the defenses asserted by the Defendant and FedEx Ground as to all such

26  matters.

27        Here, there were approximately 4,854 workweeks within the applicable PAGA Period, or 2,428

28  pay periods. However, given the likelihood that the pay period violation rate was significantly lower

8

than 100% and the very real risks that a factfinder might agree with Defendant's arguments or Defendant's strong good faith defenses, Plaintiffs ascribed a 50% reduction to the number of pay periods at issue. Plaintiff thus concluded that Defendant's total realistic exposure in this case was approximately $121,400.00.

While Plaintiff continues to believe in the merits of the case, Defendant argued that it fully complied with California's wage and hour laws, and thus faced minimal exposure, if any. Therefore, the Maximum Settlement Amount of **$33,600.00** is an excellent result and within the zone of reasonableness for both parties. If approval is granted, Plaintiffs will have recovered 27.7% of their estimated realistic exposure value in this case—a fair compromise of the claims, by any measure.

As mentioned above, courts can, and regularly do, exercise their discretion to reduce the amount of PAGA penalties. Here, with approximately 2,428 pay periods at issue among 255 Aggrieved Employees, under *Carrington v. Starbucks Corp.*,30 Cal. App. 5th 504 (2018) an appropriate settlement amount could be as low as $12,140. Instead, despite the risks of the case identified through mediation and exchange of documents and information with opposing counsel, the Total Settlement Amount of $33,600.00 represents a roughly $13.83 penalty per pay period assuming a 100% violation rate for all pay periods in the PAGA period. The portion of the Net Settlement Amount to be distributed to the approximately 255 Aggrieved Employees in this case is at least $4,238.49 — or roughly $17.18 per Aggrieved Employee. To the best of the undersigned counsel's knowledge, other than this Action, there are no other like claims asserted or filed by PAGA Members.  To the best of the undersigned counsel's knowledge, no PAGA Member has refrained from bringing an action with claims similar to those raised in the Action, whether in reliance on the Action or otherwise, and who thus might be prejudiced by dismissal of the Action. Setareh Decl. ¶ 48.

## III.    THE SETTLEMENT

The following is a summary of the material terms of the Settlement:

### A.    THE SETTLEMENT GROUP

For purposes of the Settlement, "PAGA Settlement Group Members" means, based upon Safe Box's representation to Plaintiff, the approximately two hundred fifty-five (255) current and former aggrieved employees of Safe Box in California during the Covered Period who worked one or more pay periods, but

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  excluding employees who individually settled their claims with a full general release.

2  **B.     TOTAL SETTLEMENT AMOUNT AND DISTRIBUTIONS**

3  Defendant will pay a maximum aggregate MSA of $33,600. Agreement, III.B. The MSA covers:

4  (i) all Settlement Shares to PAGA Settlement Group Members ("PAGA Members"); (ii) the LWDA

5  Payment; (iii) the Plaintiff's Counsel Fees and Expenses Payment, to compensate Plaintiff's Counsel for

6  all work performed thus far and all work remaining to be performed in connection with the Settlement,

7  including without limitation documenting and administering the Agreement and securing Court

8  approval; and (iv) the Settlement Administrator's fees and expenses. *Id.*

9  It is estimated that the NSA payable to PAGA Members and the Labor & Workforce

10  Development Agency ("LWDA") will be $**16,479.98** out of the $**33,600.00** MSA after all Court-

11  approved deductions from the MSA – i.e., Plaintiff's Counsel fees of $**8,400.00** (25% of the MSA)[6] and

12  litigation costs of up to $3,720.02, settlement administration costs of $3,950. After the payment of

13  $12,359.98 to the LWDA, the amount payable to PAGA Members will be $4,382.49. To fairly allocate

14  settlement funds based on each PAGA Members' dates of employment as a PAGA Member, the

15  distribution amount will be calculated as follows: Settlement Administrator will allocate Settlement

16  Shares from the Net Settlement Amount to the PAGA Members in proportion to the number of

17  workweeks worked for Safe Box during the Covered Period in comparison to the total number of

18  workweeks worked by all PAGA Members. The payments to Aggrieved Employees shall be reported

19  as non-wage payments in the year of payment and reported on a Form 1099 with no withholdings or

20  payroll taxes because the Action sought civil penalties. Agreement, III.G.

21  The MSA is subject to the following Modification provision: Defendant represented at the

22  mediation that as of September 22, 2023, the total number of PAGA Members was estimated to be 255,

23  with approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023. The Parties

24  agree that if, at the time the Court approves the Agreement, the total number of PAGA Members

25  increased by more than ten percent (10%) of the total of 255 estimated PAGA Members as of September

26

27

28  ---

[6] Plaintiff intends to file a separate Motion for Attorney's Fees shortly after the filing of this Motion per the Court's instruction.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

22, 2023, or more than 25 PAGA Members, then either (i) the Total Settlement Amount shall be adjusted and increased by Safe Box on a proportionate basis using the "Per Workweek Settlement Value", which shall be calculated using 5,339 workweeks (i.e., 10% more than the total estimated 4, 854 workweeks) as the numerator and the Net Settlement Amount as the denominator, or (ii) alternatively, at Safe Box's election, the Covered Period may be ended earlier than December 1, 2023 or the Effective Date so that the per workweek settlement payments to the PAGA Settlement Group Members is no less than the Per Workweek Settlement Value. For the avoidance of doubt, if the total number of PAGA Members is more than 280, then the adjusted increase of the MSA or adjustment of the end of the Covered Period would be based on the amount of PAGA Members greater than 280. Agreement, III.H.

