Shaun Setareh (SBN 200514)
 shaun@setarehlaw.com
Brian Louis (SBN 353058)
 brian@setarehlaw.com
SETAREH LAW GROUP
420 N. Camden Drive, Suite 100,
Beverly Hills, California 90210
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
JANICE GILMORE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JANICE GILMORE, on behalf of herself and all others similarly situated,<br><br>     *Plaintiff*,<br><br>     v.<br><br>SAFE BOX LOGISTICS, INC., a California corporation; FEDERAL EXPRESS CORPORATION, a Delaware corporation; FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware corporation; FEDEX CORPORATION, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>     *Defendants*. | Case No. 3:21-cv-06917-AMO<br><br>Assigned For All Purposes to the Honorable Araceli Martinez-Olguin, Courtroom 10<br><br>**PLAINTIFF'S SECOND AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT**<br><br>Date:   March 13, 2025<br>Time:  2:00 p.m.<br>Place:  Courtroom 10<br>       450 Golden Gate Avenue<br>       San Francisco, CA 94102<br><br>Complaint Filed:   August 5, 2021<br>Action Removed:  September 7, 2021<br>FAC Filed:      January 14, 2022<br>SAC Filed:      February 17, 2023 |

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1

2   TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that at 2:00 p.m. on March 13, 2025, or as soon thereafter as the

4   matter may be heard in Courtroom 10 of the above-entitled Court located at 450 Golden Gate Avenue,

5   San Francisco, California 94102, Plaintiff JANICE GILMORE ("Plaintiff") will and does hereby move

6   this Court for an Order approving:

7        • The terms of the PAGA Settlement ("Settlement") entered into between Plaintiff, acting

8            in her capacity as a private attorney general for the State of California, and Defendant

9            Safe Box Logistics, Inc.;

10       • The appointment of Phoenix Settlement Administrators as the Settlement Administrator;

11       • Final judgment.

12       This motion is made on the grounds that the Settlement is fair, adequate, reasonable, and within

13  the range of possible approval.  This motion will be based upon this Notice of Motion and Motion, the

14  accompanying Memorandum of Points and Authorities, and the Declaration of Shaun Setareh, as well

15  as exhibits attached thereto, the arguments of counsel, the documents filed in this action and any other

16  matters as may be properly presented on or before the hearing on this motion.

17

18  DATED:  October 30, 2024              SETAREH LAW GROUP

19

20                                       _/s/ Shaun Setareh_____
                                         SHAUN SETAREH
21                                       BRIAN LOUIS
                                         Attorneys for Plaintiff
22                                       JANICE GILMORE

23

24

25

26

27

28

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

# TABLE OF CONTENTS

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** | **1** |
| **II.** | **RELEVANT BACKGROUND** | **3** |
| | A. Factual and Procedural Background | 3 |
| | B. Claims and Defenses | 6 |
| | C. Plaintiff's Assessment of Damages | 7 |
| **III.** | **THE SETTLEMENT** | **9** |
| | A. THE SETTLEMENT GROUP | 9 |
| | B. TOTAL SETTLEMENT AMOUNT AND DISTRIBUTIONS | 10 |
| | C. SCOPE OF THE PAGA SETTLEMENT GROUP MEMBER RELEASES | 11 |
| | D. PAGA PAYMENT AND NOTICE PROCEDURES | 12 |
| | E. TAX TREATMENT | 13 |
| **IV.** | **THE SETTLEMENT MEETS THE STANDARDS FOR PAGA APPROVAL** | **13** |
| | A. STANDARD OF REVIEW | 13 |
| | B. THE SETTLEMENT SHOULD BE APPROVED | 14 |
| | 1. The Settlement Falls Within the Range of Possible Approval | 14 |
| | 2. Although the Parties Dispute Whether Any Violations Occurred, the Settlement Achieves Compliance With, and Deters Violations of, State Labor Laws | 15 |
| | 3. The Settlement Serves to Enlist Private Citizens in Enforcement of PAGA | 15 |
| | 4. The Settlement Is "Just" and "In the Public Interest" | 16 |
| **V.** | **NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION SETTLEMENTS** | **17** |
| | A. ANY DIFFERENCES BETWEEN THE SETTLEMENT CLASS AND THE CLASS PROPOSED IN THE OPERATIVE COMPLAINT OR BETWEEN THE CLAIMS RELEASED IN THE SETTLEMENT AND THOSE PLED IN THE OPERATIVE COMPLAINT | 17 |
| | B. ESTIMATE OF THE NUMBER AND /OR PERCENTAGE OF PAGA MEMBERS EXPECTED TO SUBMIT A CLAIM | 18 |
| | C. SETTLEMENT ADMINISTRATION | 18 |

1.    A Reasonable Result Was Achieved on Behalf of the PAGA Settlement Group Members ........................................ 19

D.    NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005 ................................................................................................ 21

E.    The Settlement is the Product of Informed, Non-Collusive Negotiations ............. 22

F.    The Settlement Has No "Obvious Deficiencies" ...................................................... 22

G.    The Settlement is Within the Range of Possible Approval ................................... 22

1.    Liability Is Contested, and the Settlement Provides PAGA Members with Substantial Monetary Relief................................. 23

2.    The Group Release Is Appropriate Given Plaintiff's Claims ......... 24

H.    PHOENIX SETTLEMENT ADMINISTRATORS Should Be Appointed Settlement Administrator ........................................................................................ 24

I.    Residual ...................................................................................................................... 24

J.    COMPARABLE OUTCOMES.................................................................................. 24

K.    SETTLEMENT LANGUAGE REGARDING PAYMENT OF EMPLOYER-SIDE PAYROLL TAXES IS MOOT ............................................. 26

L.    SETTLEMENT LANGUAGE THAT THERE IS NO STATUTORY RIGHT TO OBJECT OR OPT OUT OF THE SETTLEMENT AND SETTLEMENT ADMINISTRATOR AUTHORITY TO RESOLVE CLAIM DISPUTES ........................................................................................... 27

VI.    CONCLUSION ............................................................................................................. 28

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

**TABLE OF AUTHORITIES**

Cases

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008)................................... 8, 16, 21

*Ambrose v. US Med-Equip, LLC*, 2024 WL 307843, at *3 (E.D. Cal. Jan. 26, 2024) ............ 14, 25, 26

*Arias v. Superior Court*, 46 Cal. 4th 969, 986 ................................................................... 14, 24

*Atempa v. Pedrazzani*, 27 Cal. App. 5th 809 (2018) ...................................................................... 7

*Beltran v. Olam Spices & Vegetables, Inc.*, No. 118CV01676JLTSAB, 2023 WL 1467118, at *20 (E.D. Cal. Feb. 2, 2023) ........................................................................................................ 14

*Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1144 (9th Cir. 2021) ....................................................... 7

*Boyd v. May Trucking Company*, 2019 WL 12763030 * 4 (C.D. Cal. 2019)..................................... 28

*Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 851, 856 (9th Cir. 2020) ................................. 27

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) ........................................ 7, 8, 9, 21

*Chamberlain v. Baker Hughes, a GE Co., LLC*, 2020 WL 4350207 at *3–*4 (E.D. Cal. Jul. 29, 2020) ...................................................................................................................................... 26

*Consumer Advocacy Group v. Kintetsu, supra*, 141 Cal.App.4th at 63 ............................................ 17

*Cresci v. Cox Automotive Corporate Services, Inc.*, No. 2:20-cv-06832-VAP-SKx, 2021 WL 2954086 (C.D. Cal. May 5, 2021) ....................................................................................................... 25

*Decker v. AllStates Consulting Services, LLC*, No. 2:18-cv-03216-KJM-DB, 2020 WL 7769842 (E.D. Cal. Dec. 30, 2020)................................................................................................................ 25

*Delgado v. MarketSource, Inc.*, No. 17-cv-07370-LHK, 2019 WL 4059850 (N.D. Cal. Aug. 28, 2019) .............................................................................................................................. 25, 26

*In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)............. 19

*Kim v. Reins International California, Inc.*, 9 Cal. 5th 73, 86 (2020) ............................................. 27

*Linney v. Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997) ........................................................................................................................... 19

McLeod v. Bank of Am., N.A., 2018 WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018)..................... 26

*Morales v. Stevco, Inc.*, 2011 WL 5511767 * 15 (E.D. Cal. 2011)................................................... 28

*O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1133 (N.D. Cal. 2016), ............................ 14, 27

*Odom v. ECA Marketing, Inc.*, 2021 WL 7185059 * 4 (C.D. Cal. 2021); ....................................... 28

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ............................................................................................................................ 14

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999)............................................................... 19

*Perez v. All Ag, Inc.*, 2021 WL 3129602, at *3 ................................................................ 14, 25

*Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04705-LHK, 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) ............................................................................................................................. 25

*Rosales v. El Rancho Farms*, 2014 WL 6685611 * 16-17 ......................................................... 28

*Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) .................................. 13, 27

*Saucillo v. Peck*, 25 F.4th 1118, 1126-27 (9th Cir. 2022) ............................................................ 27

*Serrano v. Priest*, 20 Cal.3d 25, 49 (1977) ................................................................................ 19