**C.    SCOPE OF THE PAGA SETTLEMENT GROUP MEMBER RELEASES**

In consideration for their Settlement Shares, as of the date the Settlement becomes Final, Plaintiff acting on behalf of the State of California, and all PAGA Settlement Group Members, releases the Released Parties, as defined in the Agreement, from any and all claims and causes of action for penalties recoverable under PAGA whether known or unknown, that were pleaded in Plaintiffs Complaint or that could have been pleaded on the facts as alleged in the Complaint and Plaintiffs PAGA notice to the LWDA, arising during the Covered Period, *Id.*, at III.K.(1). The "PAGA Released Claims" are all claims under PAGA, Labor Code sections 201, 202, 203, 204, 218.6, 223, 226, 226.3, 226.7, 510, 512, 1021.5, 1194, 1194.2, 1197, 1197.1, 1198, 2810.3, 2802, 1997.1, 2698, 2699.3, and 2699.5, California Business and Professions Code section 17200, the Industrial Welfare Commission Wage Orders, and any resulting claim for attorney's fees and costs *Id.*

The PAGA Released Claims include all such respective claims under PAGA only, whether known or unknown by the releasing party. Therefore, with respect only to those respective PAGA Released Claims, Plaintiff and the PAGA Settlement Group Members expressly waive and relinquish the provisions, rights and benefits of section 1542 of the California Civil Code. *Id.* at III.K.(2). With respect to the PAGA Released Claims, the scope of the waiver of rights and benefits under section 1542 of the California Civil Code is in no way intended by the Parties to extend to any claims beyond the PAGA Released Claims; rather, this waiver is intended to apply only to the PAGA Released Claims. *Id.*

Furthermore, the PAGA Released Claims are intended to release Safe Box, FedEx Ground,  and

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1   each of their past, present, and future divisions, affiliates, predecessors, successors, shareholders,

2   officers, directors, employees, attorneys, agents, trustees, representatives, administrators, fiduciaries,

3   assigns, subrogees, executors, partners, parents, subsidiaries, joint employers, co-employers, payroll

4   service providers, staffing agencies. Professional Employer Organizations, Administrative Service

5   Organizations, insurers, related corporations, or privies, both individually and collectively, any other

6   individual or entity that could be jointly liable with Safe Box and FedEx Ground, whether previously or

7   hereafter affiliated in any manner, and the respective predecessors, successors, and assigns of all the

8   foregoing. *Id.*, III.O.

9       **D.    PAGA PAYMENT AND NOTICE PROCEDURES**

10      If appointed by the Court, Phoenix Settlement Administrators, serving as Settlement

11  Administrator, will have sole and exclusive responsibility for: duties will include preparing, printing,

12  and mailing the Notice Packet to the PAGA Settlement Group Members; conducting a National Change

13  of Address search and using Accurint and other reasonable and cost-effective skip trace methods to

14  locate any PAGA Member whose Notice Packet was returned by the U.S. Postal Service as non-

15  deliverable, and re-mailing the Notice Packet to the PAGA Settlement Group Member's new address;

16  issuing the checks to effectuate the payments due under the Settlement; and otherwise administering the

17  Settlement pursuant to this Agreement. The Settlement Administrator will have the final authority to

18  resolve all disputes concerning the calculation of a PAGA Settlement Group Member's Settlement

19  Share, subject to the dollar limitations set forth in this Agreement. *Id.*, III.I.

20      Should the Court approve the Settlement, within fourteen (14) calendar days Defendant will

21  provide the Settlement Administrator with a confidential list of PAGA Members along with: (1) their

22  last known addresses; (2) Social Security numbers; (3) telephone numbers; (4) employment start and

23  end dates; and (5) the number of workweeks the PAGA Member worked during the Covered Period.

24  *Id.,* at III.J.(3)(a). Within five (5) calendar days after receiving the confidential data, the Settlement

25  Administrator will prepare and mail the Notice and a check to each PAGA Member *Id.*, at III.J.(3)(b).

26  The Notice that is mailed out to PAGA Members shall be in a form substantially similar to the form

27  attached to the Agreement as **Exhibit B**. *Id.*, I.L.  If a Notice is returned because of an incorrect address,

28  the Settlement Administrator will, within ten (10) days from receipt of the returned packet, search for a

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

12

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1    more current address for the PAGA Member using Accurint or other reasonable and cost-effective skip

2    trace methods, and re-mail the Notice to the PAGA Member. *Id.*, III.J.(3)(c). of their current mailing

3    address and the address where their Individual Settlement Payment should be mailed following the

4    Effective Date, if the addresses are different from the address that the Notice is initially mailed.

5         All PAGA Members will have one-hundred eighty (180) days after the Settlement Administrator

6    initially mails the Notice and Settlement Share to PAGA Members to cash his or her Settlement Share.