*Sobel v. Hertz Corporation* (D. Nev. 2014) 53 F.Supp.3d 1319, 1326 ........................................ 16

*Thomas v. Home Depot USA Inc.*, 527 F.Supp.2d 1003, at 1007 (N.D. Cal. 2007) ........................ 3

*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 579 ......................................... 14, 22

*Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015) .. 14, 17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ............................................ 19

*Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746, 775 (2021) ....................... 20

## Statutes

28 U.S.C. §§ 1332(d), 1453(b) ................................................................................................ 22

Bus. & Prof. Code §§ 17200 *et seq.* ........................................................................................ 4

CAFA removal provisions. 28 U.S.C. §§ 1332(d), 1453(b) ......................................................... 22

Cal. Code Civ. Proc. § 340(a) .................................................................................................. 3

Cal. Lab. Code §§ 2699(f)(2) ................................................................................................... 7

Lab. Code § § 201, 202, and 203 ............................................................................................. 4

Lab. Code § 227.3 .................................................................................................................. 4

Lab. Code § 2699(f)(2) ...................................................................................................... 16, 22

Lab. Code § 2802 ................................................................................................................... 4

Lab. Code §§ 204, 223, 226. 7, 512, and 1198 ........................................................................ 4

Lab. Code §§ 246 et seq. ........................................................................................................ 4

Labor Code §§ 2698 .............................................................................................................. 4

section 1715(b) of the Class Action Fairness Act of 2005 ........................................................ 21

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        This motion seeks approval of the PAGA settlement of this representative action between

4    Plaintiff JANICE GILMORE ("Plaintiff") in this representative action against Defendant SAFE BOX

5    LOGISTICS, INC. ("Safe Box" or "Defendant") (collectively with Plaintiff, the "Parties").

6        As the result of arm's-length negotiations under the supervision of Michael Loeb, Esq., an

7    experienced and well-renowned mediator with expertise in mediating complex wage and hour class

8    actions and PAGA representative actions, the Parties have reached a fair and reasonable PAGA

9    settlement of Plaintiff's claims. Pursuant to the Settlement Agreement ("Settlement")[1], Plaintiff now

10   requests that the Court enter an order approving: (1) the terms of the Settlement; (2) the appointment of

11   Phoenix Settlement Administrators as the Settlement Administrator; and (3) final judgment.

12       This Court previously identified several deficiencies in Plaintiff's initial Motion for Approval

13   of the PAGA Settlement, including:

14       • Failure to include comparator cases, ECF 149, at 2:6-10.  Plaintiff shall address this in

15          § V(K).

16       • Missing exhibits to the Settlement Agreement, (ECF 149, at 2:11-15) and the "absence

17          of the proposed Notice and Notice Packet" in the settlement agreement (ECF 149, at

18          2:16-3:2). Plaintiff shall address the foregoing concerns by filing a Supplemental

19          Declaration of Shaun Setareh concurrently with the filing of this First Amended Motion

20          for Approval of PAGA Settlement ("Motion") which shall include a copy of the fully

21          executed Settlement Agreement along with Exhibits A and B to the Settlement

22          Agreement (the [Proposed] Order Granting Approval of Settlement and the PAGA

23          Notice, respectively).

24       • Missing proof of service indicating appropriate government agencies have been served

25

26   ───────────────

27       [1] The executed settlement agreement between the Parties is attached as **Exhibit 1** to the
     Supplemental Declaration of Shaun Setareh in Support of Plaintiff's First Amended Motion for
28   Approval of PAGA Settlement ("Supp. Setareh Decl.") filed concurrently herewith.

with the submissions before the Court, ECF 149, at 3:10-15. Plaintiff shall address this in § V(E). Concurrent with the filing of this Motion, Plaintiff shall file the Supplemental Declaration of Shaun Setareh confirming that the LWDA has been provided a copy of the papers submitted to this Court for approval of the PAGA settlement on December 27, 2023. Furthermore, the Supp. Setareh Decl., will include a further Exhibit confirming that the LWDA has been provided another copy of the amended papers submitted to the Court for approval of the PAGA settlement on June 21, 2024.

- Ambiguity in Settlement Agreement regarding the payment of employer-side payroll taxes, ECF 149, at 3:16-23. Plaintiff shall address this in § V(K).

- The Court also took issue with the language of the Settlement Agreement. ECF 149, at 3:4-10. Plaintiff shall address this in § V(M).

- The Court finally instructed Plaintiff to provide the information required by the Procedural Guidance for Class Action Settlements or give an adequate explanation as to why any particular provision of the guidance does not apply. ECF 149 at 4:4-7. Plaintiff shall address this in § V(A-L).

The Agreement provides for a Maximum Settlement Amount ("MSA") of **$33,600.00**. Agreement, III.B. The MSA shall include all payments contemplated by the Agreement, including: (i) all Payments to the PAGA Settlement Group Members ("PAGA Members"); (ii) the LWDA Payment; (iii) the Plaintiff's Counsel Fees and Expenses Payment, to compensate Plaintiff's Counsel for all work performed thus far and all work remaining to be performed in connection with the Settlement, including without limitation documenting and administering the Agreement and securing Court approval; and (iv) the Settlement Administrator's fees and expenses. *Id.* No PAGA Member will have to submit a claim in order to recover his or her Settlement Share, and checks will be mailed directly to them. *Id.*, at III.J.3. Any checks issued to PAGA Members shall remain valid and negotiable for 180 calendar days after the date they are issued. *Id.*, at III.J.8. The Settlement Administrator will mail a reminder notice to those PAGA Members who have not cashed their checks after 120 calendar days and will also send a reminder via any available email address or social media for these PAGA Members. *Id.* In the event that a Settlement Share check has not been cashed within 180 calendar days, then such funds will be sent to

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1  the California State Controller's Office Unclaimed Property Fund in the name of PAGA Members who

2  did not cash their settlement checks. *Id.* As estimated by Defendant at the time the Agreement was

3  executed, there are 255 PAGA Members. Setareh Decl., ¶ 33. Defendant represented there are

4  approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023.[2] *Id.*, ¶ 36.

5  The Net Settlement Amount ("NSA") estimated to be paid to PAGA Members and the LWDA–

6  after all Court-approved deductions from the MSA, *i.e.*, Plaintiff's Counsel fees of $8,400 (25% of the

7  MSA)[3] and litigation costs of up to $3,720.02, and settlement administration costs of $3,950, is

8  **$17,529.98**. *Id.*, ¶ 36.[4] After payment to the LWDA, the average estimated Settlement Share for each

9  PAGA Settlement Group Member is **$17.18**. *Id.*, ¶ 48.

10  As discussed below, the Settlement reached here is a good result given the claims at issue in this

11  case, the risk that the putative aggrieved group is unmanageable, the merit of the defenses and

12  affirmative defenses, and the significant monetary amount obtained for the aggrieved employees, which

13  compares favorably to similar settlements approved by other courts.

14  ## II.  RELEVANT BACKGROUND

15  ### A.  FACTUAL AND PROCEDURAL BACKGROUND

16  Defendant provides package delivery services of various products to customers across

17  California. Setareh Decl., ¶ 4. Defendant hired Plaintiff in approximately October 2019 as a driver. *Id.*

18  On August 3, 2021, Plaintiff submitted her PAGA Notice to the LWDA as against Defendant

---

[2] The Court identifies that the Settlement defines the Covered Period as August 3, 2020 to December 1, 2023, which does not match the relevant time period as pled in the operative complaint. Cal. Code Civ. Proc. § 340(a) imposes a one-year statute of limitations period to PAGA actions. *See Thomas v. Home Depot USA Inc.*, 527 F.Supp.2d 1003, at 1007 (N.D. Cal. 2007). Plaintiff filed her PAGA notice on August 3, 2021, making the PAGA limitations period begin on August 3, 2020. Supp. Setareh Decl., ¶ 3, Exh. 2

[3] The Settlement allows for Plaintiff's Counsel to seek up to $14,533.33 (i.e., 1/3 of the MSA) in attorneys' fees. Settlement, III.F. However, in her Motion for Attorney's Fees, Plaintiff's counsel intends to seek $8,400.00 (i.e., 25% of the MSA) in attorneys' fees in order to increase the NSA and maximize recovery for PAGA Members. Setareh Decl., ¶ 59.

[4] Plaintiff does not seek a representative enhancement award payment.

1  SafeBox, but did not submit a notice as to FedEx Ground.[5] Setareh Decl., ¶ 5. On August 5, 2021,

2  Plaintiff filed a Class Action Complaint in the Superior Court of the State of California for the County

3  of Santa Clara alleging nine causes of action against Safe Box, FedEx Ground Package System, Inc.