7    *Id.*, III.J.(8). If any PAGA Settlement Group Member's Settlement Share check is not cashed within one

8    hundred twenty (120) calendar days after its last mailing to the PAGA Member, the Settlement

9    Administrator will send the PAGA Member a letter or postcard informing him or her that unless the

10    check is cashed in the next sixty (60) calendar days, it will expire and become nonnegotiable, and offer

11    to replace the check if it was lost or misplaced but not cashed. *Id.* If a PAGA Member fails to cash the

12    check for his or her Settlement Share within one hundred eighty (180) calendar days after it is mailed to

13    him or her, the funds shall be distributed by the Settlement Administrator to the State Controller's

14    Unclaimed Property Fund in the Settlement Group Member's name.

15    **E.**      **TAX TREATMENT**

16         Because this case is being resolved on a PAGA-only basis with all recovery arising from

17    penalties (rather than unpaid wages), IRS Form 1099 will be issued. With regard to settlement payments

18    to the PAGA Members and Plaintiff, IRS Form 1099s will be issued. *Id.* at III.G. . Payment of Plaintiff

19    Counsel's fees and litigation costs will also be reflected in an IRS Form 1099 to Plaintiff's counsel. *Id.*

20    III.F.

21    **IV.**    **THE SETTLEMENT MEETS THE STANDARDS FOR PAGA APPROVAL**

22         **A.**      **STANDARD OF REVIEW**

23         "An employee bringing a PAGA action does so as the proxy or agent of the state's labor law

24    enforcement agencies, ... who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803

25    F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). Thus, "[a]n action brought under the PAGA

26    is a type of *qui tam* action." *Id.* at 429. Because a PAGA action is brought as proxy of law enforcement

27    agencies, "[t]here is no requirement that the Court certify a PAGA claim for representative treatment

28    like in Rule 23 ...." *Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA
SETTLEMENT

22, 2015). However, because a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]." California Labor Code § 2699(1)(2).

"There is no binding authority identifying the proper standard of review of PAGA settlements to be employed by the court." *Ambrose v. US Med-Equip, LLC,* 2024 WL 307843, at *3 (E.D. Cal. Jan. 26, 2024) (*citing Perez v. All Ag, Inc.*, 2021 WL 3129602, at *3). "In the class action context, where PAGA claims are also often brought, a district court must independently determine that a proposed settlement agreement is 'fundamentally fair, adequate and reasonable' before granting approval." (*citing Beltran v. Olam Spices & Vegetables, Inc.,* No. 118CV01676JLTSAB, 2023 WL 1467118, at *20 (E.D. Cal. Feb. 2, 2023) (*quoting Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982)); *see also Perez,* 2021 WL 3129602, at *3 (same). "However, this is not a class action, and PAGA claims are intended to serve a decidedly different purpose—namely to protect the public rather than for the benefit of private parties. *Perez,* 2021 WL 3129602, at *3 (*citing Arias v. Superior Court,* 46 Cal. 4th 969, 986).

In *O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1133 (N.D. Cal. 2016), where both class action and PAGA claims were covered by a proposed settlement, the LWDA "stressed that":

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*Id.*; *see also Perez*, 2021 WL 3129602, at *4 n.5 ("The LWDA is not aware [of] any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action." (*quoting O'Connor v. Uber Techs., Inc*., No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016), ECF No. 736 at 2–3)).

**B.    THE SETTLEMENT SHOULD BE APPROVED**

### 1.    The Settlement Falls Within the Range of Possible Approval

"The PAGA is limited to the recovery of civil penalties." *Villacres v. ABM Industries Inc*. (2010) 189 Cal.App.4th 562, 579. Under PAGA, the default civil penalty for an employer's initial violation is one hundred dollars ($100) per employee per pay period, and two hundred dollars ($200) per pay period

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

14

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

for any subsequent violations. Lab. Code § 2699(f)(2). While courts have the discretion to reduce civil penalties under certain circumstances, there is no requirement to do so.

There were approximately 255 aggrieved employees during the PAGA Period. Agreement, at I.M. As of September 22, 2023, the total number of PAGA Members was estimated to be 255, with approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023. Agreement, at III.H. This represents 2,428 pay periods which is reduced to 1214 pay periods after ascribing a 50% reduction based on Defendant's strong good faith defenses and the possibility that a factfinder might agree with Defendant's arguments. Setareh Decl., ¶ 46. Based on a penalty of $100 for each pay period in which violation occurs, Defendant's total realistic exposure was approximately $121,400.00. *Id*. Accordingly, an MSA of $33,600, or 27.7% of Defendant's potential realistic exposure, is more than fair and adequate.

The Settlement should be approved because it confers a substantial benefit on PAGA Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits, with a chance that the company may not be a going concern to be able to pay any judgment at all. Setareh Decl., ¶ 44(iv).

**2.      Although the Parties Dispute Whether Any Violations Occurred, the Settlement Achieves Compliance With, and Deters Violations of, State Labor Laws**

While the Parties dispute whether Defendant's employment practices violate the Labor Code, this litigation has undisputedly achieved compliance with Labor Code sections referenced in the Settlement due to the significant amount that Defendant has agreed to pay for these alleged violations. Moreover, the significant amount will also serve as a deterrent to similar violations. Accordingly, the proposed Settlement reasonably advances PAGA's purpose by achieving compliance with the Labor Code and deterring similar violations.

**3.      The Settlement Serves to Enlist Private Citizens in Enforcement of PAGA**

Plaintiff also believes the proposed Settlement acts to encourage private enforcement of PAGA. Through the Settlement, Plaintiff's counsel will receive attorneys' fees and costs as determined by the Court, and all PAGA Members will receive a 25% share of the PAGA allocations, as well as notice of

1  the claim.

2  **4.      The Settlement Is "Just" and "In the Public Interest"**

3  The proposed Settlement is both just and in the public's interest.

4  First, this settlement reasonably values the PAGA claims as to Defendant. While Plaintiff

5  believes the claims are meritorious and that they would have recovered unreduced penalties, Defendant

6  denies all liability and asserted numerous defenses to the claims. In addition, PAGA awards maximum

7  penalties of "one hundred dollars ($100) for each Aggrieved Employee per pay period for the *initial*

8  violation and two hundred dollars ($200) for each Aggrieved Employee per pay period for each

9  *subsequent* violation." Lab. Code § 2699(f)(2). At least one appellate court holds, in the context of other

10  Labor Code violations, that the "subsequent " violation penalty rate for a Labor Code does not apply

11  until an employer is notified that its conduct violates the law. *Amaral*,163 Cal. App. 4th at 1207-09.