4  ("FedEx Ground"), FedEx Corporation, and Federal Express Corporation for: (1) Failure to Provide

5  Meal Periods (Lab. Code §§ 204, 223, 226. 7, 512, and 1198); (2) Failure to Provide Rest Periods (Lab.

6  Code §§ 204, 223, 226. 7, and 1198); (3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194,

7  1194.2, 1197, 1997. 1 and 1198); (4) Failure to Pay Vacation Wages (Lab. Code § 227.3); (5) Failure to

8  Pay Sick Time (Lab. Code §§ 246 et seq.); (6) Failure to Indemnify (Lab. Code § 2802); (7) Failure to

9  Provide Accurate Written Wage Statements (Lab. Code § § 226(a)); (8) Failure to Timely Pay All Final

10 Wages (Lab. Code § § 201, 202, and 203); and (9) Unfair Competition (Bus. & Prof. Code §§ 17200 *et*

11 *seq*.). *Id*. The action was removed to federal court September 7, 2021. ECF 1. Safe Box & Federal

12 Express Corporation filed their answer denying liability generally and asserting certain affirmative

13 defenses on September 14, 2021. ECF 13 & 15. On September 14, 2021, FedEx Ground filed a Motion

14 to Dismiss Plaintiff's Complaint, and Defendant FedEx Corporation filed a Motion to Dismiss for lack

15 of personal jurisdiction. ECF 14, 18.

16    On November 11, 2021, the Parties stipulated to allow Plaintiff to file a First Amended

17 Complaint ("FAC") adding a single cause of action for civil penalties pursuant to Labor Code §§ 2698

18 and dismissing Federal Express Corporation and FedEx Corporation as defendants. ECF 35.

19    On January 13, 2022, the Court dismissed Federal Express Corporation and FedEx Corporation

20 as defendants. ECF 45. On January 14, 2022, Plaintiff filed his First Amended Complaint ("FAC")

21 adding a adding a ninth cause of action for civil penalties pursuant to Labor Code §§ 2698 of the Labor

22 Code Private Attorneys General Act of 2004. ECF 48. On February 14, 2022, Safe Box filed its answer

23 to Plaintiff's FAC denying liability generally and asserting certain affirmative defenses (ECF 52), and

24 FedEx Ground filed a Motion to Partially Dismiss the FAC (ECF 53) and a separate Motion to Stay

---

[5] As FedEx Ground was not a subject of the PAGA Notice, and is not responsible for payment of the settlement amount here, it is not a signatory to the Agreement. However, during mediation SafeBox bargained for a release of FedEx Ground and SafeBox is paying consideration for it as part of the Settlement.

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1    Proceedings (ECF 54). On June 24, 2022, the Court denied FedEx Ground's Motion to Stay

2    Proceedings, and partially granted its Motion to Dismiss the FAC with respect to Plaintiff's UCL claim

3    for injunctive relief. ECF 74. On October 20, 2022, FedEx Ground filed its Answer to Plaintiff's FAC.

4    ECF 85.

5        On January 17, 2023, Plaintiff filed a Discovery Letter Brief requesting Defendant and FedEx

6    Ground provide contact information, timekeeping, and payroll data for the putative class and all

7    aggrieved employees. ECF 89. On January 23, 2023, the Court denied Plaintiff's request to compel the

8    production of contact information, time keeping, and payroll information for all aggrieved employees

9    and members of the putative class. ECF 92. On February 6, 2023, Plaintiff filed a Motion for Relief from

10   the Magistrate Judge's Order denying Plaintiff's Motion to Compel. ECF 93. On March 22, 2023, the

11   Court denied Plaintiff's Motion for Relief.

12       On February 15, 2023, the Parties stipulated to allow Plaintiff leave to file her Second Amended

13   Complaint ("SAC") with additional "client employer" allegations under California Labor Code § 2810.3

14   against FedEx Ground. ECF 95. On February 17, 2023, Plaintiff filed his SAC. ECF 97. On March 3,

15   2023, Safe Box filed its answer to Plaintiff's SAC, and FedEx Ground filed a Motion to Dismiss the

16   Tenth Cause of Action in Plaintiff's SAC. ECF 99 & 100. On April 12, 2023, Plaintiff filed an

17   Administrative Motion to Vacate and Amend the Scheduling Order. ECF 104. The Court denied

18   Plaintiff's motion on April 20, 2023. ECF 106. On June 7, 2023, Plaintiff filed a Renewed

19   Administrative Motion to Vacate and Amend the Scheduling Order. ECF 119. On June 8, 2023, FedEx

20   Ground filed a Motion for Partial Summary Judgment. ECF 120.

21       On May 5, 2023, Plaintiff filed a second Discovery Letter Brief again requesting the contact

22   information, timekeeping records, and payroll data of the putative class and aggrieved employees. ECF

23   107. On May 15, 2023, the Court denied Plaintiff's second request to compel timekeeping records,

24   payroll data, and contact information. ECF 113.

25       On August 28, 2023, the Court denied without prejudice FedEx Ground's Motion for Partial

26   Summary Judgment and Motion to Dismiss the Tenth Cause of Action in Plaintiff's SAC. ECF 136. The

27   Court additionally referred the matter to mediation. ECF 135. On September 13, 2023, the Court appointed

28   Michael Loeb, Esq. as the mediator. ECF 137. On September 15, 2023, the Court denied Plaintiff's

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1    Renewed Motion to Vacate and Amend the Scheduling Order. ECF 138.

2        On September 22, 2023, the Parties participated in a half-day mediation session with Michael J.

3    Loeb, Esq. of JAMS via Zoom. Setareh Decl., ¶ 21. On September 25, 2023, following several days of

4    extended negotiations following mediation, the Parties signed a memorandum of understanding reflecting

5    a settlement of the matter. *Id.,* ¶ 22. On September 29, 2023, the Parties filed a Notice of Settlement. ECF

6    139. Following further negotiations, the Parties finalized the long-form Agreement, which the Parties

7    executed on November 13, 2023. Setareh Decl., ¶ 22.

8        **B.    CLAIMS AND DEFENSES**

9        Plaintiff alleges that while working as an hourly, non-exempt Driver, Plaintiff and aggrieved

10   employees were often unable to take 30-minute uninterrupted meal breaks and 10-minute uninterrupted

11   rest breaks in part due to (1) Defendant's policy of not scheduling each meal period as part of each work

12   shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much

13   work on each employee such that it made it unlikely that an employee would be able to take their breaks

14   if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that

15   encouraged employees to take their meal and rest periods, and because they were required to answer

16   calls from their managers on during their meal periods. *See, generally*, ECF 97. Plaintiff further alleges

17   that Plaintiff and the aggrieved employees were regularly not provided with uninterrupted rest periods

18   of at least ten minutes for each four hours worked because they were required to complete a strict

19   delivery schedule. *Id.* Plaintiff alleges that Defendant violated the rights of Plaintiff and aggrieved

20   employees by failing to reimburse them for all necessary business expenses incurred, particularly from

21   the required use of personal cell phones to navigate during deliveries and communicate with Defendant

22   regarding their work obligations, including requesting meal periods and rest breaks. *Id.* Plaintiff further

23   alleges Defendant did not pay her or aggrieved employees for all accrued vacation wages during their

24   employment *Id.*  Plaintiff also complains that she was not provided with compliant wage statements and

25   was not paid all of her final wages on time (direct and derivative). *Id.* Finally, Plaintiff alleges that

26   Plaintiff and aggrieved employees were not paid all wages earned as Defendant and FedEx Ground

27   directed, permitted or otherwise encouraged Plaintiff and aggrieved employees to perform off-the-clock

28   work. *Id.*

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

Defendant and FedEx Ground generally denied all of Plaintiff's allegations. ECF 99. Defendant contends that it properly compensated and reimbursed the putative PAGA Members and did not violate the law including the California Labor Code, Wage Orders, and Code of Regulations. *Id.*, 35. FedEx Ground contends that it did not employ Plaintiff or any of the putative PAGA Members and that it did not violate the law in any way with respect to Plaintiff or any of the putative PAGA Members.

## C.     PLAINTIFF'S ASSESSMENT OF DAMAGES

Under Cal. Lab. Code §§ 2699(f)(2) and 2699.5, employers that violate certain provisions of the Labor Code are subject to penalties according to the following formula:

1. $100.00 for the initial violation per employee per pay period; and

2. $200.00 for each subsequent violation per employee per pay period.

These penalties must be allocated seventy-five percent (75%) to the LWDA and twenty-five percent (25%) to the affected employees. Cal. Lab. Code § 2699(i). Plaintiff alleged that, because of the violations described above, Defendant and FedEx Ground were liable for these penalties for each applicable pay period during the PAGA period. In ascertaining exposure for the allegations described above, Plaintiff considered several important cases. First, courts considering the issue have refused to "stack" PAGA penalties, severely limiting the recoverable PAGA penalties. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (approving PAGA penalty reduction to $5 per pay period); *See also Atempa v. Pedrazzani*, 27 Cal. App. 5th 809 (2018); *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1144 (9th Cir. 2021) ("Under California law, '[a] good faith dispute' that an employer is required to comply with a particular law 'will preclude imposition' of heightened penalties.").

Defendant and FedEx Ground argued that even if Plaintiff was able to recover some PAGA penalties on behalf of other aggrieved employees, courts frequently use their discretion under Cal. Lab. Code § 2699(e)(2), to significantly reduce PAGA penalties where such penalties would be unjust, arbitrary, and improper. *See*, e.g., *Carrington*, 30 Cal. App. 5th at 529. Setareh Decl., ¶ 42.