12  Nevertheless, Defendant has agreed to pay a Total Settlement Amount of **$33,600** in exchange for a

13  PAGA release involving approximately 255 Aggrieved Employees who were subjected to similar

14  working conditions during the applicable time frame. Accordingly, Defendant is paying an average of

15  **$131.76** ($33,600 ÷ 255) per Aggrieved Employee. If the Court grant's Plaintiff's subsequent Motion

16  for Attorney's Fees and Costs, the State and the Aggrieved Employees will still share approximately

17  **$68.75** ($17,529.98 ÷ 255) per Aggrieved Employee for civil penalties – still a significant and reasonable

18  recovery.[7]

19  Second, the proposed Settlement, even with deductions, provides a substantial sum to the State:

20  **$13,147.49** (75% of $17,529.98). It also provides a small sum to each employee (around **$17.18**) on a

21  *pro-rata* basis. (The aggregate sum provided to Aggrieved Employees (assuming all deductions) is

22  **$4,382.49**.) However, the purpose of PAGA is not to compensate employees, who retain any private

23  right of action they may have under the applicable Labor Code provisions. In that respect, the Settlement

24

25

26  [7] It is appropriate to consider the gross award (before deductions) in comparing the
litigation value of a case against a settlement award. Among other things, it is appropriate to pay

27  fees to of a common fund, even in a fee-shifting case, "to avoid the unjust enrichment of those
who benefit from the fund that is created, protected, or increased by litigation and who otherwise

28  bear none of the litigation costs." *Sobel v. Hertz Corporation* (D. Nev. 2014) 53 F.Supp.3d 1319,
1326.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

16

also requires each employee receive a notice that describes this litigation and the settlement sum. Plaintiff contends this notice will educate Aggrieved Employees as to the requirements of the Labor Code, something that is in the public interest and consistent with PAGA's purpose. *See* Lab. Code § 2699(j) (stating that civil penalties recovered under PAGA shall be distributed to the LWDA for [among other things] "education of employers and employees about their rights and responsibilities under this code.")

Third, public policy strongly favors the settlement of litigation. *Consumer Advocacy Group v. Kintetsu, supra*, 141 Cal.App.4th at 63. Because the proposed Settlement is neither unjust nor ignores the public interest, it should be approved.

## V.    NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION SETTLEMENTS

Keeping in mind that because a PAGA action is brought as proxy of law enforcement agencies, "[t]here is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23 ...." *Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015). Thus, in response to the Court's discussion regarding the *Procedural Guidance for Class Action Settlements* promulgated by this District in its recent Order, as there is no class settlement approval being sought, the *Procedural Guidance* is inapplicable here  Nevertheless, even though PAGA actions do not require preliminary approval, and are therefore the *Procedural Guidance* is not applicable, undersigned counsel responds to the Court's Order to regarding the *Procedural Guidance* and provides, pursuant to the *Procedural Guidance* the below information which "[t]he motion for preliminary approval should state."

### A.    ANY DIFFERENCES BETWEEN THE SETTLEMENT CLASS AND THE CLASS PROPOSED IN THE OPERATIVE COMPLAINT OR BETWEEN THE CLAIMS RELEASED IN THE SETTLEMENT AND THOSE PLED IN THE OPERATIVE COMPLAINT

The First Amended Complaint ("SAC") is currently the operative complaint in this Action. Setareh Decl., at ¶ 13.  The Settlement has been tailored to conform to the PAGA cause of action in the SAC.  *See* ECF 97.  As part of the Agreement, Plaintiff agrees to release the Released Parties from all claims and causes of action for penalties recoverable under PAGA. *Id.*, at III.K.1. However, Plaintiff

17

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

brought nine other causes of action in her FAC. *See* ECF 97. The current Agreement is limited to PAGA only due to Plaintiff not moving for class certification by June 22, 2023, effectively wiping out all of her potential class-wide claims. Setareh Decl., ¶ 24. As part of the Agreement, Plaintiff and PAGA Members release *only* those claims applicable under PAGA.

**B.    ESTIMATE OF THE NUMBER AND /OR PERCENTAGE OF PAGA MEMBERS EXPECTED TO SUBMIT A CLAIM**

No PAGA Member will have to submit a claim in order to recover his or her Settlement Share, and checks will be mailed directly to them. Agreement, III.J.3. As estimated by Defendant at the time the Agreement was executed, there are an estimated 255 PAGA Members. (Setareh Decl., ¶ 33.)  Any checks issued to Settlement PAGA Members shall remain valid and negotiable for 180 calendar days after the date they are issued. Agreement, at III.J.3.  The Settlement Administrator will mail a reminder notice to those Settlement PAGA Members who have not cashed their checks after 120 calendar days and will also send a reminder via any available email address or social media for these Settlement PAGA Members. *Id.*  In the event that an Individual Settlement Payment check has not been cashed within 180 calendar days, then such funds, plus any accrued interest, will be tendered to the California State Controller's Office Unclaimed Property Fund in the name of Settlement PAGA Members who did not cash their settlement checks. *Id.*