Defendant and FedEx Ground further contended that any inquiry into why some employees missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on behalf of all aggrieved employees. Thus, Plaintiff would not be able to prove liability for alleged failure to provide compliant meal periods and rest breaks; or that to establish

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1    liability for the failure to provide compliant meal periods and rest breaks would require an individualized

2    inquiry that would prevent these issues from being resolved on behalf of all aggrieved employees. *Id.*, ¶

3    44. Furthermore, Defendant and FedEx Ground argued that Plaintiff could not recover for any purported

4    meal and rest break violation because such claims are preempted by federal law pursuant to the Federal

5    Motor Carrier Safety Act.

6         Plaintiff further contemplated the risk that she would be unable to recover PAGA penalties at

7    the subsequent violation rate of $200 per pay period. California's appellate courts have held that "[u]ntil

8    the employer has been notified that it is violating a Labor Code provision (whether or not the

9    commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware [of

10   the violation]" and therefore, until a Court or the Commissioner issues a finding of a violation, the initial

11   $100 violation rate applies for each pay period in which the alleged violation occurred. *Amaral v. Cintas*

12   *Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008). Thus, Defendant argued that even if the Plaintiff was

13   able to establish any violation of the Labor Code, the PAGA penalties assessed for these violations will

14   be computed at the $100 rate, as opposed to the $200 per pay period rate at maximum, and there is a

15   likelihood that a further reduction of the penalty to $5 per pay period as approved in *Carrington* would

16   apply given Defendant's compliance with the Labor Code as discussed above. Setareh Decl., ¶ 44.

17        There was also the risk that, even if Plaintiff received a favorable judgment at trial, Defendant

18   would be unable to pay. Defendant is in the process of selling off its assets and winding down its

19   business, and thus a larger settlement amount would increase the risk that Defendant would be unable

20   to pay the entire amount of any agreement. *Id.*

21        Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks

22   that were (and continue to be) very difficult to assess. In light of the uncertainties of protracted litigation,

23   the Settlement amount reflects a fair and reasonable recovery for the settlement PAGA Members. The

24   Settlement amount is, of course, a compromise figure. By necessity, it took into account risks related to

25   liability, damages, and all the defenses asserted by the Defendant and FedEx Ground as to all such

26   matters.

27        Here, there were approximately 4,854 workweeks within the applicable PAGA Period, or 2,428

28   pay periods. However, given the likelihood that the pay period violation rate was significantly lower

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

than 100% and the very real risks that a factfinder might agree with Defendant's arguments or Defendant's strong good faith defenses, Plaintiffs ascribed a 50% reduction to the number of pay periods at issue. Plaintiff thus concluded that Defendant's total realistic exposure in this case was approximately $121,400.00.

While Plaintiff continues to believe in the merits of the case, Defendant argued that it fully complied with California's wage and hour laws, and thus faced minimal exposure, if any. Therefore, the Maximum Settlement Amount of **$33,600.00** is an excellent result and within the zone of reasonableness for both parties. If approval is granted, Plaintiffs will have recovered 27.7% of their estimated realistic exposure value in this case—a fair compromise of the claims, by any measure.

As mentioned above, courts can, and regularly do, exercise their discretion to reduce the amount of PAGA penalties. Here, with approximately 2,428 pay periods at issue among 255 Aggrieved Employees, under *Carrington v. Starbucks Corp.*,30 Cal. App. 5th 504 (2018) an appropriate settlement amount could be as low as $12,140. Instead, despite the risks of the case identified through mediation and exchange of documents and information with opposing counsel, the Total Settlement Amount of $33,600.00 represents a roughly $13.83 penalty per pay period assuming a 100% violation rate for all pay periods in the PAGA period. The portion of the Net Settlement Amount to be distributed to the approximately 255 Aggrieved Employees in this case is at least $4,238.49 — or roughly $17.18 per Aggrieved Employee. To the best of the undersigned counsel's knowledge, other than this Action, there are no other like claims asserted or filed by PAGA Members.  To the best of the undersigned counsel's knowledge, no PAGA Member has refrained from bringing an action with claims similar to those raised in the Action, whether in reliance on the Action or otherwise, and who thus might be prejudiced by dismissal of the Action. Setareh Decl. ¶ 48.

III. <u>**THE SETTLEMENT**</u>

The following is a summary of the material terms of the Settlement:

A.    **THE SETTLEMENT GROUP**

For purposes of the Settlement, "PAGA Settlement Group Members" means, based upon Safe Box's representation to Plaintiff, the approximately two hundred fifty-five (255) current and former aggrieved employees of Safe Box in California during the Covered Period who worked one or more pay periods, but

1    excluding employees who individually settled their claims with a full general release.

2    **B.      TOTAL SETTLEMENT AMOUNT AND DISTRIBUTIONS**

3    Defendant will pay a maximum aggregate MSA of $33,600. Agreement, III.B. The MSA covers:

4    (i) all Settlement Shares to PAGA Settlement Group Members ("PAGA Members"); (ii) the LWDA

5    Payment; (iii) the Plaintiff's Counsel Fees and Expenses Payment, to compensate Plaintiff's Counsel for

6    all work performed thus far and all work remaining to be performed in connection with the Settlement,

7    including without limitation documenting and administering the Agreement and securing Court

8    approval; and (iv) the Settlement Administrator's fees and expenses. *Id.*

9    It is estimated that the NSA payable to PAGA Members and the Labor & Workforce

10   Development Agency ("LWDA") will be $**16,479.98** out of the $**33,600.00** MSA after all Court-

11   approved deductions from the MSA – i.e., Plaintiff's Counsel fees of $**8,400.00** (25% of the MSA)[6] and

12   litigation costs of up to $3,720.02, settlement administration costs of $3,950. After the payment of

13   $12,359.98 to the LWDA, the amount payable to PAGA Members will be $4,382.49. To fairly allocate

14   settlement funds based on each PAGA Members' dates of employment as a PAGA Member, the

15   distribution amount will be calculated as follows: Settlement Administrator will allocate Settlement

16   Shares from the Net Settlement Amount to the PAGA Members in proportion to the number of

17   workweeks worked for Safe Box during the Covered Period in comparison to the total number of

18   workweeks worked by all PAGA Members. The payments to Aggrieved Employees shall be reported

19   as non-wage payments in the year of payment and reported on a Form 1099 with no withholdings or

20   payroll taxes because the Action sought civil penalties. Agreement, III.G.

21   The MSA is subject to the following Modification provision: Defendant represented at the

22   mediation that as of September 22, 2023, the total number of PAGA Members was estimated to be 255,

23   with approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023. The Parties

24   agree that if, at the time the Court approves the Agreement, the total number of PAGA Members

25   increased by more than ten percent (10%) of the total of 255 estimated PAGA Members as of September

26

27

28   [6] Plaintiff intends to file a separate Motion for Attorney's Fees shortly after the filing of this Motion per the Court's instruction.

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

22, 2023, or more than 25 PAGA Members, then either (i) the Total Settlement Amount shall be adjusted and increased by Safe Box on a proportionate basis using the "Per Workweek Settlement Value", which shall be calculated using 5,339 workweeks (i.e., 10% more than the total estimated 4, 854 workweeks) as the numerator and the Net Settlement Amount as the denominator, or (ii) alternatively, at Safe Box's election, the Covered Period may be ended earlier than December 1, 2023 or the Effective Date so that the per workweek settlement payments to the PAGA Settlement Group Members is no less than the Per Workweek Settlement Value. For the avoidance of doubt, if the total number of PAGA Members is more than 280, then the adjusted increase of the MSA or adjustment of the end of the Covered Period would be based on the amount of PAGA Members greater than 280. Agreement, III.H.

## C.    SCOPE OF THE PAGA SETTLEMENT GROUP MEMBER RELEASES

In consideration for their Settlement Shares, as of the date the Settlement becomes Final, Plaintiff acting on behalf of the State of California, and all PAGA Settlement Group Members, releases the Released Parties, as defined in the Agreement, from any and all claims and causes of action for penalties recoverable under PAGA whether known or unknown, that were pleaded in Plaintiffs Complaint or that could have been pleaded on the facts as alleged in the Complaint and Plaintiffs PAGA notice to the LWDA, arising during the Covered Period, *Id.*, at III.K.(1). The "PAGA Released Claims" are all claims under PAGA, Labor Code sections 201, 202, 203, 204, 218.6, 223, 226, 226.3, 226.7, 510, 512, 1021.5, 1194, 1194.2, 1197, 1197.1, 1198, 2810.3, 2802, 1997.1, 2698, 2699.3, and 2699.5, California Business and Professions Code section 17200, the Industrial Welfare Commission Wage Orders, and any resulting claim for attorney's fees and costs *Id.*

The PAGA Released Claims include all such respective claims under PAGA only, whether known or unknown by the releasing party. Therefore, with respect only to those respective PAGA Released Claims, Plaintiff and the PAGA Settlement Group Members expressly waive and relinquish the provisions, rights and benefits of section 1542 of the California Civil Code. *Id.* at III.K.(2). With respect to the PAGA Released Claims, the scope of the waiver of rights and benefits under section 1542 of the California Civil Code is in no way intended by the Parties to extend to any claims beyond the PAGA Released Claims; rather, this waiver is intended to apply only to the PAGA Released Claims. *Id.*

Furthermore, the PAGA Released Claims are intended to release Safe Box, FedEx Ground, and

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

Case No.: 3:21-CV-06917-AMO    11    *Gilmore v. Safe Box Logistics, Inc., et al.*
PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

each of their past, present, and future divisions, affiliates, predecessors, successors, shareholders, officers, directors, employees, attorneys, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries, joint employers, co-employers, payroll service providers, staffing agencies. Professional Employer Organizations, Administrative Service Organizations, insurers, related corporations, or privies, both individually and collectively, any other individual or entity that could be jointly liable with Safe Box and FedEx Ground, whether previously or hereafter affiliated in any manner, and the respective predecessors, successors, and assigns of all the foregoing. *Id.*, III.O.