**C.    SETTLEMENT ADMINISTRATION**

Plaintiff obtained bids from potential third-party settlement administrators Phoenix, ILYM Group, Inc., and Phoenix Settlement Administrators. Setareh Decl., ¶ 65. Phoenix was selected because they submitted the lowest bid of $3,950, which Plaintiff's Counsel believes is reasonable in light of Plaintiff Counsel's experience in such settlement administration matters and given the work to be done by or potentially required of the Settlement Administrator due to the various Settlement provisions. *Id.* The MSA is to be wire transferred to the Settlement Administrator within thirty (3) days of the Court's Final Approval Order. Agreement, III.J.3.a.  The proposed forms of Notice to all PAGA Members are to be sent via mail, and where returned or non-deliverable, the Settlement Administrator shall make reasonable efforts to locate PAGA Members and re-send the notices *Id.*, III.J.3.b. The Settlement Administrator shall promptly attempt to determine a correct address by lawful use of standard search

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  techniques (e.g., skip trace search), and shall then perform a re-mailing if another mailing address is

2  identified by the Settlement Administrator. *Id.* The Agreement does not provide for any reversion of

3  settlement funds to Defendant or FedEx Ground. *Id.*, III.B. Over the last two years, Plaintiff's counsel

4  has engaged with Phoenix 28 times in 28 class actions. Setareh Decl., ¶ 66.

### 1.   A Reasonable Result Was Achieved on Behalf of the PAGA Settlement Group Members

7  The benefit achieved on behalf of PAGA Members defines a primary yardstick against which

8  any fee motion is measured. *See Serrano v. Priest*, 20 Cal.3d 25, 49 (1977); *accord Vizcaino v. Microsoft*

9  *Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Courts recognize that arm's-length negotiations conducted

10  by competent counsel are prima facie evidence of fair settlements. The United States Supreme Court

11  held that "[o]ne may take a settlement amount as good evidence of the maximum available if one can

12  assume that parties of equal knowledge and negotiating skill agreed upon the figure through arm's-

13  length bargaining. . . ." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

14  The Parties reached a Settlement in good faith after negotiating at arm's length with a

15  professional mediator skilled in resolving representative action cases including wage and hour actions.

16  Setareh Decl., ¶ 30. The Parties thoroughly investigated and evaluated the factual and legal strengths

17  and weaknesses of this case before reaching the Settlement. *Id.* The Settlement was reached after

18  included informal written discovery, the pre-mediation exchange of requested information, and,

19  numerous communications between the Parties to identify and assess the issues. *Id.*, ¶ 23. Through this

20  process, Defendant provided Plaintiff's Counsel with numerous relevant documents, including copies

21  of all applicable versions of personnel and payroll policies, records reflecting Aggrieved Employees'

22  hours worked and wages paid, amongst numerous other documents. *Id.* And, notably, approval of a

23  representative action settlement does not require that discovery be exhaustive. *See, e.g.*, *In re Immune*

24  *Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where

25  informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The fact

26  that settlement results from arm's length negotiations following "relevant discovery" creates "a

27  presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, No. C-96-3008 DLJ,

28  1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997).

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

With respect to the claims asserted on behalf of the settlement group in this case, there are significant risks that support the reduced compromise amount (see estimated potential recovery in Section II.C., *supra*.).  Setareh Decl., ¶ 46.  These risks include, but are not limited to the following:

(i)      The risk that Plaintiff would not be able to prove liability for alleged failure to provide compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant meal periods and rest breaks would require an individualized inquiry that would prevent these issues from being resolved on behalf of all aggrieved employees.  For example, Plaintiff alleged that Defendant and FedEx Ground maintained a policy or practice of requiring Plaintiff and the aggrieved employees to miss their meal periods and rest breaks because of Defendant's strict delivery schedule. ECF 97. Plaintiff alleged that Plaintiff and the aggrieved employees often had interrupted meal periods due to the aggrieved employees being required to answer calls from Defendant's managers about work tasks during meal periods. Defendant and FedEx Ground denied these allegations and contended that any inquiry into why some employees missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on behalf of all aggrieved employees. *Id.*  Defendant and FedEx Ground further contended that the meal and rest break claims were preempted by federal law under the Federal Motor Carrier Safety Act and sought partial summary judgment on this ground.

(ii)     The risk that PAGA relief could be denied entirely by a Court due to Defendant's argument that numerous individualized inquiries might have to be made into whether particular violations were experienced by any given Aggrieved Employee, thus rendering the case potentially unmanageable. *Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746, 775 (2021) (trial court did not abuse its discretion in striking a PAGA claim due to unmanageability). *Id.*

(iii)    The risk that Plaintiff would be unable to recover PAGA penalties at the subsequent violation rate of $200 per pay period. California's appellate courts have held that "[u]ntil the employer has been notified that it is violating a Labor Code provision (whether or not the commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware [of the violation]" and therefore, until a Court or the Commissioner issues a finding of a violation, the initial $100 violation rate applies for each pay period in which the alleged violation occurred. *Amaral v. Cintas Corp. No. 2*,

20

1    163 Cal. App. 4th 1157, 1209 (2008). Thus, Defendant argued that even if the Plaintiff was able to

2    establish any violation of the Labor Code, the PAGA penalties assessed for these violations will be

3    computed at the $100 rate, as opposed to the $200 per pay period rate at maximum, and there is a

4    likelihood that a further reduction of the penalty to $5 per pay period as approved in *Carrington* would

5    apply given Defendant's compliance with the Labor Code as discussed above. *Id.*

6       (iv)    The risk that, even if Plaintiff received a favorable judgment at trial, Defendant would

7    be unable to pay. Defendant is in the process of selling off its assets and winding down its business, and

8    thus a larger settlement amount would increase the risk that Defendant would be unable to pay the entire

9    amount of any agreement. *Id.*

10      (v)    The risk that lengthy appellate litigation could ensue as to both liability and certification

11   issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as

12   opposed to unpredictable litigation. *Id.*

13      In these respects, Defendant and FedEx Ground strongly deny any liability on Plaintiff's claims.

14   *Id.,* ¶¶ 38-42. Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal

15   risks that were (and continue to be) very difficult to assess. *Id.*, ¶ 44.