### D.    PAGA PAYMENT AND NOTICE PROCEDURES

If appointed by the Court, Phoenix Settlement Administrators, serving as Settlement Administrator, will have sole and exclusive responsibility for: duties will include preparing, printing, and mailing the Notice Packet to the PAGA Settlement Group Members; conducting a National Change of Address search and using Accurint and other reasonable and cost-effective skip trace methods to locate any PAGA Member whose Notice Packet was returned by the U.S. Postal Service as non-deliverable, and re-mailing the Notice Packet to the PAGA Settlement Group Member's new address; issuing the checks to effectuate the payments due under the Settlement; and otherwise administering the Settlement pursuant to this Agreement. The Settlement Administrator will have the final authority to resolve all disputes concerning the calculation of a PAGA Settlement Group Member's Settlement Share, subject to the dollar limitations set forth in this Agreement. *Id*., III.I.

Should the Court approve the Settlement, within fourteen (14) calendar days Defendant will provide the Settlement Administrator with a confidential list of PAGA Members along with: (1) their last known addresses; (2) Social Security numbers; (3) telephone numbers; (4) employment start and end dates; and (5) the number of workweeks the PAGA Member worked during the Covered Period. *Id.,* at III.J.(3)(a). Within five (5) calendar days after receiving the confidential data, the Settlement Administrator will prepare and mail the Notice and a check to each PAGA Member *Id*., at III.J.(3)(b). The Notice that is mailed out to PAGA Members shall be in a form substantially similar to the form attached to the Agreement as **Exhibit B**. *Id*., I.L.  If a Notice is returned because of an incorrect address, the Settlement Administrator will, within ten (10) days from receipt of the returned packet, search for a

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1   more current address for the PAGA Member using Accurint or other reasonable and cost-effective skip

2   trace methods, and re-mail the Notice to the PAGA Member. *Id.*, III.J.(3)(c). of their current mailing

3   address and the address where their Individual Settlement Payment should be mailed following the

4   Effective Date, if the addresses are different from the address that the Notice is initially mailed.

5   All PAGA Members will have one-hundred eighty (180) days after the Settlement Administrator

6   initially mails the Notice and Settlement Share to PAGA Members to cash his or her Settlement Share.

7   *Id.*, III.J.(8). If any PAGA Settlement Group Member's Settlement Share check is not cashed within one

8   hundred twenty (120) calendar days after its last mailing to the PAGA Member, the Settlement

9   Administrator will send the PAGA Member a letter or postcard informing him or her that unless the

10  check is cashed in the next sixty (60) calendar days, it will expire and become nonnegotiable, and offer

11  to replace the check if it was lost or misplaced but not cashed. *Id.* If a PAGA Member fails to cash the

12  check for his or her Settlement Share within one hundred eighty (180) calendar days after it is mailed to

13  him or her, the funds shall be distributed by the Settlement Administrator to the State Controller's

14  Unclaimed Property Fund in the Settlement Group Member's name.

15      **E.      TAX TREATMENT**

16  Because this case is being resolved on a PAGA-only basis with all recovery arising from

17  penalties (rather than unpaid wages), IRS Form 1099 will be issued. With regard to settlement payments

18  to the PAGA Members and Plaintiff, IRS Form 1099s will be issued. *Id.* at III.G. . Payment of Plaintiff

19  Counsel's fees and litigation costs will also be reflected in an IRS Form 1099 to Plaintiff's counsel. *Id.*

20  III.F.

21  **IV.    THE SETTLEMENT MEETS THE STANDARDS FOR PAGA APPROVAL**

22      **A.      STANDARD OF REVIEW**

23  "An employee bringing a PAGA action does so as the proxy or agent of the state's labor law

24  enforcement agencies, ... who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803

25  F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). Thus, "[a]n action brought under the PAGA

26  is a type of *qui tam* action." *Id.* at 429. Because a PAGA action is brought as proxy of law enforcement

27  agencies, "[t]here is no requirement that the Court certify a PAGA claim for representative treatment

28  like in Rule 23 ...." *Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1    22, 2015). However, because a settlement of PAGA claims compromises a claim that could otherwise

2    be brought by the state, the PAGA provides that "court[s] shall review and approve any settlement of

3    any civil action filed pursuant to [PAGA]." California Labor Code § 2699(1)(2).

4    　　　"There is no binding authority identifying the proper standard of review of PAGA settlements

5    to be employed by the court." *Ambrose v. US Med-Equip, LLC,* 2024 WL 307843, at *3 (E.D. Cal. Jan.

6    26, 2024) (*citing Perez v. All Ag, Inc.*, 2021 WL 3129602, at *3). "In the class action context, where

7    PAGA claims are also often brought, a district court must independently determine that a proposed

8    settlement agreement is 'fundamentally fair, adequate and reasonable' before granting approval." (*citing*

9    *Beltran v. Olam Spices & Vegetables, Inc.,* No. 118CV01676JLTSAB, 2023 WL 1467118, at *20 (E.D.

10   Cal. Feb. 2, 2023) (*quoting Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,*

11   688 F.2d 615, 625 (9th Cir. 1982)); *see also Perez,* 2021 WL 3129602, at *3 (*same).* "However, this is

12   not a class action, and PAGA claims are intended to serve a decidedly different purpose—namely to

13   protect the public rather than for the benefit of private parties. *Perez,* 2021 WL 3129602, at *3 (*citing*

14   *Arias v. Superior Court,* 46 Cal. 4th 969, 986).

15   　　　In *O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1133 (N.D. Cal. 2016), where both class

16   action and PAGA claims were covered by a proposed settlement, the LWDA "stressed that":

17   　　　It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA
         be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the
18   　　　public and, in the context of a class action, the court evaluate whether the settlement meets the
         standards of being "fundamentally fair, reasonable, and adequate" with reference to the public
19   　　　policies underlying the PAGA.

20   *Id.*; *see also Perez*, 2021 WL 3129602, at *4 n.5 ("The LWDA is not aware [of] any existing case law

21   establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the

22   recovery on other claims in the action." (*quoting O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-

23   EMC (N.D. Cal. Jul. 29, 2016), ECF No. 736 at 2–3)).

**B.    THE SETTLEMENT SHOULD BE APPROVED**

**1.    <u>The Settlement Falls Within the Range of Possible Approval</u>**

26   　　　"The PAGA is limited to the recovery of civil penalties." *Villacres v. ABM Industries Inc.* (2010)

27   189 Cal.App.4th 562, 579. Under PAGA, the default civil penalty for an employer's initial violation is

28   one hundred dollars ($100) per employee per pay period, and two hundred dollars ($200) per pay period

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1  for any subsequent violations. Lab. Code § 2699(f)(2). While courts have the discretion to reduce civil

2  penalties under certain circumstances, there is no requirement to do so.

3        There were approximately 255 aggrieved employees during the PAGA Period. Agreement, at

4  I.M. As of September 22, 2023, the total number of PAGA Members was estimated to be 255, with

5  approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023. Agreement, at

6  III.H. This represents 2,428 pay periods which is reduced to 1214 pay periods after ascribing a 50%

7  reduction based on Defendant's strong good faith defenses and the possibility that a factfinder might

8  agree with Defendant's arguments. Setareh Decl., ¶ 46. Based on a penalty of $100 for each pay period

9  in which violation occurs, Defendant's total realistic exposure was approximately $121,400.00. *Id.*

10 Accordingly, an MSA of $33,600, or 27.7% of Defendant's potential realistic exposure, is more than

11 fair and adequate.

12       The Settlement should be approved because it confers a substantial benefit on PAGA Members,

13 while proceeding with litigation would impose significant risk with no guarantee of increased benefits,

14 with a chance that the company may not be a going concern to be able to pay any judgment at all. Setareh

15 Decl., ¶ 44(iv).

16           **2.  Although the Parties Dispute Whether Any Violations Occurred, the Settlement Achieves Compliance With, and Deters Violations of, State Labor Laws**

17

18       While the Parties dispute whether Defendant's employment practices violate the Labor Code,

19 this litigation has undisputedly achieved compliance with Labor Code sections referenced in the

20 Settlement due to the significant amount that Defendant has agreed to pay for these alleged violations.

21 Moreover, the significant amount will also serve as a deterrent to similar violations. Accordingly, the

22 proposed Settlement reasonably advances PAGA's purpose by achieving compliance with the Labor

23 Code and deterring similar violations.

24           **3.  The Settlement Serves to Enlist Private Citizens in Enforcement of PAGA**

25

26       Plaintiff also believes the proposed Settlement acts to encourage private enforcement of PAGA.

27 Through the Settlement, Plaintiff's counsel will receive attorneys' fees and costs as determined by the

28 Court, and all PAGA Members will receive a 25% share of the PAGA allocations, as well as notice of

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

the claim.