16      In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and

17   reasonable recovery for the settlement PAGA Members. *Id.*, ¶ 45.  The Settlement amount is, of course,

18   a compromise figure. *Id.*  By necessity, it took into account risks related to liability, damages, probability

19   of success at trial, and all the defenses asserted by the Defendant as to all such matters. *Id.*

20      As estimated by Defendant at the time the Agreement was executed, there are an estimated 255

21   PAGA Members. Setareh Decl., ¶ 36.  The average estimated Settlement Share for each PAGA

22   Settlement Group Member is $17.18. *Id.*, ¶ 48.  This amount reflects a fair compromise well within the

23   range of reasonableness. *Id.* ¶ 47.  Given the strong case that Defendant could bring to bear to challenge

24   liability and given the real possibility that Defendant is not a going concern, this is not an inconsequential

25   sum for the aggrieved employees. *Id.* ¶¶ 44-49.

26   **D.    NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005**

27      Notice pursuant to section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the

28   appropriate federal and state officials is ***not*** required in this action because the settlement does ***not***

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

21

involve a class action (and no class claims are being released) even though it was removed from state court pursuant to the CAFA removal provisions. 28 U.S.C. §§ 1332(d), 1453(b).

### E. THE SETTLEMENT IS THE PRODUCT OF INFORMED, NON-COLLUSIVE NEGOTIATIONS

The Settlement was reached after informed, arm's-length negotiations between the parties with the help of Michael J. Loeb, Esq., a mediator with significant experience mediating employment wage and hour class and collective actions, shortly after a full-day mediation on September 22, 2023. Setareh Decl., ¶ 21. As discussed in greater detail above, the Parties conducted investigation and discovery allowing them to assess the strengths and weaknesses of the case. *Id.*, ¶¶ 23-30. The Parties were able to come to an agreement during the meditation and signed a Memorandum of Understanding on September 25, 2023. *Id.*, ¶ 22. Accordingly, the Settlement is the product of non-collusive negotiations.

### F. THE SETTLEMENT HAS NO "OBVIOUS DEFICIENCIES"

The Settlement is substantial and non-reversionary and provides for a payment of **$33,600.00** by Defendant, which is, by any account, a significant amount given the value of the claims made by Plaintiff. Setareh Decl., ¶ 34. The Settlement Payment for each PAGA Member will be based on the individual Workweek count for each PAGA Member divided by the total number of Workweeks for all PAGA Members, which is a fair way to calculate what each PAGA Settlement Group Member should receive. Agreement, at III.G. If all other amounts sought are awarded, it is estimated that, the average PAGA Member will receive approximately **$17.18**. Setareh Decl., ¶ 48.

### G. THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

"The PAGA is limited to the recovery of *civil* penalties." *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 579. Under PAGA, the default civil penalty for an employer's initial violation is one hundred dollars ($100) per employee per pay period, and two hundred dollars ($200) per pay period for any subsequent violations. Lab. Code § 2699(f)(2). While courts have the discretion to reduce civil penalties under certain circumstances, there is no requirement to do so.

There were approximately 255 aggrieved employees during the PAGA Period. Agreement, at I.M. As of September 22, 2023, the total number of PAGA Members was estimated to be 255, with approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023. Agreement,

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

22

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

III.H. This represents 2,428 pay periods which is reduced to 1214 pay periods after ascribing a 50% reduction based on Defendant's strong good faith defenses and the possibility that a factfinder might agree with Defendant's arguments. Setareh Decl., ¶ 46. Based on a penalty of $100 for each pay period in which violation occurs, Defendant's total realistic exposure was approximately **$121,400.00**. *Id.* Accordingly, an MSA of **$33,600.00**, or 27.7% of Defendant's potential realistic exposure, is more than fair and adequate.

The Settlement should be approved because it confers a substantial benefit on PAGA Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits, with a chance that the company may not be a going concern to be able to pay any judgment at all given that it is winding down its business. Setareh Decl., ¶ 44(iv).

### 1. **Liability Is Contested, and the Settlement Provides PAGA Members with Substantial Monetary Relief**

Plaintiffs' counsel conducted a thorough investigation into the facts of this representative action and diligently pursued an investigation of Aggrieved Employees' claims against Defendant. Setareh Decl., ¶¶ 23-31. Plaintiff's counsel conducted informal discovery, reviewed Defendant's written policies, including employee manuals and thoroughly reviewed a database of timekeeping and payroll data to create a reliable damage model detailing the number of possible violations at issue. *Id.*

For its part, Defendant and FedEx Ground contest liability in the action, are represented by zealous counsel, and are prepared to vigorously defend against these claims if the Action is not settled.

To be sure, if the litigation proceeds, Defendant could face significant liability. However, while Plaintiff is reasonably confident of a favorable outcome, there is substantial risk that the evidence and/or legal developments could seriously diminish the value of her and the PAGA Members' claims.