### 4.  The Settlement Is "Just" and "In the Public Interest"

The proposed Settlement is both just and in the public's interest.

First, this settlement reasonably values the PAGA claims as to Defendant. While Plaintiff believes the claims are meritorious and that they would have recovered unreduced penalties, Defendant denies all liability and asserted numerous defenses to the claims. In addition, PAGA awards maximum penalties of "one hundred dollars ($100) for each Aggrieved Employee per pay period for the *initial* violation and two hundred dollars ($200) for each Aggrieved Employee per pay period for each *subsequent* violation." Lab. Code § 2699(f)(2). At least one appellate court holds, in the context of other Labor Code violations, that the "subsequent "violation penalty rate for a Labor Code does not apply until an employer is notified that its conduct violates the law. *Amaral*,163 Cal. App. 4th at 1207-09. Nevertheless, Defendant has agreed to pay a Total Settlement Amount of **$33,600** in exchange for a PAGA release involving approximately 255 Aggrieved Employees who were subjected to similar working conditions during the applicable time frame. Accordingly, Defendant is paying an average of **$131.76** ($33,600 ÷ 255) per Aggrieved Employee. If the Court grant's Plaintiff's subsequent Motion for Attorney's Fees and Costs, the State and the Aggrieved Employees will still share approximately **$68.75** ($17,529.98 ÷ 255) per Aggrieved Employee for civil penalties – still a significant and reasonable recovery.[7]

Second, the proposed Settlement, even with deductions, provides a substantial sum to the State: **$13,147.49** (75% of $17,529.98). It also provides a small sum to each employee (around **$17.18**) on a *pro-rata* basis. (The aggregate sum provided to Aggrieved Employees (assuming all deductions) is **$4,382.49**.) However, the purpose of PAGA is not to compensate employees, who retain any private right of action they may have under the applicable Labor Code provisions. In that respect, the Settlement

---

[7] It is appropriate to consider the gross award (before deductions) in comparing the litigation value of a case against a settlement award. Among other things, it is appropriate to pay fees to of a common fund, even in a fee-shifting case, "to avoid the unjust enrichment of those who benefit from the fund that is created, protected, or increased by litigation and who otherwise bear none of the litigation costs." *Sobel v. Hertz Corporation* (D. Nev. 2014) 53 F.Supp.3d 1319, 1326,

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

also requires each employee receive a notice that describes this litigation and the settlement sum. Plaintiff contends this notice will educate Aggrieved Employees as to the requirements of the Labor Code, something that is in the public interest and consistent with PAGA's purpose. *See* Lab. Code § 2699(j) (stating that civil penalties recovered under PAGA shall be distributed to the LWDA for [among other things] "education of employers and employees about their rights and responsibilities under this code.")

Third, public policy strongly favors the settlement of litigation. *Consumer Advocacy Group v. Kintetsu, supra*, 141 Cal.App.4th at 63. Because the proposed Settlement is neither unjust nor ignores the public interest, it should be approved.

## V.    <u>NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION SETTLEMENTS</u>

Keeping in mind that because a PAGA action is brought as proxy of law enforcement agencies, "[t]here is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23 ...." *Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015). Thus, in response to the Court's discussion regarding the *Procedural Guidance for Class Action Settlements* promulgated by this District in its recent Order, as there is no class settlement approval being sought, the *Procedural Guidance* is inapplicable here  Nevertheless, even though PAGA actions do not require preliminary approval, and are therefore the *Procedural Guidance* is not applicable, undersigned counsel responds to the Court's Order to regarding the *Procedural Guidance* and provides, pursuant to the *Procedural Guidance* the below information which "[t]he motion for preliminary approval should state."

### A.    ANY DIFFERENCES BETWEEN THE SETTLEMENT CLASS AND THE CLASS PROPOSED IN THE OPERATIVE COMPLAINT OR BETWEEN THE CLAIMS RELEASED IN THE SETTLEMENT AND THOSE PLED IN THE OPERATIVE COMPLAINT

The First Amended Complaint ("SAC") is currently the operative complaint in this Action. Setareh Decl., at ¶ 13.  The Settlement has been tailored to conform to the PAGA cause of action in the SAC.  *See* ECF 97.  As part of the Agreement, Plaintiff agrees to release the Released Parties from all claims and causes of action for penalties recoverable under PAGA. *Id.*, at III.K.1. However, Plaintiff

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1   brought nine other causes of action in her FAC. *See* ECF 97. The current Agreement is limited to PAGA

2   only due to Plaintiff not moving for class certification by June 22, 2023, effectively wiping out all of her

3   potential class-wide claims. Setareh Decl., ¶ 24. As part of the Agreement, Plaintiff and PAGA Members

4   release *only* those claims applicable under PAGA.

**B.     ESTIMATE OF THE NUMBER AND /OR PERCENTAGE OF PAGA MEMBERS EXPECTED TO SUBMIT A CLAIM**

7       No PAGA Member will have to submit a claim in order to recover his or her Settlement Share,

8   and checks will be mailed directly to them. Agreement, III.J.3. As estimated by Defendant at the time

9   the Agreement was executed, there are an estimated 255 PAGA Members. (Setareh Decl., ¶ 33.)  Any

10  checks issued to Settlement PAGA Members shall remain valid and negotiable for 180 calendar days

11  after the date they are issued. Agreement, at III.J.3.  The Settlement Administrator will mail a reminder

12  notice to those Settlement PAGA Members who have not cashed their checks after 120 calendar days

13  and will also send a reminder via any available email address or social media for these Settlement PAGA

14  Members. *Id.*  In the event that an Individual Settlement Payment check has not been cashed within 180

15  calendar days, then such funds, plus any accrued interest, will be tendered to the California State

16  Controller's Office Unclaimed Property Fund in the name of Settlement PAGA Members who did not

17  cash their settlement checks. *Id.*

**C.     SETTLEMENT ADMINISTRATION**

19      Plaintiff obtained bids from potential third-party settlement administrators Phoenix, ILYM

20  Group, Inc., and Phoenix Settlement Administrators. Setareh Decl., ¶ 65. Phoenix was selected because

21  they submitted the lowest bid of $3,950, which Plaintiff's Counsel believes is reasonable in light of

22  Plaintiff Counsel's experience in such settlement administration matters and given the work to be done

23  by or potentially required of the Settlement Administrator due to the various Settlement provisions. *Id.*

24  The MSA is to be wire transferred to the Settlement Administrator within thirty (3) days of the Court's

25  Final Approval Order. Agreement, III.J.3.a.  The proposed forms of Notice to all PAGA Members are

26  to be sent via mail, and where returned or non-deliverable, the Settlement Administrator shall make

27  reasonable efforts to locate PAGA Members and re-send the notices *Id.*, III.J.3.b. The Settlement

28  Administrator shall promptly attempt to determine a correct address by lawful use of standard search

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

techniques (e.g., skip trace search), and shall then perform a re-mailing if another mailing address is identified by the Settlement Administrator. *Id.* The Agreement does not provide for any reversion of settlement funds to Defendant or FedEx Ground. *Id.*, III.B. Over the last two years, Plaintiff's counsel has engaged with Phoenix 28 times in 28 class actions. Setareh Decl., ¶ 66.

### 1. A Reasonable Result Was Achieved on Behalf of the PAGA Settlement Group Members

The benefit achieved on behalf of PAGA Members defines a primary yardstick against which any fee motion is measured. *See Serrano v. Priest*, 20 Cal.3d 25, 49 (1977); *accord Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Courts recognize that arm's-length negotiations conducted by competent counsel are prima facie evidence of fair settlements. The United States Supreme Court held that "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arm's-length bargaining. . . ." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator skilled in resolving representative action cases including wage and hour actions. Setareh Decl., ¶ 30. The Parties thoroughly investigated and evaluated the factual and legal strengths and weaknesses of this case before reaching the Settlement. *Id.* The Settlement was reached after included informal written discovery, the pre-mediation exchange of requested information, and, numerous communications between the Parties to identify and assess the issues. *Id.*, ¶ 23. Through this process, Defendant provided Plaintiff's Counsel with numerous relevant documents, including copies of all applicable versions of personnel and payroll policies, records reflecting Aggrieved Employees' hours worked and wages paid, amongst numerous other documents. *Id.* And, notably, approval of a representative action settlement does not require that discovery be exhaustive. *See, e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The fact that settlement results from arm's length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997).

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

With respect to the claims asserted on behalf of the settlement group in this case, there are significant risks that support the reduced compromise amount (see estimated potential recovery in Section II.C., *supra*.).  Setareh Decl., ¶ 46.  These risks include, but are not limited to the following:

(i)     The risk that Plaintiff would not be able to prove liability for alleged failure to provide compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant meal periods and rest breaks would require an individualized inquiry that would prevent these issues from being resolved on behalf of all aggrieved employees.  For example, Plaintiff alleged that Defendant and FedEx Ground maintained a policy or practice of requiring Plaintiff and the aggrieved employees to miss their meal periods and rest breaks because of Defendant's strict delivery schedule. ECF 97. Plaintiff alleged that Plaintiff and the aggrieved employees often had interrupted meal periods due to the aggrieved employees being required to answer calls from Defendant's managers about work tasks during meal periods. Defendant and FedEx Ground denied these allegations and contended that any inquiry into why some employees missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on behalf of all aggrieved employees. *Id.*  Defendant and FedEx Ground further contended that the meal and rest break claims were pre-empted by federal law under the Federal Motor Carrier Safety Act and sought partial summary judgment on this ground.