In light of these risks for all Parties, the Settlement provides the PAGA Members with a sizeable recovery while mitigating all Parties' risk if the matter were to proceed. *Id.* As such, the Settlement is fair, reasonable, adequate, and is in the best interest of the PAGA Members in light of all known facts and circumstances, including the risk of the significant delay. *Id.* The Settlement is also in the best interest of judicial efficiency in this case, as it obviously eliminates a lengthy and contested representative action and trial from this Court's calendar. *Id.,* ¶ 48.

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

**2.      The Group Release Is Appropriate Given Plaintiff's Claims**

The California Supreme Court has explained that a judgment in "a representative action brought by an aggrieved employee under the Labor Code Private Attorneys General Act of 2004 . . . is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding." *Arias*, 46 Cal.4th at 985. In accordance with this rule, the PAGA claims released by the Aggrieved Employees narrowly includes only the claims seeking civil penalties under PAGA that arose during the PAGA Period. Agreement, III.K.

**H.      PHOENIX SETTLEMENT ADMINISTRATORS SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR**

The Parties propose that the Court appoint Phoenix Settlement Administrators ("Phoenix") to serve as the Settlement Administrator.  Phoenix is experienced in administering wage-and-hour representative action settlements and is regularly appointed as a claims administrator by California courts to administer settlements.  Over the last two years, Plaintiff's Counsel has engaged with Phoenix 44 times. Setareh Decl., ¶ 66.  Phoenix's capped fees and costs for administration of the Settlement to 255 PAGA Members is $3,950.00. *Id.,* ¶ 65.  The Parties agree that these estimates are reasonable and adequate to provide the necessary notice of the Settlement to the estimated 255 PAGA Members, while maximizing the NSA distributed to the Group. *Id.* Plaintiff's Counsel will provide an updated settlement administration expense estimate, if any such adjustment is necessary at the Final Compliance Hearing following approval of the Settlement. *Id.*

**I.      RESIDUAL**

In the event that an Individual Settlement Payment check has not been cashed within 180 calendar days, then such funds, plus any accrued interest, will be tendered to the State Controller's Office Unclaimed Property Fund in the name of Settlement PAGA Members who did not cash their settlement checks. Agreement, III.J.8. The entire NSA will be paid out to participating Settlement PAGA Members, whether or not they all cash their individual settlement payment checks. *Id.*

**J.      COMPARABLE OUTCOMES**

| **Case** | **Total Settlement Amount** | **PAGA Allocation** | **Pay Periods** | **Aggrieved Employees** |
|---|---|---|---|---|

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

| | | | |
|---|---|---|---|
| *Ambrose v. US Med-Equip, LLC*, No. 1:23-cv-00114-SAB, 2024 WL 307843 (E.D. Cal. Jan. 26, 2024) | $57,500.00 | $21,880.50 | 525 | 30 |
| *Perez v. All Ag, Inc.*, 1:18-cv-00927-DAD-EPG, 2021 WL 3129602 (E.D. Cal. Jul. 23, 2021) | $104,000.00 | $76,000.00 | Unknown | 206 |
| *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04705-LHK, 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) | $110,000.00 | $27,500.00 | Unknown | 226 |
| *Delgado v. MarketSource, Inc.*, No. 17-cv-07370-LHK, 2019 WL 4059850 (N.D. Cal. Aug. 28, 2019) | $83,075.00 | $45,252.98 | Unknown | 963 |
| *Cresci v. Cox Automotive Corporate Services, Inc.*, No. 2:20-cv-06832-VAP-SKx, 2021 WL 2954086 (C.D. Cal. May 5, 2021) | $104,000.00 | $67,678.40 | Unknown | 447 |
| *Decker v. AllStates Consulting Services, LLC*, No. 2:18-cv-03216-KJM-DB, 2020 WL 7769842 (E.D. Cal. Dec. 30, 2020) | $20,000.00 | $11,333.33 | | 15 |

Additionally, the settlements in the above references cases all achieved substantially comparable outcomes to the Parties' Settlement. For instance, here the average recovery per PAGA Member is approximately $17.18. This is within the range of average recovery in each comparator case. ($11.75 per aggrieved employee in the *Delgado* case); ($30.42 per aggrieved employee in the *Ramirez* case); ($37.85 per aggrieved employee in the *Cresci* case); ($92.23 per aggrieved employee in the *Perez* case); ($182.33 per aggrieved employee in the *Ambrose* case); ($188.88 per aggrieved employee in the *Decker* case).[8] Furthermore, the Settlement provides for $3,950 in administrative costs, which is in line with the

---

[8] Plaintiff reached this average by multiplying the "PAGA Allocation" column in the above chart by 25%, which reflects the portion of the PAGA settlement left over after payment to the LWDA. Then, Plaintiff divided this number by the number of employees in the "Aggrieved Employees" column to reach the average payment per PAGA Member.