(ii)    The risk that PAGA relief could be denied entirely by a Court due to Defendant's argument that numerous individualized inquiries might have to be made into whether particular violations were experienced by any given Aggrieved Employee, thus rendering the case potentially unmanageable. *Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746, 775 (2021) (trial court did not abuse its discretion in striking a PAGA claim due to unmanageability). *Id.*

(iii)   The risk that Plaintiff would be unable to recover PAGA penalties at the subsequent violation rate of $200 per pay period. California's appellate courts have held that "[u]ntil the employer has been notified that it is violating a Labor Code provision (whether or not the commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware [of the violation]" and therefore, until a Court or the Commissioner issues a finding of a violation, the initial $100 violation rate applies for each pay period in which the alleged violation occurred. *Amaral v. Cintas Corp. No. 2,*

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

163 Cal. App. 4th 1157, 1209 (2008). Thus, Defendant argued that even if the Plaintiff was able to establish any violation of the Labor Code, the PAGA penalties assessed for these violations will be computed at the $100 rate, as opposed to the $200 per pay period rate at maximum, and there is a likelihood that a further reduction of the penalty to $5 per pay period as approved in *Carrington* would apply given Defendant's compliance with the Labor Code as discussed above. *Id.*

(iv)    The risk that, even if Plaintiff received a favorable judgment at trial, Defendant would be unable to pay. Defendant is in the process of selling off its assets and winding down its business, and thus a larger settlement amount would increase the risk that Defendant would be unable to pay the entire amount of any agreement. *Id.*

(v)    The risk that lengthy appellate litigation could ensue as to both liability and certification issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as opposed to unpredictable litigation. *Id.*

In these respects, Defendant and FedEx Ground strongly deny any liability on Plaintiff's claims. *Id.*, ¶¶ 38-42. Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess. *Id.*, ¶ 44.

In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and reasonable recovery for the settlement PAGA Members. *Id.*, ¶ 45.  The Settlement amount is, of course, a compromise figure. *Id.*  By necessity, it took into account risks related to liability, damages, probability of success at trial, and all the defenses asserted by the Defendant as to all such matters. *Id.*

As estimated by Defendant at the time the Agreement was executed, there are an estimated 255 PAGA Members. Setareh Decl., ¶ 36.  The average estimated Settlement Share for each PAGA Settlement Group Member is $17.18. *Id.*, ¶ 48.  This amount reflects a fair compromise well within the range of reasonableness. *Id.* ¶ 47.  Given the strong case that Defendant could bring to bear to challenge liability and given the real possibility that Defendant is not a going concern, this is not an inconsequential sum for the aggrieved employees. *Id.* ¶¶ 44-49.

**D.    NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005**

Notice pursuant to section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the appropriate federal and state officials is ***not*** required in this action because the settlement does ***not***

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

1   involve a class action (and no class claims are being released) even though it was removed from state

2   court pursuant to the CAFA removal provisions. 28 U.S.C. §§ 1332(d), 1453(b).

3   **E.**     **THE SETTLEMENT IS THE PRODUCT OF INFORMED, NON-COLLUSIVE**

4           **NEGOTIATIONS**

5           The Settlement was reached after informed, arm's-length negotiations between the parties with

6   the help of Michael J. Loeb, Esq., a mediator with significant experience mediating employment wage

7   and hour class and collective actions, shortly after a full-day mediation on September 22, 2023. Setareh

8   Decl., ¶ 21.  As discussed in greater detail above, the Parties conducted investigation and discovery

9   allowing them to assess the strengths and weaknesses of the case. *Id.*, ¶¶ 23-30. The Parties were able to

10  come to an agreement during the meditation and signed a Memorandum of Understanding on September

11  25, 2023. *Id.*, ¶ 22.  Accordingly, the Settlement is the product of non-collusive negotiations.

12  **F.**     **THE SETTLEMENT HAS NO "OBVIOUS DEFICIENCIES"**

13          The Settlement is substantial and non-reversionary and provides for a payment of **$33,600.00** by

14  Defendant, which is, by any account, a significant amount given the value of the claims made by

15  Plaintiff. Setareh Decl., ¶ 34.  The Settlement Payment for each PAGA Member will be based on the

16  individual Workweek count for each PAGA Member divided by the total number of Workweeks for all

17  PAGA Members, which is a fair way to calculate what each PAGA Settlement Group Member should

18  receive. Agreement, at III.G.  If all other amounts sought are awarded, it is estimated that, the average

19  PAGA Member will receive approximately **$17.18**. Setareh Decl., ¶ 48.

20  **G.**     **THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL**

21          "The PAGA is limited to the recovery of *civil* penalties." *Villacres v. ABM Industries Inc.* (2010)

22  189 Cal.App.4th 562, 579. Under PAGA, the default civil penalty for an employer's initial violation is

23  one hundred dollars ($100) per employee per pay period, and two hundred dollars ($200) per pay period

24  for any subsequent violations. Lab. Code § 2699(f)(2). While courts have the discretion to reduce civil

25  penalties under certain circumstances, there is no requirement to do so.

26          There were approximately 255 aggrieved employees during the PAGA Period. Agreement, at

27  I.M. As of September 22, 2023, the total number of PAGA Members was estimated to be 255, with

28  approximately 4,854 collective workweeks from August 3, 2020 to December 1, 2023. Agreement,

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

III.H. This represents 2,428 pay periods which is reduced to 1214 pay periods after ascribing a 50% reduction based on Defendant's strong good faith defenses and the possibility that a factfinder might agree with Defendant's arguments. Setareh Decl., ¶ 46. Based on a penalty of $100 for each pay period in which violation occurs, Defendant's total realistic exposure was approximately **$121,400.00**. *Id.* Accordingly, an MSA of **$33,600.00**, or 27.7% of Defendant's potential realistic exposure, is more than fair and adequate.

The Settlement should be approved because it confers a substantial benefit on PAGA Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits, with a chance that the company may not be a going concern to be able to pay any judgment at all given that it is winding down its business. Setareh Decl., ¶ 44(iv).

### 1. <u>Liability Is Contested, and the Settlement Provides PAGA Members with Substantial Monetary Relief</u>

Plaintiffs' counsel conducted a thorough investigation into the facts of this representative action and diligently pursued an investigation of Aggrieved Employees' claims against Defendant. Setareh Decl., ¶¶ 23-31. Plaintiff's counsel conducted informal discovery, reviewed Defendant's written policies, including employee manuals and thoroughly reviewed a database of timekeeping and payroll data to create a reliable damage model detailing the number of possible violations at issue. *Id.*

For its part, Defendant and FedEx Ground contest liability in the action, are represented by zealous counsel, and are prepared to vigorously defend against these claims if the Action is not settled.

To be sure, if the litigation proceeds, Defendant could face significant liability. However, while Plaintiff is reasonably confident of a favorable outcome, there is substantial risk that the evidence and/or legal developments could seriously diminish the value of her and the PAGA Members' claims.

In light of these risks for all Parties, the Settlement provides the PAGA Members with a sizeable recovery while mitigating all Parties' risk if the matter were to proceed. *Id.* As such, the Settlement is fair, reasonable, adequate, and is in the best interest of the PAGA Members in light of all known facts and circumstances, including the risk of the significant delay. *Id.* The Settlement is also in the best interest of judicial efficiency in this case, as it obviously eliminates a lengthy and contested representative action and trial from this Court's calendar. *Id.,* ¶ 48.

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

### 2.  **The Group Release Is Appropriate Given Plaintiff's Claims**

The California Supreme Court has explained that a judgment in "a representative action brought by an aggrieved employee under the Labor Code Private Attorneys General Act of 2004 . . . is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding." *Arias*, 46 Cal.4th at 985. In accordance with this rule, the PAGA claims released by the Aggrieved Employees narrowly includes only the claims seeking civil penalties under PAGA that arose during the PAGA Period. Agreement, III.K.