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

comparator cases. *See Delgado*, 2019 WL 4059850 at *5; *Perez* 2021 WL 3129602 at *2 (approving $4,000 in settlement administration costs); *see also Ambrose* 2024 WL 307843 at *17 (approving $2,850 in settlement administration costs). Here, Plaintiff also achieved a settlement of 27.7% of the calculated maximum exposure. The Settlement amount is in line with the comparator cases with regard to the amount of settlement compared to total possible exposure. *See Ambrose* 2024 WL 307843 at *7 (achieving 43% of maximum exposure); *Cresci* 2021 WL 2954086 at *3 (approving settlement of $104,000 when maximum exposure was $628,400, which is 16.5% of maximum exposure); *Perez* 2021 WL 3129602 at *5 (achieving 49% of maximum exposure)

However, even if Plaintiff did not ascribe a 50% reduction to the number of pay periods at issue an exposure of $242,800.00 still amounts to a recovery of 13% of the exposure in this case. Courts in this district have approved PAGA settlements which amount to a much lower percentage of the total value of a PAGA claim. *See Chamberlain v. Baker Hughes, a GE Co., LLC*, 2020 WL 4350207 at *3–*4 (E.D. Cal. Jul. 29, 2020)(approving PAGA settlement amounting to 12 percent of the maximum recovery); *McLeod v. Bank of Am., N.A.*, 2018 WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018) (approving PAGA settlement totaling 1.1% of total value). Given the risks of continued litigation, and the procedural posture of this case, the recovery Plaintiff received is substantial enough to provide a meaningful deterrent to future unlawful conduct. Therefore, the Settlement should be approved.

### K.    SETTLEMENT LANGUAGE REGARDING PAYMENT OF EMPLOYER-SIDE PAYROLL TAXES IS MOOT

This Court pointed out that the Settlement Agreement provides that "[n]either Safe Box nor FedEx Ground shall be responsible for any amounts in excess of the Total Settlement Amount, except for payment by Safe Box of employer-side payroll taxes on the portion of the settlement payments attributed to wage[.]" ECF 149, at 3:16-19.  There is, however, no settlement of wage claims. *Id.*  The Court is correct that there is no settlement of wage claims in this action. *See,* § III(E).  Because this Settlement involves only PAGA claims for civil penalties and because there is no settlement of wage claims, this language in the Settlement Agreement is moot.

### L.    SETTLEMENT LANGUAGE THAT THERE IS NO STATUTORY RIGHT TO OBJECT OR OPT OUT OF THE SETTLEMENT AND SETTLEMENT

26

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

**ADMINISTRATOR AUTHORITY TO RESOLVE CLAIM DISPUTES**

In denying Plaintiff's prior Motion for Approval, this Court specifically instructed Plaintiff to provide authority permitting court approval containing provisions prohibiting PAGA members from opting-out of the settlement and for the provision granting the Settlement Administrator authority to resolve claim disputes. ECF 149, 3:4-10, fn. 6. Plaintiff will address each in turn.

The settlement term in the Parties agreement referencing a lack of opt-out procedure for PAGA reflects Ninth Circuit authority reflecting the PAGA notice requirements. In *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015), the Ninth Circuit held that, unlike Rule 23(c)(2), PAGA has "no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action." *Id.* at 436 (citation omitted); *see also O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, at 1133 ("[B]ecause the employee's PAGA action acts as a 'substitute' for a governmental action, the judgment binds all those who would be bound by an action brought by the government, including nonparty employees ...[t]hus, in a lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even class members who opt out of the class would be bound by an adverse PAGA judgment or settlement.") (emphasis in original).

The settlement terms referencing PAGA Members lack of a right to appeal the approval of the settlement and stating the agreement shall not be subject to collateral attack by PAGA Members also reflect settled Ninth Circuit authority. *See Saucillo v. Peck*, 25 F.4th 1118, 1126-27 (9th Cir. 2022) (holding PAGA members do not have any right to appeal a PAGA settlement.); *see also Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 851, 856 (9th Cir. 2020) (stating that "PAGA causes of action [are] nothing like Rule 23 class actions," and holding that in a PAGA suit, "an aggrieved employee[ ] has no individual claim of her own and is not seeking individual relief"). The agreement cannot be subject to collateral attack by PAGA Members for the same reasons. PAGA members are not parties to the lawsuit, which exists as an "enforcement action between the LWDA and the employer, with the PAGA plaintiff acting on behalf of the government" *Kim v. Reins International California, Inc.*, 9 Cal. 5th 73, 86 (2020). Therefore, approving these settlement terms reflects Ninth Circuit authority.

Additionally, courts have routinely approved settlements granting a settlement administrator final authority to resolve all disputes concerning the calculation of class members settlement shares. *See*

27

1  *Morales v. Stevco, Inc.*, 2011 WL 5511767 * 15 (E.D. Cal. 2011); *see also Boyd v. May Trucking*

2  *Company*, 2019 WL 12763030 * 4 (C.D. Cal. 2019); *Odom v. ECA Marketing, Inc.*, 2021 WL 7185059

3  * 4 (C.D. Cal. 2021); *Rosales v. El Rancho Farms*, 2014 WL 6685611 * 16-17 (appointing settlement

4  administrator with "responsibilities pursuant to the terms set forth in the Settlement Agreement"). The

5  Settlement Administrator is a neutral third-party with access to each PAGA Members timekeeping and

6  payroll data, which it will use to calculate each PAGA Members settlement share. The Settlement

7  Administrator is therefore in the best position to resolve any disputes PAGA Members have regarding

8  their settlement share, as the Settlement Administrator is the entity which calculates that share.

9  **VI.    CONCLUSION**

10      For the reasons set forth above, the Parties respectfully request that the Court grant their joint

11  motion in its entirety and enter an order approving: (1) the terms of the Settlement; (2) the appointment

12  of Phoenix Settlement Administrators as the Settlement Administrator; and (3) final judgment.

13

14  DATED:  June 21, 2024                 SETAREH LAW GROUP

15                                        */s/ Shaun Setareh*
                                          SHAUN SETAREH
16                                        WILLIAM M. PAO
                                          Attorneys for Plaintiff
17                                        JANICE GILMORE

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA
SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771