### H.    PHOENIX SETTLEMENT ADMINISTRATORS SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR

The Parties propose that the Court appoint Phoenix Settlement Administrators ("Phoenix") to serve as the Settlement Administrator.  Phoenix is experienced in administering wage-and-hour representative action settlements and is regularly appointed as a claims administrator by California courts to administer settlements.  Over the last two years, Plaintiff's Counsel has engaged with Phoenix 44 times. Setareh Decl., ¶ 66.  Phoenix's capped fees and costs for administration of the Settlement to 255 PAGA Members is $3,950.00. *Id.,* ¶ 65.  The Parties agree that these estimates are reasonable and adequate to provide the necessary notice of the Settlement to the estimated 255 PAGA Members, while maximizing the NSA distributed to the Group. *Id.* Plaintiff's Counsel will provide an updated settlement administration expense estimate, if any such adjustment is necessary at the Final Compliance Hearing following approval of the Settlement. *Id.*

### I.    RESIDUAL

In the event that an Individual Settlement Payment check has not been cashed within 180 calendar days, then such funds, plus any accrued interest, will be tendered to the State Controller's Office Unclaimed Property Fund in the name of Settlement PAGA Members who did not cash their settlement checks. Agreement, III.J.8. The entire NSA will be paid out to participating Settlement PAGA Members, whether or not they all cash their individual settlement payment checks. *Id.*

### J.    COMPARABLE OUTCOMES

| Case | Total Settlement Amount | PAGA Allocation | Pay Periods | Aggrieved Employees |
|------|-------------------------|-----------------|-------------|---------------------|
|      |                         |                 |             |                     |

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

| | | | | |
|---|---|---|---|---|
| *Ambrose v. US Med-Equip, LLC*, No. 1:23-cv-00114-SAB, 2024 WL 307843 (E.D. Cal. Jan. 26, 2024) | $57,500.00 | $21,880.50 | 525 | 30 |
| *Perez v. All Ag, Inc.*, 1:18-cv-00927-DAD-EPG, 2021 WL 3129602 (E.D. Cal. Jul. 23, 2021) | $104,000.00 | $76,000.00 | Unknown | 206 |
| *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04705-LHK, 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) | $110,000.00 | $27,500.00 | Unknown | 226 |
| *Delgado v. MarketSource, Inc.*, No. 17-cv-07370-LHK, 2019 WL 4059850 (N.D. Cal. Aug. 28, 2019) | $83,075.00 | $45,252.98 | Unknown | 963 |
| *Cresci v. Cox Automotive Corporate Services, Inc.*, No. 2:20-cv-06832-VAP-SKx, 2021 WL 2954086 (C.D. Cal. May 5, 2021) | $104,000.00 | $67,678.40 | Unknown | 447 |
| *Decker v. AllStates Consulting Services, LLC*, No. 2:18-cv-03216-KJM-DB, 2020 WL 7769842 (E.D. Cal. Dec. 30, 2020) | $20,000.00 | $11,333.33 | | 15 |

Additionally, the settlements in the above references cases all achieved substantially comparable outcomes to the Parties' Settlement. For instance, here the average recovery per PAGA Member is approximately $17.18. This is within the range of average recovery in each comparator case. ($11.75 per aggrieved employee in the *Delgado* case); ($30.42 per aggrieved employee in the *Ramirez* case); ($37.85 per aggrieved employee in the *Cresci* case); ($92.23 per aggrieved employee in the *Perez* case); ($182.33 per aggrieved employee in the *Ambrose* case); ($188.88 per aggrieved employee in the *Decker* case).[8] Furthermore, the Settlement provides for $3,950 in administrative costs, which is in line with the

[8] Plaintiff reached this average by multiplying the "PAGA Allocation" column in the above chart by 25%, which reflects the portion of the PAGA settlement left over after payment to the LWDA. Then, Plaintiff divided this number by the number of employees in the "Aggrieved Employees" column to reach the average payment per PAGA Member.

comparator cases. *See Delgado*, 2019 WL 4059850 at *5; *Perez* 2021 WL 3129602 at *2 (approving $4,000 in settlement administration costs); *see also Ambrose* 2024 WL 307843 at *17 (approving $2,850 in settlement administration costs). Here, Plaintiff also achieved a settlement of 27.7% of the calculated maximum exposure. The Settlement amount is in line with the comparator cases with regard to the amount of settlement compared to total possible exposure. *See Ambrose* 2024 WL 307843 at *7 (achieving 43% of maximum exposure); *Cresci* 2021 WL 2954086 at *3 (approving settlement of $104,000 when maximum exposure was $628,400, which is 16.5% of maximum exposure); *Perez* 2021 WL 3129602 at *5 (achieving 49% of maximum exposure)

However, even if Plaintiff did not ascribe a 50% reduction to the number of pay periods at issue an exposure of $242,800.00 still amounts to a recovery of 13% of the exposure in this case. Courts in this district have approved PAGA settlements which amount to a much lower percentage of the total value of a PAGA claim. *See Chamberlain v. Baker Hughes, a GE Co., LLC*, 2020 WL 4350207 at *3– *4 (E.D. Cal. Jul. 29, 2020)(approving PAGA settlement amounting to 12 percent of the maximum recovery); *McLeod v. Bank of Am., N.A.*, 2018 WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018) (approving PAGA settlement totaling 1.1% of total value). Given the risks of continued litigation, and the procedural posture of this case, the recovery Plaintiff received is substantial enough to provide a meaningful deterrent to future unlawful conduct. Therefore, the Settlement should be approved.

## K.    SETTLEMENT LANGUAGE REGARDING PAYMENT OF EMPLOYER-SIDE PAYROLL TAXES IS MOOT

This Court pointed out that the Settlement Agreement provides that "[n]either Safe Box nor FedEx Ground shall be responsible for any amounts in excess of the Total Settlement Amount, except for payment by Safe Box of employer-side payroll taxes on the portion of the settlement payments attributed to wage[.]" ECF 149, at 3:16-19.  There is, however, no settlement of wage claims. *Id.*  The Court is correct that there is no settlement of wage claims in this action. *See,* § III(E).  Because this Settlement involves only PAGA claims for civil penalties and because there is no settlement of wage claims, this language in the Settlement Agreement is moot.

//

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

**L.    SETTLEMENT LANGUAGE THAT THERE IS NO STATUTORY RIGHT TO OBJECT OR OPT OUT OF THE SETTLEMENT AND SETTLEMENT ADMINISTRATOR AUTHORITY TO RESOLVE CLAIM DISPUTES**

In denying Plaintiff's prior Motion for Approval, this Court specifically instructed Plaintiff to provide authority permitting court approval containing provisions prohibiting PAGA members from opting-out of the settlement and for the provision granting the Settlement Administrator authority to resolve claim disputes. ECF 149, 3:4-10, fn. 6. Plaintiff will address each in turn.

The settlement term in the Parties agreement referencing a lack of opt-out procedure for PAGA reflects Ninth Circuit authority reflecting the PAGA notice requirements. In *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015), the Ninth Circuit held that, unlike Rule 23(c)(2), PAGA has "no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action." *Id.* at 436 (citation omitted); *see also O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, at 1133 ("[B]ecause the employee's PAGA action acts as a 'substitute' for a governmental action, the judgment binds all those who would be bound by an action brought by the government, including nonparty employees ...[t]hus, in a lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even class members who opt out of the class would be bound by an adverse PAGA judgment or settlement.") (emphasis in original).

The settlement terms referencing PAGA Members lack of a right to appeal the approval of the settlement and stating the agreement shall not be subject to collateral attack by PAGA Members also reflect settled Ninth Circuit authority. *See Saucillo v. Peck*, 25 F.4th 1118, 1126-27 (9th Cir. 2022) (holding PAGA members do not have any right to appeal a PAGA settlement.); *see also Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 851, 856 (9th Cir. 2020) (stating that "PAGA causes of action [are] nothing like Rule 23 class actions," and holding that in a PAGA suit, "an aggrieved employee[ ] has no individual claim of her own and is not seeking individual relief"). The agreement cannot be subject to collateral attack by PAGA Members for the same reasons. PAGA members are not parties to the lawsuit, which exists as an "enforcement action between the LWDA and the employer, with the PAGA plaintiff acting on behalf of the government" *Kim v. Reins International California, Inc.*, 9 Cal. 5th 73, 86 (2020). Therefore, approving these settlement terms reflects Ninth Circuit authority.

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771

Additionally, courts have routinely approved settlements granting a settlement administrator final authority to resolve all disputes concerning the calculation of class members settlement shares. *See Morales v. Stevco, Inc.*, 2011 WL 5511767 * 15 (E.D. Cal. 2011); *see also Boyd v. May Trucking Company*, 2019 WL 12763030 * 4 (C.D. Cal. 2019); *Odom v. ECA Marketing, Inc.*, 2021 WL 7185059 * 4 (C.D. Cal. 2021); *Rosales v. El Rancho Farms*, 2014 WL 6685611 * 16-17 (appointing settlement administrator with "responsibilities pursuant to the terms set forth in the Settlement Agreement"). The Settlement Administrator is a neutral third-party with access to each PAGA Members timekeeping and payroll data, which it will use to calculate each PAGA Members settlement share. The Settlement Administrator is therefore in the best position to resolve any disputes PAGA Members have regarding their settlement share, as the Settlement Administrator is the entity which calculates that share.

## VI.    **CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court grant their joint motion in its entirety and enter an order approving: (1) the terms of the Settlement; (2) the appointment of Phoenix Settlement Administrators as the Settlement Administrator; and (3) final judgment.


DATED:  October 30, 2024            SETAREH LAW GROUP


                                    */s/ Shaun Setareh*
                                    SHAUN SETAREH
                                    BRIAN LOUIS
                                    Attorneys for Plaintiff
                                    JANICE GILMORE

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
420 N. CAMDEN DRIVE, SUITE 100,
BEVERLY HILLS, CALIFORNIA 90210
(310) 888-7771